**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| DEVIN G. NUNES<br><br>            Plaintiff,<br><br>    v.<br><br>FUSION GPS A/KA BEAN LLC, GLENN SIMPSON, and CAMPAIGN FOR ACCOUNTABILITY, INC.<br><br>            Defendants. | Civil Case No. 1:19-cv-1148 |

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**<u>MOTION TO DISMISS OF DEFENDANT CAMPAIGN FOR ACCOUNTABILITY</u>**

## TABLE OF CONTENTS

**INTRODUCTION** ...............................................................................................1

**BACKGROUND** ................................................................................................2

**ARGUMENT** ....................................................................................................7

  **I. PLAINTIFF DOES NOT HAVE STANDING** .................................................7

  **II. THE COURT LACKS PERSONAL JURISDICTION OVER CFA** ..........................9

  **III. THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER RICO**. 11

    **A. STANDARDS OF LAW** ....................................................................11

    **B. PLAINTIFF FAILS TO PLAUSIBLY PLEAD EITHER A COGNIZABLE INJURY, OR THAT SUCH INJURY WAS PROXIMATELY CAUSED BY THE ALLEGED RICO VIOLATION** ....................................................13

    **C. THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER RICO § 1962(a)-(c)** ....................................................................15

      **1. The Complaint Fails to Plausibly Plead That Defendants "Received Any Income" Derived from A Pattern Of Racketeering Activity under Section 1962(a)** .........15

      **2. The Complaint Fails to Plausibly Plead That Defendants Acquired Or Maintained Any Interest Or Control of An Enterprise through A Pattern of Racketeering Activity under Section 1962(b)** ..............................................16

      **3. The Complaint Fails to Plausibly Plead An Enterprise Distinct from Defendants under Section 1962(c)** .............................................................16

      **4. Plaintiff Fails to Plead A "Pattern" of Racketeering Activity** ...........................17

        a. The Complaint Does Not Plausibly Plead Continuity .........................................18

        b. The Complaint Fails to Plausibly Plead Relatedness...........................................21

      **5. The Complaint Does Not Adequately Plead Predicate Acts** ...............................22

        a. Plaintiff Fails to Plausibly Plead a Violation of Section 1503(a) .......................22

        b. Plaintiff Fails to Plausibly Plead a Violation of §§ 1512(b)(1) or (b)(2).............23

        c. Plaintiff Fails to Plausibly Plead a Violation of § 1512(d)(2)-(4) ......................25

        d. Plaintiff Fails to Plausibly Plead a Violation of § 1513(e) .................................25

        e. Plaintiff Fails to Plausibly Plead a Violation of § 1343.....................................27

        f. Defendants' Alleged Criminal Conduct Constitutes Protected First Amendment Activity ..........................................................................................27

**D. PLAINTIFF FAILS TO PLAUSIBLY PLEAD A VIOLATION OF THE RICO CONSPIRACY PROVISION** ........................................................................................28

**IV. THE COMMON LAW CONSPIRACY CLAIM SHOULD BE DISMISSED**...........29

**CONCLUSION** .......................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Aggarwal v. Sikka*,
  No. 1:12-CV-60, 2012 WL 12870349 (E.D. Va. June 12, 2012) ..............................28

*Al-Abood ex rel. Al-Abood v. El-Shamari*,
  217 F.3d 225 (4th Cir. 2000) .................................................................17, 18, 20

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006)...................................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................11, 12, 13

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979)....................................................................................8

*Bass v. E.I. DuPont de Nemours & Co.*,
  324 F.3d 761 (4th Cir. 2003) .......................................................................12

*Bast v. Cohen, Dunn & Sinclair, PC*,
  59 F.3d 492 (4th Cir. 1995) .........................................................................13

*Beck v. McDonald*,
  848 F.3d 262 (4th Cir. 2017) ....................................................................8, 13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................11

*Brown v. R & B Corp. of Virginia*,
  267 F. Supp. 3d 691 (E.D. Va. 2017) ...............................................................7

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*,
  556 U.S. 635 (2009)...................................................................................29

*Carroll v. Washington Gas Light Fed. Credit Union*,
  No. 1:17-CV-1201, 2018 WL 2933412 (E.D. Va. Apr. 4, 2018) (O'Grady, *J.*) .......8, 12

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001)...................................................................................16

*Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*,
  235 F. Supp. 3d 1132 (E.D. Cal. 2017)............................................................28

*Cooksey v. Futrell*,
  721 F.3d 226 (4th Cir. 2013) .........................................................................8

*Curry v. Trans Union, LLC*,
  No. 3:16-cv-824, 2017 WL 2058266 (E.D. Va. Apr. 26, 2017), *report and recommendation adopted,* 2017 WL 2056176 (E.D. Va. May 12, 2017) ...........................................11

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)................................................................................9, 10

*Davis v. Hudgins*,

896 F. Supp. 561 (E.D. Va. 1995), *aff'd,* 87 F.3d 1308 (4th Cir. 1996)...................17

*Dreher v. Experian Info. Sols., Inc.*,
856 F.3d 337 (4th Cir. 2017) ................................................................................7

*Efron v. Embassy Suites (Puerto Rico), Inc.*,
223 F.3d 12 (1st Cir. 2000) .................................................................................29

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004) ................................................................................29

*Field v. GMAC LLC*,
660 F. Supp. 2d 679 (E.D. Va. 2008) ..................................................................29

*Flip Mortg. Corp. v. McElhone*,
841 F.2d 531 (4th Cir. 1988) ..............................................................................19

*GE Inv. Private Placement Partners II v. Parker*,
247 F.3d 543 (4th Cir. 2001) ................................................................17, 18, 19, 20

*Gibbs v. Haynes Investments, LLC*,
368 F. Supp. 3d 901 (E.D. Va. 2019) ..................................................................12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)..............................................................................................9

*Gov't of Dominican Republic v. AES Corp.*,
466 F. Supp. 2d 680 (E.D. Va. 2006) ..................................................................19

*Grayson v. Anderson*,
816 F.3d 262 (4th Cir. 2016) ................................................................................9

*Griffin v. Sevatec, Inc.*,
No. 1:16-CV-630, 2016 WL 4527357 (E.D. Va. Aug. 29, 2016) (O'Grady, *J.*).......11

*Hamm v. Rhone–Poulenc Rorer Pharm., Inc.*,
187 F.3d 941 (8th Cir. 1999) ..............................................................................13

*Hawkins v. i-TV Digitalis Tavkozlesi zrt.*,
935 F.3d 211 (4th Cir. 2019) ................................................................................9

*Hecht v. Commerce Clearing House, Inc.*,
897 F.2d 21 (2d Cir. 1990).................................................................................29

*Hemi Grp., LLC v. City of New York, N.Y.*,
559 U.S. 1 (2010)................................................................................................13

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989)..............................................................................15, 17, 19

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*,
335 F.3d 303 (4th Cir. 2003) ..............................................................................28

*Int'l Data Bank, Ltd. v. Zepkin*,
812 F.2d 149 (4th Cir. 1987) ........................................................................12, 18

iv

*In re IBP Confidential Bus. Documents Litig.*,
  797 F.2d 632 (8th Cir. 1986) ................................................................28

*KMLLC Media, LLC v. Telemetry, Inc.*,
  No. 1:15-cv-432, 2015 WL 6506308 (E.D. Va. Oct. 27, 2015) ...............10

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...............................................................................7

*Lyon v. Campbell*,
  28 F.3d 1210 (4th Cir. 1994) (*per curiam*) ............................................18, 19

*Menasco, Inc. v. Wasserman*,
  886 F.2d 681 (4th Cir. 1989) ..........................................18, 19, 20, 21, 27

*Mktg. Prod. Mgmt., LLC v. Healthandbeautydirect.com, Inc.*,
  333 F. Supp. 2d 418 (D. Md. 2004) .......................................................21

*Myers v. Lee*,
  No. 10-cv-131, 2010 WL 3745632 (E.D. Va. Sept. 21, 2010) .................17

*Nat'l Org. for Women, Inc. v. Scheidler*,
  510 U.S. 249 (1994) ..............................................................................27

*Palmetto State Med. Ctr., Inc. v. Operation Lifeline*,
  117 F.3d 142 (4th Cir. 1997) ..................................................................16

*Phoenix Renovation Corp. v. Rodriguez*,
  461 F. Supp. 2d 411 (E.D. Va. 2006), *aff'd*, 258 F. App'x 526 (4th Cir. 2007)........30

*Regions Bank v. J.R. Oil Co., LLC*,
  387 F.3d 721 (8th Cir. 2004) ..................................................................13

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985).................................................................................18

*Shanaghan v. Cahill*,
  58 F.3d 106 (4th Cir. 1995) ....................................................................29

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*,
  884 F.3d 489 (4th Cir. 2018) ..................................................................14

*Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*,
  593 F. Supp. 2d 840 (E.D. Va. 2008) .....................................................28

*Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*,
  911 F.3d 192 (4th Cir. 2018) ..................................................................10

*Snyder v. Phelps*,
  562 U.S. 443 (2011)................................................................................28

*Solomon v. Am. Web Loan*,
  2019 WL 1320790 (E.D. Va. Mar. 22, 2019)..........................................16

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006) ..................................................................28

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016)........................................................................7, 8

*United States v. Abed*,
 203 F.3d 822 (4th Cir. 2000) (Table)..................................................28

*United States v. Aguilar*,
 515 U.S. 593 (1995).............................................................................22

*United States v. Cassidy*,
 814 F. Supp. 2d 574 (D. Md. 2011).....................................................28

*United States v. Denham*,
 663 F. Supp. 2d 561 (E.D. Ky. 2009) ..................................................26

*United States v. Edlind*,
 887 F.3d 166 (4th Cir.) ........................................................................23

*United States v. Mitchell*,
 877 F.2d 294 (4th Cir. 1989) ...............................................................22

*United States v. Stoker*,
 706 F.3d 643 (5th Cir. 2013) ...............................................................26

*United States v. Tillett*,
 763 F.2d 628 (4th Cir. 1985) ...............................................................17

*United States v. Wilson*,
 796 F.2d 55 (4th Cir. 1986) .................................................................25

*US Airline Pilots Ass'n v. Awappa, LLC*,
 615 F.3d 312 (4th Cir. 2010) ...............................................................18

*Walters v. McMahen*,
 684 F.3d 435 (4th Cir. 2012) ........................................................11, 12

*Williams v. Equity Holding Corp.*,
 245 F.R.D. 240 (E.D. Va. 2007)...........................................................12

*Zaletel v. Prisma Labs, Inc.*,
 226 F. Supp. 3d 599 (E.D. Va. 2016) ....................................................9

## STATUTES

18 U.S.C. § 1962                                                  *passim*

18 U.S.C. § 1964                                                  *passim*

18 U.S.C. § 1503................................................................7, 22, 27

18 U.S.C. § 1505........................................................................23

18 U.S.C. § 1343...............................................................7, 22, 27

18 U.S.C. § 1512...............................................7, 22, 23, 24, 25, 27

18 U.S.C. § 1513...............................................7, 22, 25, 26, 27

**OTHER AUTHORITIES**

First Amendment, U.S. Constitution..................................................................................*passim*

Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(6) ............................................................................*passim*

## INTRODUCTION

Plaintiff, a sitting congressman, has come before this Court to argue that the submission of an ethics complaint about him to the Office of Congressional Ethics is illegal.

Masquerading an untimely defamation claim as an infirm RICO case, Plaintiff has sought to criminalize lawful conduct. Plaintiff implausibly alleges that the submission of three ethics complaints about him to the US House of Representatives Office of Congressional Ethics ("OCE") violated RICO because Plaintiff chaired a congressional committee that had been investigating two of the three co-Defendants. Thus, Plaintiff seeks to deny the public their protected First Amendment right to file a complaint with OCE – an institution that the House of Representatives created, hosted and heralded as a way to "open the ethics process up to the participation of our fellow citizens" to make Congress "more accountable to . . . the American people."[1] Notably, this is not Plaintiff's only such lawsuit. He has filed four others, represented by the same counsel in each, all designed to stifle legitimate public criticism of his conduct.[2]

Plaintiff Devin Nunes' RICO complaint should be dismissed with prejudice under Federal Rules of Civil Procedure 12(b)(1), (b)(2), and (b)(6). The Court lacks subject matter jurisdiction because Plaintiff does not have standing. The Court does not have personal jurisdiction over

---

[1] Rep. Pelosi, on the resolution to create the OCE, *Congressional Record* (Mar. 11, 2008) p. H1529, https://www.congress.gov/crec/2008/03/11/CREC-2008-03-11-pt1-PgH1525.pdf

[2] *Devin Nunes v. Twitter, Inc., et al.*, No. CL19001715-00 (Henrico, Va. Cir. Ct. filed Mar. 19, 2019) (alleging negligence, defamation, insulting words, seeking $250 million damages); *Devin Nunes v. McClatchy Co., et. al.*, No. CL 19000629-00 (Albemarle, Va. Cir. Ct. filed Apr. 8, 2019) (alleging defamation, conspiracy, seeking $150 million damages); *Devin Nunes Campaign Committee v. Michael J. Seeley, et al.*, No. 27966 (Tulare, Ca. Sup. Ct. filed Aug. 1, 2019) *dismissed*, Sep. 3, 2019) (alleging tortious interference and conspiracy, seeking unspecified damages), *Devin Nunes v. Ryan Lizza, et al.,* No. 5:19-cv-04064 (N.D. Iowa filed Sept. 30, 2019) (alleging defamation and conspiracy, seeking $75 million damages). Relatedly, a former staffer for Rep. Nunes, filed a similar lawsuit. *Kashyap "Kash" Patel v. Politico, et. al.*, No. CL19006745-00 (Henrico, Va. Cir. Ct. filed Nov. 18, 2019 (alleging defamation and conspiracy, seeking over $250 million damages).

Defendant Campaign for Accountability because it is not "at home" in Virginia and does not have contacts with Virginia. Also, Plaintiff fails to state a claim for relief under RICO.

Nor does the Complaint plausibly allege any RICO injury, proximate cause, predicate acts, or a pattern of racketeering. Also, it does not plausibly plead that Defendants "derived income" from a pattern of racketeering activity, § 1962(a); that Defendants "acquired or maintained an interest in or control" of an enterprise through a pattern of racketeering activity, § 1962(b); or that the alleged enterprise is distinct from Defendants, as required under § 1962(c). Because the RICO claim fails, the Court lacks supplemental jurisdiction over Plaintiff's common law conspiracy claim, which, in any event, was not adequately pleaded itself. The Complaint is riddled with inaccuracies, but even assuming for purposes of this motion that they are true, as the Court must, Plaintiff has failed to state a claim.

## BACKGROUND

Plaintiff Devin Nunes, who had served as the recused chair of a congressional committee investigating Defendant Fusion GPS and Defendant Glenn Simpson, claims Defendant Campaign for Accountability ("CfA"), a non-profit organized and located outside of Virginia, filed three ethics complaints with OCE (also located outside of Virginia) about Plaintiff "to retaliate against him and to take action that was intended to harass, intimidate and influence Plaintiff in the performance of his congressional investigation." Compl. at 32 (Conclusion). Plaintiff specified no harm, and none of the alleged activity took place in Virginia. Plaintiff alleges that the submission of these three ethics complaints – and nothing more – are not only criminal acts, but also constitute a pattern of racketeering activity, even though they are unrelated, lawful acts spanning a mere seven-month period.

*The Congressional Investigation*

According to the Complaint, on March 1, 2017, the House Permanent Select Committee on Intelligence ("House Intelligence Committee"), "approved a bipartisan 'Scope of Investigation' to guide the Committee in its investigation into the Russian active measures campaign that targeted the 2016 U.S. Presidential Election." Compl. ¶ 7. At the time, Plaintiff was the chairman of the House Intelligence Committee. Compl. ¶ 5. Then and now, he is a resident of California. *Id.*

The Complaint alleges that on October 4, 2017, Plaintiff "authorized subpoenas for documents and to compel testimony from Simpson and Fusion GPS partners Peter Fritsch and Thomas Catan." Comp. ¶ 43 (footnotes omitted). The Complaint claims that on "November 14, 2017, Simpson testified behind closed doors before the House Intelligence Committee." Compl. ¶ 45. The Complaint then alleges the Committee released the transcript of Simpson's testimony on January 17, 2018, Compl. ¶ 46, and that it was "immediately obvious to Representatives and reporters alike" that Simpson "lied in his testimony to the House Intelligence Committee," Compl. ¶ 47, even though the Complaint cites to no contemporaneous statements to that effect from any Representatives or reporters, other than an obscure blog post from January 2018. *Id.*[3]

In a conclusory fashion, Plaintiff claims that "[f]earing a criminal referral for his false statements to the FBI and DOJ, for lying to Congress and the Senate, and for obstructing the House Intelligence Committee in its Russia investigation, the Defendants directly and aggressively

---

[3] The Committee's March 22, 2018 investigation report did not find that either Simpson or Fusion GPS had violated any laws, including but not limited to perjury or criminal false statements. *See* House Permanent Subcommittee on Intelligence Majority Report, *Report on Russian Active Measures* (Mar. 22, 2018), *available at* https://republicans-intelligence.house.gov/uploadedfiles/final_russia_investigation_report.pdf.

retaliated against Plaintiff, employing the same or similar means and methods as Fusion GPS and Simpson have employed multiple times in the past to smear the opposition." Compl. ¶ 50.[4]

*The Predicate Acts*

Plaintiff alleges that the "retaliation and obstruction of justice" engaged in by Defendants were comprised of nothing more than three isolated incidents, within a seven-month period of time: to wit,   "[t]hree [r]etaliatory [e]thics [c]omplaints" that CfA submitted to the OCE.[5] Compl. § D. *See also* Compl. ¶ 3 (describing the extent of Defendants' alleged "racketeering activities" as filing "fraudulent and retaliatory 'ethics' complaints against Plaintiff[.]").

*First*, Plaintiff alleges that on January 25, 2018, "CfA, acting in concert with Fusion GPS, faxed an 'ethics' complaint against Plaintiff to [OCE]." Compl. ¶ 51. The Complaint does not allege that Simpson played any role in this submission of an ethics complaint. Plaintiff claims that the "purpose of Defendants' first 'ethics' complaint was to threaten and intimidate Plaintiff, impede his communications with 'conservative' members of the press, chill reporting of Fusion GPS and Simpson's wrongdoing, interfere with Plaintiff's congressional investigation into Fusion GPS and the 'Steele Dossier", [sic] and dissuade Plaintiff from making criminal referrals to the DOJ." Compl. ¶ 52.

---

[4] For support, Plaintiff cites to the complaint filed in *Halvorssen v. Simpson*, Case 2:18-cv-2683 (E.D.N.Y.), a similarly bizarre and baseless RICO complaint that was dismissed *with prejudice* under Rule 12(b)(6) by Memorandum Decision & Order signed Aug. 9, 2019. *See* Dkt. No. 83 (entered on Aug. 26, 2019).

[5] "The Office of Congressional Ethics, established by the United States House of Representatives, is an independent, non-partisan entity charged with reviewing allegations of misconduct against Members, officers and staff of the House and, when appropriate, referring matters to the Committee on Ethics." OCE, *Rules for the Conduct of Investigations*, at 1. https://oce.house.gov/sites/congressionalethics.house.gov/files/OCE_Rules_Conduct_Investigations.pdf

*Second,* Plaintiff claims that, on March 1, 2018, "CfA faxed a second 'ethics' complaint against Plaintiff to OCE" that allegedly "falsely accused Plaintiff and staff members acting at his direction of having leaked to the press private text messages between Senator Mark Warner and Adam Waldman, a lawyer connected to Steele[.]" Compl. ¶ 53. Plaintiff does not allege ***any*** involvement by Simpson and Fusion GPS in the submission of this ethics complaint. Plaintiff alleges that "Defendants' intended goal was to undermine confidence in Plaintiff, harass and overwhelm him with litigation, and distract him from his duties as a member of the House Intelligence Committee." Compl. ¶ 54.

*Third*, Plaintiff claims that on July 11, 2018, "CfA faxed a third 'ethics' complaint to OCE, this time falsely stating that Plaintiff 'violated federal law and House ethics rules by failing to include information on his personal financial disclosure forms and accepting an impermissible gift." Compl. ¶ 55. Again, Plaintiff does not allege any involvement by Simpson and Fusion GPS in the submission of this ethics complaint. Plaintiff claims that this ethics complaint is related to information obtained through a public records request. Compl. ¶ 56. Further, by this point time, Plaintiff had already announced that the Committee's investigation had been closed, on March 12, 2018.[6]

Although Plaintiff describes alleged conduct by the newspaper *McClatchy* and another individual, Elizabeth Mair, Plaintiff does not claim that this conduct was a predicate act. As to Mair, Plaintiff alleges that "Fusion GPS, upon information and belief, recruited additional bad actors, including political operative Elizabeth 'Liz' Mair," who "controls the Swamp Accountability Project," and "encouraged and enticed them to participate in the coordinated

---

[6] Press Release: Nunes statement on Russia Investigation, Mar. 12, 2018, https://republicans-intelligence.house.gov/news/documentsingle.aspx?DocumentID=873.

attacks upon Plaintiff." Compl. ¶ 57. Plaintiff claims that "[o]n the same day CfA filed its third complaint, Swamp filed an 'ethics' complaint against Plaintiff." *Id.* However, Plaintiff does not allege that this was one of the "three retaliatory ethics complaints" or otherwise claim that it was a predicate RICO act. *Id.*

As to *McClatchy*, Plaintiff alleges: "Fusion GPS, acting in concert with CfA and Mair, coordinated the attacks on Plaintiff with *McClatchy*, a newspaper with a known axe to grind against Plaintiff. Each of the 'ethics' complaints filed against Plaintiff was leaked to *McClatchy* and immediately reported by *McClatchy* in the *Fresno Bee*." Compl. ¶ 58. In the "Conclusion" to the Complaint, Plaintiff also alleges that the "retaliation and obstruction of justice consisted of a coordinated effort by the Defendants to manufacture 'ethics' complaints against Plaintiff and utilize the press (*McClatchy*) as a weapon to pressure Plaintiff to back off his investigation of Fusion GPS and Simpson." Compl. at 32. The Complaint does not allege that *McClatchy*'s conduct was a predicate act or that Defendants' unspecified "coordinated effort …[to] utilize the press" was a predicate act. Plaintiff does not allege any facts showing how or what Defendants "coordinated" with *McClatchy*, what that means, or that Plaintiff was harmed by the "coordinat[ion]." Nor does the Complaint assert any facts showing that CfA or any of the other Defendants "leaked" the ethics complaints to *McClatchy*.[7]

In a sweeping statement, Plaintiff claims that the

purpose of the Fusion GPS/CfA 'ethics' complaints was to create negative publicity for Plaintiff, to harass, intimidate and distract Plaintiff, to cast a pall upon the Congressional investigation into the role that Fusion GPS, Simpson and the 'Steele Dossier' played in advancing the 'Russia collusion' narrative, and to dissuade Plaintiff from pursuing criminal charges against Simpson and Fusion GPS.

---

[7] Moreover, it seems doubtful that anyone "leaked" the ethics complaints; the Complaint itself cites to CfA's public postings of the ethics complaints on CfA's website. *See* Compl. ¶¶ 51, 53, 55.

Compl. ¶ 58.

Plaintiff does not allege that CfA received any remuneration or financial gain from the drafting or submission of ethics complaints. While he alleges that CfA paid Fusion GPS $140,000 "for unspecified 'research'", Compl. ¶ 13, he does not specify the payment's purpose, and he certainly does not allege that Fusion GPS paid Defendant CfA to file any of the three ethics complaints.

*Plaintiff's RICO and Common Law Conspiracy Claims*

Plaintiff claims that Defendants Fusion GPS, Simpson, and CfA violated all four sections of RICO, 18 U.S.C. § 1962(a)-(d). In Count I, Plaintiff alleges that all three Defendants violated RICO § 1962(a)-(c), through a pattern of racketeering activity comprised of the following alleged predicate acts: violations of Title 18 U.S.C. §§ 1503(a), 1512(b)(1) & (b)(2), 1513(e), and 1343, and that these predicate acts constituted a "pattern of racketeering," Compl. ¶ 71, that "injured [Plaintiff] in his business, property and reputation." Compl. ¶ 72. In Count II, Plaintiff alleges that Defendants violated the RICO conspiracy provision, 18 U.S.C. § 1962(d). Finally, in Count III, Plaintiff alleges a claim of common law conspiracy.

## ARGUMENT

## I.      PLAINTIFF DOES NOT HAVE STANDING

The plaintiff has the burden of establishing the "irreducible constitutional minimum" of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "'The standing requirement stems from Article III ... [and] is a threshold jurisdictional question'" that ensures a lawsuit is "'appropriate for the exercise of the [federal] courts' judicial powers.'" *Brown v. R & B Corp. of Virginia*, 267 F. Supp. 3d 691, 695 (E.D. Va. 2017) (quoting *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017)).

Nunes' indefinite, speculative, and abstract claims of having "been injured in his business, property and reputation," Compl. ¶ 72, do not satisfy his burden.

To demonstrate standing, the plaintiff must show: "(1) an injury in fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision." *Carroll v. Washington Gas Light Fed. Credit Union*, No. 1:17-CV-1201, 2018 WL 2933412, at *2 (E.D. Va. Apr. 4, 2018) (O'Grady, *J.*) (quoting *Spokeo*, 136 S. Ct. at 1548). A concrete injury "must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1584. It must be "'real,' and not 'abstract.'" *Spokeo*, 136 S. Ct. at 1548. In other words, "the plaintiff must have suffered an injury or threat of injury that is 'credible,' not 'imaginary or speculative.'" *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979)).

Plaintiff does not establish any injury-in-fact to himself. He describes his "injuries" in a conclusory and abstract fashion that is not entitled to a presumption of truth. *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (explaining that at the pleading stage, conclusory statements and legal conclusions about the alleged injury are not presumed true). For instance, the Complaint alleges: "Plaintiff was injured in his business, property and reputation by Defendants' racketeering and tortious conduct," Compl. ¶ 4; "Plaintiff has been injured in his business, property and reputation by reason of Defendants' multiple violations of Title 18 U.S.C. § 1962," Compl. ¶ 72; "Plaintiff suffered injury and loss," Compl. ¶ 73; "Plaintiff suffered injury and loss," Compl. ¶ 78; "Plaintiff suffered damage and incurred loss, including, but not limited to, injury to his business reputation, court costs, and other damages." Compl. ¶ 82. The Complaint's conclusory allegations do not show that any injury to Plaintiff from the ethics complaints "actually exist[s]." *Spokeo*, 136 S. Ct. at 1584.

Plaintiff has not alleged any concrete and particularized harm from the filing of ethics complaints with OCE. Therefore, he lacks standing and the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## II.     THE COURT LACKS PERSONAL JURISDICTION OVER CFA

The Complaint fails to establish personal jurisdiction over Defendant CfA, which is not "at home" in Virginia. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

"To enter a judgment that adjudicates the rights of a party, a federal court must have personal jurisdiction over that party." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 228 (4th Cir. 2019). At this stage, Plaintiff must make a "*prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). In determining whether the Plaintiff has made a *prima facie* showing of personal jurisdiction, the Court takes "the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Id.*

Even under that standard, however, Plaintiff does not allege any contacts between CfA and Virginia. Plaintiff cannot show that the Court has specific personal jurisdiction over CfA. Specific jurisdiction is appropriate where "a defendant's alleged contacts with the forum also constitute the asserted basis for the suit." *Zaletel v. Prisma Labs, Inc.*, 226 F. Supp. 3d 599, 606 (E.D. Va. 2016). The basis of Plaintiff's suit is CfA's submission of ethics complaints to the OCE, an office of the U.S. House of Representatives in the District of Columbia, *see* Compl. ¶¶ 3, 51-55, 58, 64, 72, and the drafting and submission of the ethics complaints took place outside of Virginia. *See* Ex. A, Stevens Decl. ¶¶ 5-6. Therefore, this Court cannot exercise specific jurisdiction over CfA because Plaintiff does not allege that his suit "aris[es] out of or relate[s] to the defendant's contacts with the forum," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 .S. 915, 923–24 (2011) (alterations in original) (internal quotation marks and citation omitted).

9

In the absence of specific jurisdiction, Plaintiff must show "a State's *general* jurisdiction over the defendant by demonstrating the defendant's continuous and systematic contact with the State." *Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198 (4th Cir. 2018) (emphasis in original). A court "may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127 (internal quotation marks and citations omitted). "[O]nly a limited set of affiliations with a forum will render a defendant amendable to all-purpose [or general] jurisdiction there." *KMLLC Media, LLC v. Telemetry, Inc.*, No. 1:15-cv-432, 2015 WL 6506308, at *4 (E.D. Va. Oct. 27, 2015) (quoting *Daimler AG,* 571 U.S. at 137) (alterations in original). For a corporation, "the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'" *Daimler AG*, 571 U.S. at 137 (citation omitted).

Because it alleges no contacts between CfA and Virginia, the Complaint does not make a *prima facie* showing of the Court's general jurisdiction over CfA. CfA is not "essentially at home" in Virginia. *See, e.g.,* Compl. ¶ 12 (Plaintiff's description of CfA); Compl. ¶ 15 (conclusory statement that "[e]ach of the Defendants is subject to personal jurisdiction in Virginia"). The Complaint merely, and incorrectly, alleges that "CfA's executive director[ ] lives in Springfield, Virginia," Compl. at 8 n.1. *See* Ex. A, Stevens Decl. at ¶ 3. CfA is incorporated in Washington, D.C., which is also its principal place of business. *Id* at ¶ 4. No part of the drafting or submission of ethics complaints took place in Virginia. *Id*. at ¶¶ 5 & 6. CfA has no offices in Virginia. *Id.* at ¶ 4. *See Daimler AG*, 571 U.S. at 139 (parent corporation that was not incorporated in the forum state and did not have its principal place of business there, but whose subsidiary was assumed to be "at home" in the state, was not subject to suit there on claims not related to its contacts with the

10

state) (internal quotation marks and citation omitted); *Curry v. Trans Union, LLC*, No. 3:16-cv-824, 2017 WL 2058266, at *7 (E.D. Va. Apr. 26, 2017), *report and recommendation adopted,* 2017 WL 2056176 (E.D. Va. May 12, 2017) (corporation not subject to general jurisdiction in Virginia even assuming that its regional subsidiary was "at home" in Virginia; presence of a few offices and management of twenty apartment complexes were insufficient contacts for general jurisdiction). Accordingly, the suit should be dismissed under Rule 12(b)(2).

## III.  THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER RICO

### A.  STANDARDS OF LAW

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the "complaint must state a 'plausible claim for relief.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[8] "The determination whether a complaint adequately states a plausible claim is a 'context-specific task,' [*Iqbal*, 556 U.S. at 679,] in which the factual allegations of the complaint must be examined to assess whether they are sufficient 'to raise a right to relief above the speculative level.'" *Walters v. McMahen*, 684 F.3d at 439 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Although a plaintiff's "well-pleaded allegations are taken as true and the complaint is viewed in

---

[8] In reviewing a motion to dismiss under Rule 12(b)(6):

> "the court may consider 'matters of which a court may take judicial notice,' *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007), such as 'matters of public record.' *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The court can 'also consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.' *Id.*

*Griffin v. Sevatec, Inc.*, No. 1:16-CV-630, 2016 WL 4527357, at *2 (E.D. Va. Aug. 29, 2016) (O'Grady, *J.*).

the light most favorable to the plaintiff," *Gibbs v. Haynes Investments, LLC*, 368 F. Supp. 3d 901, 926–27 (E.D. Va. 2019) (internal citations and quotation marks omitted), this principle "applies only to factual allegations," *id.*, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

The complaint "must assert facts that rise above speculation and conceivability to those that 'show' a claim that is 'plausible on its face.'" *Gibbs*, 368 F. Supp. 3d at 927 (quoting *Iqbal*, 556 U.S. at 678–79). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d at 439 (citing *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gibbs*, 368 F. Supp. 3d at 927 (quoting *Iqbal*, 556 U.S. at 678). "A plaintiff bears the burden 'to allege *facts* sufficient to state all the elements of [the] claim.'" *Williams v. Equity Holding Corp.*, 245 F.R.D. 240, 242 (E.D. Va. 2007) (quoting *Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003) (emphasis added).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include more than "mere labels and conclusions stating that the plaintiff is entitled to relief." *Carroll v. Washington Gas Light Fed. Credit Union*, 2018 WL 2933412, at *2 (O'Grady, *J.*) (dismissing complaint for failure to plausibly allege specifics to support standing).

## B. PLAINTIFF FAILS TO PLAUSIBLY PLEAD EITHER A COGNIZABLE INJURY, OR THAT SUCH INJURY WAS PROXIMATELY CAUSED BY THE ALLEGED RICO VIOLATION

A RICO complaint must adequately allege that Plaintiff was "injured in his business or property by reason of a violation" of the statute. *Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 151

(4th Cir. 1987) (quoting 18 U.S.C. § 1964(c)). "An allegation of personal injury and pecuniary losses occurring therefrom are not sufficient to meet the statutory requirement of injury to 'business or property.'" *Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995) (affirming dismissal of the complaint and its "absurd" claim of a RICO violation, and awarding sanctions against the plaintiff) (internal quotation marks and citation omitted). Moreover, "[i]njury to … 'intangible property interests' is not injury that may support standing to bring RICO claims." *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 730 (8th Cir. 2004) (harm to bank's position as a bankruptcy creditor was not an actionable RICO injury).

The Complaint nowhere pleads any actionable RICO injury to Plaintiff "by reason of" the alleged predicate acts of submitting ethics complaints. *Int'l Data Bank, Ltd.*, 812 F.2d at 151 (quoting 18 U.S.C. § 1964(c)). As described previously, *supra* at Section I, the Complaint describes Plaintiff's alleged "injuries" in a conclusory and abstract fashion, such as: "Plaintiff was injured in his business, property and reputation by Defendants' racketeering and tortious conduct," Compl. ¶ 4; *see also id.* ¶¶ 72-73, 78 & 82. These assertions are nothing more than conclusory allegations, which are not entitled to a presumption of truth. *See Beck*, 848 F.3d at 270 (quoting *Iqbal*, 556 U.S. at 678). Moreover, injury to reputation is not a cognizable RICO injury. *See Hamm v. Rhone–Poulenc Rorer Pharm., Inc.,* 187 F.3d 941, 954 (8th Cir. 1999) ("Damage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c)."). Plaintiff has alleged no cognizable RICO injury "in his business or property." 18 U.S.C. § 1964(c).

The Complaint equally fails to allege proximate cause. In a RICO case, proximate cause requires the plaintiff to demonstrate a "'direct causal connection' between the predicate offense and the alleged harm." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 10-12 (2010) (noting

13

that in the RICO context, proximate cause does not refer to the foreseeability of the harm to plaintiff, but rather to "the directness of the relationship between the conduct and the harm"). When "a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries." *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 493 (4th Cir. 2018) (emphasis in original) (finding no proximate cause in a RICO action) (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)). Proximate cause "turns on the *directness* of the resultant harm, not the *foreseeability* of that harm." *Slay's Restoration*, 884 F.3d at 493 (citing *Hemi Grp.*, 559 U.S. 1). "RICO causation requires a proximity of statutory violation and injury such that the injury is sequentially the direct result—generally at 'the first step' in the chain of causation." *Slay's Restoration*, 884 F.3d at 494.

As noted above, Plaintiff does not allege how Defendants' conduct – *i.e.*, "faxing" three ethics complaints to OCE and conspiring to fax these ethics complaints to OCE – could *directly* cause any injury to Plaintiff. To the extent he attempts to allege that an ethics investigation caused his unspecified harm, he cannot plausibly allege Defendant's ethics complaints directly caused that alleged harm, because OCE specifically advises that "*a submission of information does not automatically result in an investigation*. The decision to begin an investigation (preliminary review) *lies solely* with the OCE Board." OCE, https://oce.house.gov/contact-us/make-a-submission (last visited Nov. 11, 2019) (emphasis added) (website for public's submission of information). Consequently, submitting an ethics complaint does not trigger an investigation. Any decision to initiate an investigation "lies solely" with the OCE Board. Defendants had no say in whether OCE initiated an ethics investigation into Plaintiff. They simply faxed their complaints to OCE. They did not decide to investigate Plaintiff. Therefore, any alleged harm to Plaintiff from an ethics investigation would have been the direct result of OCE's independent decision to investigate

14

Plaintiff and *not* the alleged predicate act of faxing ethics complaints. In short, the OCE's independent decision and action – not Defendants' submission of ethics complaints – would be the direct cause of any alleged harm to Plaintiff from an ethics investigation.

## C. THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER RICO § 1962(a)-(c)

Plaintiff's scattershot complaint does not state a plausible claim that Defendants violated any of the substantive RICO provisions he cites – *i.e.*, 18 U.S.C. §§ 1962(a), (b), and (c). RICO creates civil liability for "any person" (1) "who uses or invests income derived 'from a pattern of racketeering activity' to acquire an interest in or to operate an enterprise engaged in interstate commerce, § 1962(a);" (2) "who acquires or maintains an interest in or control of such an enterprise 'through a pattern of racketeering activity,' § 1962(b);" or (3) "who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs 'through a pattern of racketeering activity, § 1962(c)." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232–33 (1989).

### 1. The Complaint Fails to Plausibly Plead That Defendants "Received Any Income Derived from A Pattern of Racketeering Activity under Section 1962(a).

Under Section 1962(a), Plaintiff must plausibly allege in part that Defendants "received any income derived, directly or indirectly, from a pattern of racketeering activity…." The Complaint does not allege that Defendants received any income from submission of "three retaliatory ethics complaints" with OCE, the alleged pattern of racketeering activity. The allegation that "CfA engaged Fusion GPS as an 'independent contractor' in 2018 and paid Fusion GP [sic] nearly $140,000 for unspecified 'research,'" Compl. ¶ 13, does not establish that CfA (or any of the Defendants) "received income derived" from submitting the ethics complaints. Accordingly, the Complaint fails to state a claim for relief under § 1962(a).

2. **The Complaint Fails to Plausibly Plead That Defendants Acquired or Maintained Any Interest or Control of An Enterprise through A Pattern of Racketeering Activity under Section 1962(b).**

The Complaint does not make any factual assertions showing that Defendants "acquir[ed] or maintain[ed]" any interest in or control of an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(b). The Complaint parrots the statutory text, but alleges no facts showing that Defendants, through their alleged submissions of ethics complaints, acquired or maintained an interest in or control of any enterprise. Nor, for that matter, is it discernible from the Complaint what the enterprise is. Accordingly, this claim under Section 1962(b) fails.

3. **The Complaint Fails to Plausibly Plead An Enterprise Distinct from Defendants under Section 1962(c).**

Although a RICO claim under Section 1962(c) must allege that the defendant conspired with a distinct entity (*i.e.*, the alleged enterprise), Plaintiff has not done that here. Instead, Plaintiff alleges Defendants are coextensive with the enterprise (however amorphously alleged): "Defendants are persons associated in fact (a RICO enterprise)." Compl. ¶ 2. This pleading infirmity dooms the claim of a violation under § 1962(c). *See Solomon v. Am. Web Loan*, No. 17-cv-145, 2019 WL 1320790, at *6 (E.D. Va. Mar. 22, 2019) ("[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name.") (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). *See also Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997) ("The enterprise must be distinct from the persons alleged to have violated § 1962(c).").

Plaintiff fatally alleges that all Defendants are both the "enterprise" and the "persons" who "conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity" in alleged violation of § 1962(c). Compl. ¶ 2. The Complaint

asserts "a complete overlap between the defendants, their alleged agents, and the enterprise," and makes no allegation "that the affairs of the enterprise are any different from the affairs of the defendants." *Myers v. Lee,* 10-cv-131, 2010 WL 3745632, at *4 (E.D. Va. Sept. 21, 2010).

In addition, the Complaint fails to assert facts plausibly showing the existence of an association-in-fact enterprise. "Conclusory allegations that disparate parties were associated in fact ... are insufficient to sustain a RICO claim, absent allegations as to how the members were associated together in an 'enterprise.'" *Davis v. Hudgins*, 896 F. Supp. 561, 568 (E.D. Va. 1995), *aff'd,* 87 F.3d 1308 (4th Cir. 1996) (internal quotation marks and citation omitted). Nor does the Complaint adequately allege that "the association exists separate and apart from the pattern of racketeering activity in which it engages." *United States v. Tillett*, 763 F.2d 628, 631 (4th Cir. 1985). In other words, that the association has "an existence beyond that which was necessary to commit the predicate crimes." *Id.* at 632.

Plaintiff alleges that CfA only "act[ed] in concert with Fusion GPS" as to the first ethics complaint, Compl. ¶ 51, making no allegation that Simpson took part in any of the ethics complaints, meaning the Complaint does not even contemplate that an association in fact existed to engage in the alleged pattern of racketeering. Accordingly, the Complaint fails to state a violation of § 1962(c).

### 4.  Plaintiff Fails to Plead A "Pattern" of Racketeering Activity.

The Complaint does not assert facts showing a plausible "pattern of racketeering activity," a required element of all RICO claims. *H.J.*, 492 U.S. at 239; 18 U.S.C. § 1962(a)-(c). "'Racketeering activity' is defined as any of a number of predicate acts," *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000), including mail and wire fraud, obstruction of justice, and retaliation against an informant. "While a minimum of two predicate acts is required, two acts alone do not necessarily establish a pattern." *GE Inv. Private Placement Partners II v.*

17

*Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985)). "[T]he RICO plaintiff must also show that the predicate acts are related and that they constitute or pose a threat of continued criminal activity." *Al-Abood*, 217 F.3d at 238 (citing *H.J.,* 492 U.S. at 237–39).

The pattern requirement has two elements: (1) relatedness – "the predicate acts must be related," and (2) continuity – they "must be part of a continuous criminal endeavor." *Int'l Data Bank, Ltd.*, 812 F.2d at 154. In relatedness or continuity, the Fourth Circuit takes a "commonsensical, fact-specific approach to the pattern requirement." *Lyon v. Campbell*, 28 F.3d 1210 (4th Cir. 1994) (quoting *Menasco, Inc. v. Wasserman,* 886 F.2d 681, 684 (4th Cir. 1989)). The pattern requirement "acts to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions" and serves to weed out the allegations of wrongdoing that do not amount to "widespread fraud." *Menasco*, 886 F.2d at 683. RICO "is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Gamboa v. Velez,* 457 F.3d 703, 705 (7th Cir. 2006)).

### a.  The Complaint Does Not Plausibly Plead Continuity.

The Complaint fails to plausibly plead continuity. "Continuity … refers 'either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition*.*" *Menasco*, 886 F.2d at 683 (quoting *H.J.*, 492 U.S. at 241). RICO's continuity requirement is "'centrally a temporal concept'" and stems from "Congress's concern with 'long-term criminal conduct.'" *US Airline Pilots Ass'n*, 615 F.3d at 318 (quoting *H.J.*, 492 U.S. at 242).

"Closed-ended continuity may be established by a 'series of related predicates extending over a substantial period of time.'" *GE Inv. Private Placement Partners II*, 247 F.3d at 549

(quoting *H.J.*, 492 U.S. at 242). Predicate acts that extend "over a few weeks or months and threaten[ ] no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Menasco*, 886 F. 2d at 683-684 (quoting *H.J.*, 492 U.S. at 242) (internal quotation marks omitted). "'Time periods of less than two years have failed to provide the requisite period of time.'" *Gov't of Dominican Republic v. AES Corp.*, 466 F. Supp. 2d 680, 690 (E.D. Va. 2006) (citation omitted).

The Complaint does not assert facts showing close-ended continuity. It alleges acts that span a mere seven months – *i.e.*, CfA filed ethics complaints on January 25, 2018, March 1, 2018, and July 11, 2018. *See* Compl. ¶¶ 51, 53, 55, 57. Allegations of isolated events covering such a short period of time do not suffice to establish continuity. *See Lyon*, 28 F.3d 1210 (no continuity where the "majority" of the predicate acts took place over the course of seven months, the "remaining predicate acts were sporadic at best," and there was only one set of victims); *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) (predicate acts spanning seven years did not amount to a pattern because they involved a single scheme perpetrated by one entity against a single victim); *Gov't of Dominican Republic*, 466 F. Supp. 2d at 690 (less than two years not sufficient for continuity).

Nor does the Complaint adequately allege open-ended continuity. "Open-ended continuity may be established where, for example, the 'related predicates themselves involve a distinct threat of long-term racketeering activity,' or where the predicate acts 'are part of an ongoing entity's regular way of doing business ... or of conducting or participating in an ongoing and legitimate RICO enterprise.'" *GE Inv. Private Placement Partners II*, 247 F.3d at 549 (quoting *H.J.,* 492 U.S. at 242-43).

Plaintiff's allegations that the "pattern of racketeering" "continue[ed] through the present," Compl. ¶¶ 2 & 76, is unsupported by any factual allegations and certainly none with the "specificity needed to show a 'distinct' threat of continuing racketeering activity." *Menasco*, 886 F.2d at 684 (finding no continuity where the scheme took place over one year, was "narrowly directed towards a single fraudulent goal," "involved a limited purpose," "involved but one perpetrator" and "involved but one set of victims."). A mere three isolated events occurring over a period of less than seven months, allegedly perpetrated by CfA, and with only one purported victim do not amount to "a prolonged criminal endeavor," and thus fail to adequately allege open-ended continuity. *Id.*; *Al-Abood ex rel. Al-Abood*, 217 F.3d at 238 (finding that the facts did not meet the pattern requirement because of "the narrow focus of the scheme here—essentially a dispute between formerly close family friends" and "the commonplace predicate acts" of ordinary mail and wire fraud.).

Finally, because Plaintiff alleged a scheme that is only narrowly directed at the congressional investigation "into the role that Fusion GPS, Simpson and the 'Steele Dossier' played in advancing the 'Russia collusion' narrative," Compl. ¶ 58, it has a "built-in ending point" precluding open-ended continuity – namely, when Congress's investigation ended on March 12, 2018.[9] *US Airline Pilots Ass'n*, 615 F.3d at 319 (holding the plaintiff did not allege continuity because the purported goal of the scheme—to destroy plaintiff US Airline Pilots Association—had a built-in termination point: when the goal was achieved, the scheme would end). Once the Committee's investigation ended, no ethics complaints could have been filed with OCE against Plaintiff for the "purpose" of "cast[ing] a pall upon the Congressional investigation." Compl. ¶ 58.

---

[9] *See* Press Release: Nunes statement on Russia Investigation, Mar. 12, 2018, https://republicans-intelligence.house.gov/news/documentsingle.aspx?DocumentID=873.

The inherent limit in the alleged purpose of Defendants' alleged scheme against Plaintiff dooms a claim of open-ended continuity.

### b.  The Complaint Fails to Plausibly Plead Relatedness.

The Complaint does not adequately allege facts showing that the alleged predicate acts are related. Predicate acts are related if they have "'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Menasco*, 886 F.2d at 683 (quoting *H.J.*, 492 U.S. at 240).

Plaintiff alleges the purpose of submitting these ethics complaints at such a general level that it is meaningless and cannot support a finding of relatedness. *Mktg. Prod. Mgmt., LLC v. Healthandbeautydirect.com, Inc.*, 333 F. Supp. 2d 418, 426 (D. Md. 2004) (cautioning that RICO elements should not be interpreted "at too high a 'level of generality'") (quoting *H.J.*, 592 U.S. at 236). Plaintiff further alleges just a single scheme—filing ethics complaints against Plaintiff – that involves different participants with different purposes: he claims that CfA submitted the first ethics complaint "in concert with" with the co-Defendants, and that CfA submitted the second and third ethics complaints by itself. Plaintiff alleges that all three co-Defendants conspired to submit the first ethics complaint to retaliate against Plaintiff. But by alleging that CfA acted alone regarding its submission of the second and third ethics complaints, Plaintiff did not allege a retaliatory purpose and cannot allege a retaliatory purpose because Congress was not investigating CfA.

Plaintiff also fails to allege the "results" of CfA's ethics complaints beyond mere conclusory allegations, let alone related results. *See supra* Section I (discussing Plaintiff's insufficient pleading of injury). These allegations do not show sufficient relatedness of the purpose, participants, or results to constitute a "pattern."

### 5.   The Complaint Does Not Adequately Plead Predicate Acts.

The premise of the Complaint is absurd: that submitting ethics complaints to the OCE about a sitting congressman amounts to criminal conduct. That cannot be. Whereas only other members of Congress may make referrals to the US House of Representatives Committee on Ethics, Congress created the OCE as *the* place for the public, which includes CfA, to file an ethics complaint about a sitting member of Congress.[10] Following Congress' prescribed OCE procedures cannot constitute a predicate act for RICO. Notwithstanding the patent inanity of Plaintiff's claims, CfA below explains why Plaintiff's catalog of criminal statutory violations (*i.e.*, "wire fraud in violation of Title 18 U.S.C. § 1343 and acts of obstruction of justice in violation of Title 18 U.S.C. §§ 1503(a), 1512(b), 1512(d) and 1513(e)," Compl. ¶ 2) do not state a single plausible violation.

### a.   Plaintiff Fails to Plausibly Plead a Violation of Section 1503(a).

Plaintiff's allegation that Defendants have violated Section 1503(a) has no application here. Section 1503(a) applies to obstruction of "judicial proceedings," not congressional investigations. *United States v. Aguilar*, 515 U.S. 593, 599 (1995) ("The action taken by the accused must be with an intent to influence judicial or grand jury proceedings; it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority."); *see* 18 U.S.C. § 1505 (interference with congressional proceedings). Moreover, the filing of ethics complaints against the chair of a congressional committee is lawful and protected First Amendment activity, and thus cannot constitute a corrupt interference with *any* proceeding. *See United States v. Mitchell*, 877 F.2d 294, 299 (4th Cir. 1989)

---

[10] Rep. Pelosi, on the resolution to create the OCE, *Congressional Record* (Mar. 11, 2008) p. H1529 (stating that Congress established OCE as a way to "open the ethics process up to the participation of our fellow citizens" and make Congress "more accountable to . . . the American people"), https://www.congress.gov/crec/2008/03/11/CREC-2008-03-11-pt1-PgH1525.pdf.

(Section 1505 requires intent to "corruptly influence a congressional investigation").[11]

### b.  Plaintiff Fails to Plausibly Plead a Violation of §§ 1512(b)(1) or (b)(2).

The Complaint fails to plausibly allege the predicate acts of tampering with a witness, 18 U.S.C. § 1512(b)(1), (b)(2). "Section 1512(b)(1) makes it a crime to (1) knowingly (2) use intimidation, threats, or corrupt persuasion or engage in misleading conduct toward another (3) with the intent to influence, delay, or prevent the (4) testimony of that person in an official proceeding." *United States v. Edlind*, 887 F.3d 166, 172–73 (4th Cir.).

The Complaint does not plead factual content that permits the reasonable inference that Defendants, in lawfully submitting ethics complaints to OCE, had the requisite intent to "influence, delay or prevent the testimony of any person in an official proceeding." 18 U.S.C. § 1512(b)(1). Plaintiff cannot plausibly allege that someone who uses the official and prescribed process for submitting ethics complaints has "knowingly" used intimidation or threats with the intent to influence testimony. Rather, Defendant "knowingly" submitted an ethics complaint via the appropriate avenue (*i.e.*, with OCE), an action that does not guarantee an investigation into Plaintiff. Were the Court to find such allegations plausible, no member of the public could ever file an ethics complaint with OCE, which cannot be, as creating a route for public participation in the congressional ethics process was one of the House of Representatives' core purposes in

---

[11]  The third and final alleged ethics complaint could not have plausibly obstructed the congressional investigation because it was submitted on July 11, 2018, four months after Plaintiff announced "the Committee has finished its Russia investigation," on March 12, 2018. Press Release: Nunes statement on Russia Investigation, Mar. 12, 2018, https://republicans-intelligence.house.gov/news/documentsingle.aspx?DocumentID=873. Also, on April 6, 2017, Plaintiff announced he had recused himself from the investigation, well before CfA allegedly submitted any ethics complaints. *See* Nunes Statement on Russia Investigation (Apr. 6, 2017), https://intelligence.house.gov/news/documentsingle.aspx?DocumentID=775. It is not plausible that CfA could have submitted ethics complaints against a recused chairman with the intent of influencing the investigation's findings or recommendations, as the chairman's recusal indicates that he would play no role in such decisions.

creating OCE, *see supra* at 22.[12]

The Complaint also fails to identify any testimony that Defendants allegedly sought to influence, vaguely stating only that Defendants acted with "the intent to influence, prevent or delay the testimony of Plaintiff, other members of the House Intelligence Committee, and other third-parties in an official proceeding." Compl. ¶ 68. The Complaint does not say what testimony of Plaintiff or "other members" this refers to, when it took place, what it concerned, how and whether Defendants knew about it, and how the submission of an ethics complaint amounted to knowingly intending to influence such testimony.

Section 1512(b)(2) similarly requires in part that Defendants "knowingly use[d] intimidation, threaten[ed], or corruptly persuade[d] another person, or attempt[ed] to do so, or engage[d] in misleading conduct toward another person, with intent to" cause a person to withhold testimony or documents from an official proceeding; alter or destroy an object "with intent to impair the object's integrity or availability for use in an official proceeding"; "evade legal process summoning that person to appear as a witness" in an official proceeding; or "be absent from an official proceeding" to which the person was summoned. Plaintiff merely parrots the statute, Compl. ¶ 68, but fails to allege any facts showing Defendants' intent to cause Plaintiff to withhold "one or more criminal referrals" *by submission of an ethics complaint* through the process blessed and created by OCE and the House of Representatives.

---

[12] The process for submitting such complaints is set forth in the OCE rules. *See* OCE, Rules for the Conduct of Investigations, at 7, https://oce.house.gov/sites/congressionalethics.house.gov/files/OCE_Rules_Conduct_Investigations.pdf

### c.   Plaintiff Fails to Plausibly Plead a Violation of § 1512(d)(2)-(4).

The Complaint's claims of violations of § 1512(d)(2)-(4) likewise fail. The Complaint, again tracking the statutory text, merely alleges in a conclusory fashion that:

> Fusion GPS, Simpson and CfA intentionally harassed Plaintiff and thereby hindered, delayed, prevented or dissuaded Plaintiff and other members of the House Intelligence Committee, or attempted to do so, from (a) reporting to a law enforcement officer of the United States, including the FBI and/or DOJ, the commission or possible commission of a Federal offense, (b) seeking the arrest of Simpson, other officers and employees of Fusion GPS, and/or Steele, and (c) causing a criminal prosecution to be sought or instituted[.]

Compl. ¶ 69. The purpose of Section 1512(d) is to "'reach thinly-veiled threats that create justifiable apprehension' in a witness." *United States v. Wilson*, 796 F.2d 55, 57 (4th Cir. 1986) (quoting 128 Cong. Rec. H8469 (daily ed. Oct. 1, 1982) (addressing the prior codification of the provision at § 1512(b)). Ethics complaints submitted to OCE are not "threats;" as Congress created OCE in part for the purpose of receiving such complaints. *See supra* at 22 n.10. The Complaint also fails to assert any facts showing that any of Defendants "intentionally harassed" Plaintiff, § 1512(d); that Plaintiff "justifiably reacted adversely" to the ethics complaints; or that Plaintiff failed to take any action he otherwise would have taken in response to the ethics complaints; or that Defendants had the requisite intent to harass. *See United States v. Wilson*, 796 F.2d at 57 (finding that evidence of the defendant's threatening statements to witnesses sitting in the hallway outside of the courtroom and the witnesses' reactions was sufficient to sustain the verdict that defendant violated § 1512(d)). Faxing an ethics complaint to OCE cannot plausibly amount to "intent to harass" a witness under § 1512(d).

### d.   Plaintiff Fails to Plausibly Plead a Violation of § 1513(e).

Plaintiff attempts to plead a violation of 18 U.S.C. § 1513(e), but the Complaint's allegations show that Plaintiff cannot establish that Defendants acted with the intent required by

that provision. A violation of § 1513(e) requires proof that "(1) [the defendant] knowingly took an action with intent to retaliate; (2) [the defendant] harmed [the informant]; and (3) [the defendant's] retaliation was *spawned by* [the informant's] assistance to law enforcement." *United States v. Stoker*, 706 F.3d 643, 646 (5th Cir. 2013) (emphasis added).

The lawful submission of an ethics complaint cannot constitute a violation of Section 1513(e), because the statute requires that the defendant act "knowingly, with the intent to retaliate," and that the defendant's action be "harmful" to the victim, neither of which can be satisfied by the mere act of faxing an ethics complaint to OCE.

Plaintiff does not allege that he ever provided truthful information about a crime to law enforcement, or that Defendants had knowledge that Plaintiff provided such information, or that Defendants retaliated against Plaintiff *for providing* truthful information about a crime to law enforcement. The Complaint states that: "Fearing a criminal referral for his false statements to the FBI and DOJ, for lying to Congress and the Senate, and for obstructing the House Intelligence Committee in its Russia investigation, the Defendants directly and aggressively retaliated against Plaintiff …." Compl. ¶ 50. Therefore, the Complaint does not and cannot allege any facts showing that Defendants' alleged "retaliation was spawned by [Nunes'] assistance to law enforcement," *Stoker*, 706 F.3d at 646, and that Defendants knowingly faxed the ethics complaints with the intent to retaliate against Plaintiff for providing to a law enforcement officer truthful information about a crime. *See United States v. Denham*, 663 F. Supp. 2d 561, 564-65 (E.D. Ky. 2009) ("The retaliatory intent must be *for* something, and the statute says the retaliation is *for* information provided to a law enforcement officer.") (emphasis in original). On that basis, the Complaint fails to allege a violation of § 1513(e).

### e. Plaintiff Fails to Plausibly Plead a Violation of § 1343.

To the extent Plaintiff alleges a predicate act of wire fraud, *see* Compl. ¶ 2, 71, which is unclear because it shows up merely as a citation to the statute, those "conclusory allegations fail to satisfy Fed. R. Civ. P. 9(b)'s requirement that averments of fraud be stated with particularity." *Menasco*, 886 F.2d at 684. The Complaint also makes no allegations of "(1) the existence of a scheme to defraud and (2) the fact that the defendant used or caused the use of wire communications in furtherance of that scheme," as required for a violation of Section 1343. *United States v. Taylor*, ___ F.3d ___, No. 18-cv-4414, 2019 WL 5700359, at *4 (4th Cir. Nov. 5, 2019).

### f. Defendants' Alleged Criminal Conduct Constitutes Protected First Amendment Activity.

Defendants' alleged actions are protected by the First Amendment and thus cannot violate 18 U.S.C. §§ 1343, 1503, 1512, 1513. "Conduct alleged to amount to … one of the … somewhat elastic RICO predicate acts may turn out to be fully protected First Amendment activity, entitling the defendant to dismissal." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 264 (1994) (Souter, J. concurring). This is just such a case.

Here, the alleged conduct is the submission of ethics complaints about Plaintiff, a public official, Compl. ¶ 5, regarding the congressman's alleged leaks of private communications, his failure to disclose financial material as required by House rules, and his accepting an impermissible gift. *Id.* ¶¶ 53 & 55. These complaints constitute speech on a matter of public concern because they relate to a "matter of political, social, or other concern to the community" and are "a subject of legitimate news interest." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (internal quotation marks and citations omitted). "[S]peech on 'matters of public concern' ... is 'at the heart of the First Amendment's protection.'" *Id.* at 451-52 (citation omitted). Defendants' alleged ethics complaints are protected speech about the character, conduct and qualifications of an elected official, and

cannot amount to a violation of any of the statutes Plaintiff cites as predicate acts. *See also United States v. Cassidy*, 814 F. Supp. 2d 574, 583 (D. Md. 2011) (dismissing indictment for cyberstalking because it was directed at protected speech: the Tweets and blog posts, "although in bad taste," concerned the character and qualifications of a well-known religious figure). Therefore, the Complaint should be dismissed for failure to plead predicate acts.[13]

## D. PLAINTIFF FAILS TO PLAUSIBLY PLEAD A VIOLATION OF THE RICO CONSPIRACY PROVISION

"Section 1962(d) makes it unlawful for any person to conspire to violate the substantive RICO provisions." *Aggarwal v. Sikka*, No. 1:12-CV-60, 2012 WL 12870349, at *5 (E.D. Va. June 12, 2012). Plaintiff must allege "(1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant[s] knew of and agreed to the overall objective of the RICO offense." *United States v. Abed*, 203 F.3d 822 (4th Cir. 2000) (Table). Conclusory allegations that CfA acted "in concert with" others, Compl. ¶ 51, do not plausibly show any specific agreement between two or more people to file ethics complaints (*i.e.,* the alleged substantive RICO offense), let alone an agreement to the overall objective of the alleged RICO offense. The Complaint fails

---

[13] Plaintiff's claims are also barred by the *Noerr-Pennington* doctrine. "The *Noerr-Pennington* doctrine grants First Amendment immunity to those who engage in petitioning activity." *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310 (4th Cir. 2003). Under that doctrine, "bona fide efforts to obtain or influence legislative, executive, judicial or administrative actions are immune from civil liability." *Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*, 593 F. Supp. 2d 840, 844 (E.D. Va. 2008). Courts have expanded the doctrine beyond its original antitrust context. *See IGEN Int'l*, 335 F.3d at 310 (4th Cir. 2003) (applying the doctrine "universally" to business torts); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 939 (9th Cir. 2006) (finding the doctrine could extend to the RICO context); *see also Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1155 (E.D. Cal. 2017) (barring RICO claims under the *Noerr-Pennington* doctrine). Here Defendants have engaged in protected petitioning activity involving the legislature, and they are entitled to First Amendment immunity for submitting their ethics complaints to the OCE. *See In re IBP Confidential Bus. Documents Litig.*, 797 F.2d 632, 641 (8th Cir. 1986) (Entity engaged in protected petitioning activity by submitting a letter to Congressman and subcommittee members responding to the investigation and charges made by a witness).

to plead any agreement at all, and "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Field v. GMAC LLC*, 660 F. Supp. 2d 679, 688 (E.D. Va. 2008) (dismissing RICO conspiracy claim) (quoting *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir. 1990)).

Moreover, because Plaintiff has failed to adequately allege a violation of the RICO substantive provisions, 1962(a)-(c), Plaintiff's RICO conspiracy claim also fails. *See GE Inv. Private Placement Partners II*, 247 F.3d 543, 551 n.2 ("Because the pleadings do not state a substantive RICO claim under § 1962(c), Plaintiffs' RICO conspiracy claim fails as well."). *See also Efron v. Embassy Suites (Puerto Rico), Inc.,* 223 F.3d 12, 21 (1st Cir. 2000) ("[I]f the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails") (cited in *GE Inv. Private Placement Partners II*, 247 F.3d at 551 n.2); *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) (affirming dismissal of RICO conspiracy claim where the complaint did not adequately allege a substantive violation of RICO).

## IV.     THE COMMON LAW CONSPIRACY CLAIM SHOULD BE DISMISSED

Because Plaintiff's RICO claims must be dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's common law conspiracy claim. 28 U.S.C. § 1367(c)(3). *See Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (A "court has discretion to dismiss or keep a case when it 'has dismissed all claims over which it has original jurisdiction.'"); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").

Furthermore, Plaintiff fails to state a plausible claim for common law conspiracy. *"*A common law conspiracy exists under Virginia law where 'two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose, or some lawful purpose by a criminal or unlawful means.'" *Phoenix Renovation Corp. v. Rodriguez*, 461 F. Supp. 2d 411, 429 (E.D. Va. 2006) (quoting *Commercial Business Systems, Inc. v. Bellsouth Services, Inc.,* 453 S.E.2d 261, 267 (Va. 1995)), *aff'd,* 258 F. App'x 526 (4th Cir. 2007).

For many of the same reasons that Plaintiff's RICO claims fail, so too does his common law conspiracy claim. He has not plausibly alleged an agreement between any of Defendants, much less an agreement to accomplish an unlawful purpose or a lawful purpose by unlawful means. Submitting the ethics complaints is both a lawful purpose and a lawful means. He also has not alleged any damage from the alleged conspiracy.

## CONCLUSION

For all of the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:  November 22, 2019

By: /s/ Kerry Brainard Verdi
Kerry Brainard Verdi
**Verdi & Ogletree PLLC**
1325 G Street, NW
Suite 500
Washington, DC 20005
Tel: (202) 449-7703
Fax: (202) 449-7701
kverdi@verdiogletree.com

*Counsel for Defendant Campaign for Accountability*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 22, 2019, the foregoing was filed with the Court's CM/ECF Service, and thereby provided to counsel of record.


<u>/s/ Kerry Brainard Verdi</u>
Kerry Brainard Verdi