IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| DEVIN G. NUNES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case 1:19-cv-1148-LO-TCB |
| | ) | |
| | ) | **TRIAL BY JURY** |
| FUSION GPS a/k/a BEAN, LLC | ) | **IS DEMANDED** |
| GLENN SIMPSON | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| CAMPAIGN FOR ACCOUNTABILITY, | ) | |
| INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# <u>AMENDED COMPLAINT</u>

Plaintiff, Devin G. Nunes ("Plaintiff"), by counsel, Pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure (the "Rules"), files the following Amended Complaint against defendants, Fusion GPS a/k/a Bean, LLC ("Fusion GPS"), Glenn Simpson ("Simpson") and Campaign for Accountability, Inc. ("CfA"), jointly and severally.

Plaintiff seeks (a) compensatory damages, statutory damages (threefold the actual damages sustained), and punitive damages in the sum of **$9,900,000.00**, plus (b) prejudgment interest on the principal sum awarded by the Jury at the rate of six percent per year from January 25, 2018 pursuant to § 8.01-382 of the Virginia Code (1950), as amended (the "Code"), (c) a reasonable attorney's fee, (d) post-judgment interest, and (e) court costs – arising out of the Defendants' acts of racketeering activity in violation of Title 18 U.S.C.

1

§ 1962(a-c), conspiracy to violate Title 18 U.S.C. § 1962(a-c), and common law conspiracy.

## I.  **INTRODUCTION**

1.      This is a case about active, coordinated and ongoing corruption, fraud and obstruction of justice by Fusion GPS, its founder, Glenn Simpson, and the CfA – wrongdoing now admitted to in a book written by Simpson and his partner, Peter Fritsch, titled, ironically, *Crime in Progress: Inside the Steele Dossier and the Fusion GPS Investigation of Donald Trump ("Crime in Progress")*, and chronicled in the detailed December 2019 report of the Office of the Inspector General.

2.      The Defendants are persons associated in fact (a RICO enterprise) who engage in interstate commerce by the use of one or more instrumentalities, including, but not limited to, the Internet, computers, telephones, mails and facsimile.  In 2018, the Defendants received income derived, directly or indirectly, from a pattern of racketeering activity and have used or invested such income, directly or indirectly, in the establishment or operation of an enterprise engaged in, or the activities of which affect, interstate commerce.  Through a pattern of racketeering activity, involving acts of wire fraud in violation of Title 18 U.S.C. § 1343 and acts of obstruction of justice in violation of Title 18 U.S.C. §§ 1503(a), 1512(b), 1512(d) and 1513(e), the Defendants have maintained, directly or indirectly, an interest in or control of an enterprise which is engaged in, or the activities of which affect, interstate commerce.  While associated with such enterprise, the Defendants conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.  Between 2018 and the

present, the Defendants have engaged in activity that is prohibited by Title 18 U.S.C. §§ 1962(a), 1962(b), and 1962(c).

3.      The Defendants' ongoing and continuous racketeering activities are part of a joint and systematic effort to intimidate, harass, threaten, influence, interfere with, impede, and ultimately to derail Plaintiff's congressional investigation into Russian intermeddling in the 2016 U.S. Presidential Election.  In furtherance of their conspiracy, the Defendants, acting in concert and with others, filed fraudulent and retaliatory "ethics" complaints against Plaintiff that were solely designed to harass and intimidate Plaintiff, to undermine his Russia investigation, and to protect Simpson, Fusion GPS and others from criminal referrals.

4.      Plaintiff was injured in his business, property and reputation by Defendants' racketeering activity and tortious misconduct.  Plaintiff brings this action (a) to recover money damages for injuries caused by the Defendants' racketeering activity, (b) for disgorgement of the ill-gotten gains and fruits of Defendants' unlawful enterprise, (c) to impose reasonable restrictions on Defendants' future activities, including Defendants' use of fraudulent opposition research and fraudulent "ethics" complaints to intimidate members of Congress and other law enforcement officers in the performance of their official duties, (d) to enjoin the Defendants from committing wire fraud and from obstructing justice, and (e) to order the dissolution or reorganization of Fusion GPS and the CfA so as to prevent or restrain the Defendants from committing fraud, lying to the Federal Bureau of Investigation ("FBI"), Department of Justice ("DOJ"), Congress and Senate, obstructing justice, and violating Title 18 U.S.C. § 1962 in the future.

## II.  **PARTIES**

5.      Plaintiff has served in the United States House of Representatives since 2003.  He currently represents California's 22nd Congressional District, which is located in the San Joaquin Valley and includes portions of Tulare and Fresno Counties.  He is the author of the book, *Restoring the Republic*, which was published in September 2010.  Plaintiff was born in Tulare, California.  His family is of Portuguese descent, having emigrated from the Azores to California.  From childhood, he worked on a farm that his family operated in Tulare County for three generations.  He raised cattle as a teenager, used his savings to begin a harvesting business, and then bought his own farmland with his brother.  Plaintiff graduated from Tulare Union High School.  After associate's work at College of the Sequoias, he graduated from Cal Poly San Luis Obispo, where he received a bachelor's degree in agricultural business and a master's degree in agriculture.  Plaintiff was first elected to public office as one of California's youngest community college trustees in state history at the age of 23.  As a member of the College of the Sequoias Board from 1996 to 2002, he was an advocate for distance learning and the expansion of programs available to high school students.  In 2001, he was appointed by President George W. Bush to serve as California State Director for the United States Department of Agriculture's Rural Development section.  He left this post to run for California's 21st Congressional District and now serves in the 22nd District as a result of redistricting in 2010.  Plaintiff serves as Ranking Member of the House Permanent Select Committee on Intelligence, having been appointed to the Committee in the 112th Congress and serving as Committee Chairman during the 114th and 115th Congresses.  He was appointed to the Ways and Means Committee in the 109th Congress and now serves as a Ranking Member of the Health

Subcommittee and a member of the Trade Subcommittee, having served as Chairman of the Trade Subcommittee in the 113th Congress. Plaintiff previously served as a member of the House Budget Committee during the 111th Congress. In the 108th Congress, his first term in the House of Representatives, he served on the House Resources Committee, in which he was Chairman of the National Parks Subcommittee, and on the Agriculture and Veterans Affairs Committees. Congressman Nunes has traveled extensively to war zones to meet with soldiers and examine first-hand their status. As a member of the House Permanent Select Committee on Intelligence, he participates in oversight of the U.S. national security apparatus, including the intelligence-related activities of seventeen agencies, departments, and other elements of the United States Government, most of which are located in Virginia within the Alexandria Division. [https://nunes.house.gov/about/; https://www.devinnunes.com/bio].

6. Created in 1977, the House Permanent Select Committee on Intelligence (the "House Intelligence Committee") oversees the nation's intelligence agencies, including components of the Departments of Defense, Homeland Security, Justice, State, Treasury and Energy. Consistent with its mission and jurisdiction, the House Intelligence Committee has the authority and power, *inter alia*, to conduct investigations, issue subpoenas for the production of memoranda, documents and records or other material, to compel testimony from witnesses, and to make criminals referrals to the DOJ. [https://republicans-intelligence.house.gov/uploadedfiles/hpsci_rules_of_procedure_-_115th_congress.pdf; https://www.govinfo.gov/content/pkg/HMAN-115/pdf/HMAN-115.pdf].

7.     On March 1, 2017, the House Intelligence Committee approved a bipartisan "Scope of Investigation" to guide the Committee in its investigation into the Russian active measures campaign that targeted the 2016 U.S. Presidential Election.  Plaintiff confirmed that the "Intelligence Committee has been investigating Russia for years and warning about the Putin regime's hostile international actions, its aggression in cyber space, and its influential international propaganda campaigns.  The committee is determined to continue and expand its inquiries into these areas, including Russian activities related to the 2016 U.S. elections.  On a bipartisan basis, we will fully investigate all the evidence we collect and follow that evidence wherever it leads."  In its investigation, the Committee publicly vowed to conduct interviews, take witness testimony and to "seek access to and custody of all relevant information, including law enforcement and counterintelligence information, consistent with the Committee's oversight jurisdiction and investigative responsibilities." [https://intelligence.house.gov/news/documentsingle.aspx?DocumentID=217].

8.     Defendant, Fusion GPS, is a Delaware limited liability company headquartered in Washington, D.C.   Fusion GPS represents that it "provides premium research, strategic intelligence, and due diligence services to corporations, law firms, and investors worldwide." [http://www.fusiongps.com/].  In truth, Fusion GPS is a political war room for hire that specializes in dirty tricks and smears.  As a regular way of doing business, it smears the opposition on behalf of its undisclosed clients.  As disclosed and admitted in *Crime in Progress*, one of Fusion GPS's main targets in 2018 and 2019 was Plaintiff.  Upon information and belief, many of Fusion GPS' clients, agents and donors are located in Virginia.  Fusion GPS repeatedly uses the same means and methods:  it creates fake "dossiers" and supplies the fraudulent documents and information to

6

"friendlies" in the media for dissemination online and via social media.  In 2018, for instance, Fusion GPS used newspaper conglomerate, The McClatchy Company ("McClatchy"), as a media sympathizer to propagate falsehoods and obstruct Plaintiff in the performance of his duties as Chairman of the House Intelligence Committee.  Another technique employed by Fusion GPS is "astro-turfing".  Astroturfing is the attempt to create an impression of widespread grassroots support for a position, where no such support actually exists.  Fusion GPS uses multiple "cut-outs", online identities and fake pressure groups to mislead the public into believing that its positions on behalf of clients are correct and/or commonly held.   CfA is regularly used by astroturfers like Fusion GPS. [https://fortune.com/2016/08/19/google-transparency-project-2/].

9.     Defendant, Simpson, is a principal of Fusion GPS.  Simpson manages Fusion GPS and is its "public" face.  In 2016, Simpson conspired with Perkins Coie, LLP ("Perkins Coie"), Orbis Business Intelligence, Ltd. ("Orbis") and Christopher Steele ("Steele") to manufacture a compendium of fake "intelligence" reports that Simpson and Steele provided to the FBI and DOJ and then leaked to mainstream media outlets, for the express purpose of instigating and promoting the false narrative that the Trump campaign or persons associated with it colluded with Russians. [https://gop.com/meet-fusion-gps/]. At all times material to this case, Simpson and Fusion GPS shared a common goal with the Democratic National Committee ("DNC") and the Hillary Clinton presidential campaign of using the false and defamatory statements in the Steele/Fusion "dossier" to poison the minds of voters against candidate Donald Trump ("Trump") and to influence the outcome of 2016 Presidential Election.

10.     Orbis is a corporation organized and existing under the laws of the United Kingdom.   Steele founded Orbis in 2009. [https://orbisbi.com/about-orbis/].   Orbis describes itself as a leading corporate intelligence consultancy. [https://orbisbi.com/]. Steele graduated from Cambridge University in 1986 with a degree in social and political science.   He worked for British intelligence, MI6, until 2008.

11.     Perkins Coie is an international law firm [https://www.perkinscoie.com/en/] with offices worldwide.   Marc E. Elias ("Elias") is the chair of Perkins Coie's Political Law Group. [https://www.perkinscoie.com/en/professionals/marc-e-elias.html].   Michael Sussmann ("Sussmann") is a partner at Perkins Coie.   Sussmann, a former Justice Department official, represents that he is "a nationally-recognized privacy, cybersecurity and national security lawyer.   He is engaged on some of the most sophisticated, high-stakes matters today, such as his representation of the Democratic National Committee and Hillary Clinton's presidential campaign in their responses to Russian hacking in the 2016 presidential election."     Sussman is often quoted in the *Wall Street Journal*. [https://www.perkinscoie.com/en/professionals/michael-sussmann.html].

12.     Defendant, CfA, is a dark money, partisan, left-wing 501(c)(3) nonprofit organization that uses the Freedom of Information Act, litigation, and "aggressive communications" to target government officials, principally conservative Republicans. [https://campaignforaccountability.org/about/].[1]   CfA claims (ironically) that it "works on

---

[1]     CfA was founded in 2015 by alumni of prominent left-wing opposition research super PAC, American Bridge 21st Century, and Citizens for Responsibility and Ethics in Washington (CREW), an "advocacy group" that uses "aggressive legal action, in-depth research, and bold communications" to target Republican officeholders. [*See* https://www.citizensforethics.org/who-we-are/].   Daniel E. Stevens ("Stevens"), CfA's executive director, lives in Springfield, Virginia.

behalf of the public interest to expose corruption, negligence and unethical behavior wherever it may occur." As part of its business, CfA operates a website, a Twitter account (@Accountable_Org), a Facebook account, a YouTube channel, and publishes articles via Medium. In 2017, CfA received a total of $994,811 in contributions and grants. In 2018, CfA received a total of $1,270,480 in contributions and grants. CfA does not disclose the identities of its donors. However, it has been widely reported that one of CfA's major donors is the left-wing funding/incubation non-profit, New Venture Fund. [https://www.influencewatch.org/non-profit/new-venture-fund/;

http://www.siliconbeat.com/2016/07/19/googles-secretive-and-deep-pocketed-foe-heavily-funded-by-gates-hewlett-foundations/]. All three (3) CFA "ethics" complaints against Plaintiff at issue in this action are directly connected to Fusion GPS. The first complaint was for allegedly leaking information on Fusion GPS; the second was for allegedly leaking text messages from and to Adam Waldman, a lawyer for Christopher Steele; and the third complaint was about wineries that Fusion GPS just happened to be researching and spreading lies about.

13. On August 1, 2019, the *Daily Caller* revealed that CfA engaged Fusion GPS as an "independent contractor" in 2018 and paid Fusion GPS nearly $140,000 for unspecified "research". [https://dailycaller.com/2019/08/01/liberal-watchdog-fusion-gps-trump/ ("**Liberal Watchdog Group That Targeted Google And Devin Nunes Paid Fusion GPS $140K For Research**")].

14. On November 25, 2019, Simpson released *Crime in Progress*. He did so to get out front of the information about Fusion GPS' clandestine operations that he knew

would be revealed in discovery.  In *Crime in Progress*, Simpson, *inter alia*, admitted the following facts:

- "Fusion ordinarily didn't work on congressional races, but as the election drew closer, the firm began to mull a few ways it could have an impact. Later, it would decide to design and launch a more systematic cyber-monitoring campaign, but first it went small, focusing on a single congressional district in California's heavily agricultural Central Valley. That solidly red seat happened to have been occupied since 2003 by one Devin Nunes". [pp. 292-294].

- "Fusion had no illusions about being able to topple Nunes, but the notion of digging into his record made many at the firm salivate.  His bumbling investigation of Trump-Russia was amusing, in some respects, and Fritsch had taken up Senator Lindsey Graham's reference to him as Inspector Clouseau, after the incompetent police inspector in the Pink Panther movies. But there were far more serious issues at stake here, too: In his fiercely partisan stewardship of the Russia investigation, Nunes had also undermined the intelligence and law enforcement agencies and inflicted damage on dedicated crime fighters like Bruce Ohr.  And he was a threat to Mueller's ability to do his job.  When Fritsch asked Fusion staff for volunteers to look into Nunes, every hand shot up". [294].

- "While he described himself as a farmer on the midterm ballot, Nunes hadn't been one for a decade.  Three years after he was first elected, he had quietly sold off his shares of the family farm and invested the proceeds in a Napa Valley winery nearly two hundred miles from his district". [295].[2]

---

[2]     For every Fusion GPS "research" project, there is a corresponding "ethics" complaint levelled against Plaintff.  On June 8, 2018, American Democracy Legal Fund ("ADLF") filed a complaint with the Office of Congressional Ethics ("OCE") over McClatchy's "yacht" story.  On July 11, 2018, CfA filed a complaint with OCE relating to his investment in the Napa Valley winery.  On July 11, 2018, political operative Liz Mair ("Mair") and Swamp Accountability Project ("Swamp") filed a complaint with OCE over the "yacht" story.  On July 23, 2018, Campaign Legal Center ("CLC") filed a complaint with the Federal Election Commission ("FEC") over Plaintiff's private jet travel. And, on August 9, 2018, Paul Buxman, Daniel O'Connell and Hope Nisly sued Plaintiff over his ballot designation as a farmer.

- "Some of his spending appeared to violate campaign finance rules. Fusion discovered 'fundraising' trips to Las Vegas and Boston during which Nunes spent more than $130,000 on high-end hotels, meals, and NBA tickets, at the expense of his campaign committees. The Boston fundraisers appeared to have been outings to see his favorite NBA team, the Boston Celtics. (Nunes idolized Larry Bird). In March 2018, Fusion found, Nunes charged more than $11,000 to his campaign for a private plane charter, despite House ethics rules that generally forbid noncommercial travel". [295].

- "Nunes also spent tens of thousands of dollars in PAC money on wine from the wineries in which he held stakes". [295].

- "In the end, Fusion found an obscure bit of litigation that lit up the race. In May, weeks after that discovery, Nunes's ownership stake in the Napa winery Alpha Omega became national news when The Fresno Bee reported on a lawsuit filed in California state court by a young woman who had worked serving wine at a 2015 tasting event abord the winery's sixty-two-foot yacht" [295-296].

- "Nunes spent tens of thousands of dollars on television, radio, and Facebook advertisements attacking the Bee for its coverage of the lawsuit, drawing more attention to the case. In the end, Nunes would win re-election in November with 52.7 percent of the vote, his lowest margin of victory ever". [296].

15.    On December 9, 2019, the Office of the Inspector General, United States

Department of Justice, released its "**Review of Four FISA Applications and Other**

**Aspects of the FBI's Crossfire Hurricane Investigation**" (the "IG Report").

[https://www.justice.gov/storage/120919-examination.pdf].[3]   The IG Report confirmed

that the Steele/Fusion "dossier", bought and paid for by Fusion GPS, was a complete

fabrication. The IG Report confirms that the putative author[4] of the "dossier", Steele, told

---

[3]     Two witnesses, Simpson and Jonathan Winer, refused to be interviewed for the IG Report.

[4]     Fusion GPS tasked Nellie Ohr to research then-candidate Trump and his Russian business associates, which involved searching Russian and other foreign language websites and databases and providing periodic reports detailing her findings. Nellie stopped working for Fusion GPS on September 24, 2016. Upon information and belief, Nellie and/or Simpson authored intelligence reports that Steele included in the "dossier".

FBI agents at a meeting in Rome that his reports were raw intelligence, not vetted information, and that a person passing some of the most important information to him was a "boaster" and "egotist" who might well "engage in some embellishment."  But that alarming description never made it to DOJ, where officials were using some of Steele's reports to support a secret court order authorizing surveillance on a former Trump campaign aide, Carter Page ("Page").  The IG Report further reveals that the Central Intelligence Agency ("CIA") dismissed the Steele "dossier" as "internet rumor."  And when the FBI eventually interviewed the person described as Steele's "primary subsource," that subsource claimed that Steele's reports had gone far beyond what he had been told. The source, who is not identified in the IG Report, "raised doubts about the reliability of Mr. Steele's descriptions of information in his election reports," saying Mr. Steele had "misstated or exaggerated" what he had been told.  Though Steele represented that Donald Trump's supposed 2013 encounter with Russian prostitutes had been "confirmed" by a hotel staff member, the IG Report revealed that source actually told the FBI that the story of the purported episode at Moscow's Ritz Carlton was just "rumor and speculation." Similarly, the source had passed on information about a visit to Moscow during the presidential campaign by Page.  But the source told FBI agents that he had given Steele no evidence to support one striking claim in the "dossier":  that Page had been offered a lucrative brokerage fee in the sale of part of the Russian oil giant Rosneft.  Another of Steele's claims that drew wide media coverage was that candidate Trump's personal lawyer, Michael D. Cohen ("Cohen"), had traveled to Prague during the 2016 campaign to meet with Russian agents and discuss the hacking of the Democrats.  The IG Report flatly concluded that the claim was "not true."

16.     Steele considered Donald Trump to be his "main opponent", as did Fusion GPS and its clients, Perkins Coie, the DNC and the Clinton campaign.   Steele was "desperate" that Donald Trump not get elected, as was Fusion GPS, Perkins Coie, the DNC and Hillary Clinton.  The outright fabrications in the Steele "dossier" are the product of a joint collaborative effort between Steele and Fusion GPS.  Steele and Fusion GPS, acting in concert, lied to the FBI and spread lurid and fake anecdotes in order to obstruct the FBI's Crossfire Hurricane investigation.  Fusion GPS and Steele wanted to make it appear to the FBI that there was a "crime in progress", when, it truth, it was all a coordinated fraud.  The fabrication of raw intelligence and the misrepresentation and concealment of information provided by sources is an ordinary part of Fusion GPS' criminal operations, and one that threatens to persist in the future.

### III.   JURISDICTION AND VENUE

17.     The United States District Court for the Eastern District of Virginia has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 1331 (Federal Question), § 1332 (Diversity) and § 1367 (Supplemental Jurisdiction).  The parties are citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest, costs and fees.

18.     Each of the Defendants is subject to personal jurisdiction in Virginia pursuant to Virginia's long-arm statute, § 8.01-328.1(A)(1), (A)(3) and (A)(4) of the Code, as well as the Due Process Clause of the United States Constitution.  The Defendants are subject to both general and specific personal jurisdiction.  They engage in continuous and systematic business in Virginia.  They have minimum contacts with Virginia such that the exercise of personal jurisdiction over them comports with traditional notions of fair play

and substantial justice and is consistent with the Due Process Clause of the United States Constitution.

19.     Venue is proper in the Alexandria Division of the United States District Court for the Eastern District of Virginia pursuant to Title 18 U.S.C. § 1965(a) and Title 28 U.S.C. § 1391(b).  The Defendants reside, are found, have agents, and transact affairs in Virginia.  The vast majority of Trump campaign foreign policy meetings between June 2016 and September 2016 occurred in Virginia in Arlington County and Fairfax County. Many of the key witnesses to the Defendants' corrupt business practices – including former FBI director, James Comey ("Comey"), Andrew McCabe ("McCabe"), Bruce Ohr, and Fusion GPS contractor, Nellie Ohr – reside in Virginia.

## IV.  **STATEMENT OF THE FACTS**

20.     On April 12, 2015, Hillary Rodham Clinton declared her candidacy for President of the United States.  She officially received the nomination of the Democratic Party on July 26, 2016 at the Democratic National Convention.

21.     During the 2016 presidential campaign, the Clinton campaign and the DNC paid Perkins Coie a total of $12.4 million.  Perkins Coie did not provide $12.4 million in legal services to the Clinton campaign and the DNC during the 2016 presidential election cycle.  Rather, Perkins Coie, with the knowledge and authority of the Clinton campaign and the DNC, acted as a conduit to funnel campaign funds ($1 Million Dollars) to Fusion GPS in order to create a false narrative about opposition Republican presidential candidate Donald Trump.

A.     ***The Fraudulent "Steele Dossier"***

22.     In April 2016, Elias on behalf of Perkins Coie engaged Fusion GPS on behalf of the Clinton campaign and the DNC to prepare a salacious "dossier" that could be used to smear Trump.  The Clinton campaign and the DNC, through Perkins Coie, funded Fusion GPS's opposition research through the end of October 2016, days before the Presidential Election.  [https://www.nytimes.com/2017/10/24/us/politics/clinton-dnc-russia-dossier.html ("**Clinton Campaign and Democratic Party Helped Pay for Russia Trump Dossier**"); https://www.washingtonpost.com/world/national-security/clinton-campaign-dnc-paid-for-research-that-led-to-russia-dossier/2017/10/24/226fabf0-b8e4-11e7-a908-a3470754bbb9_story.html].[5]

23.     Perkins Coie chose Fusion GPS to smear opposition candidate Trump because of Fusion GPS' well-documented history of defamation, dirty tricks and its pattern and practice of using fabricated "dossiers" and the media to intimidate and smear targets. [*E.g.* https://www.wsj.com/articles/SB10001424052702304203604577397031654422966

---

[5]     The revelation that the Clinton campaign and the DNC had paid Fusion GPS emerged from an October 24, 2017 letter filed in court by Perkins Coie.  In pertinent part, the letter states:

> "Fusion GPS approached Perkins Coie in early March of 2016 and … expressed interest in an engagement with the Firm in connection with the 2016 presidential election to continue research regarding then-Presidential candidate Donald Trump, research that Fusion GPS had conducted for one or more other clients during the Republican primary contest … To assist in its representation of the DNC and Hillary for America, Perkins Coie engaged Fusion GPS".

[https://www.washingtonpost.com/world/national-security/clinton-campaign-dnc-paid-for-research-that-led-to-russia-dossier/2017/10/24/226fabf0-b8e4-11e7-a908-a3470754bbb9_story.html; https://assets.documentcloud.org/documents/4116755/PerkinsCoie-Fusion-PrivelegeLetter-102417.pdf].

("**The President's Hit List**"); https://www.scribd.com/document/354721041/Testimony-of-Thor-Halvorssen-to-the-Senate-Committee-on-the-Judiciary-7-26-2017 ("Thank you for the opportunity to provide testimony about Fusion GPS, its role in a multi-billion-dollar corruption case benefitting the Venezuelan regime, and how they violate [FARA]"); http://infodio.com/20170114/fusion/gps/derwick/associates/venezuela/corruption

("**Fusion GPS link to Derwick Associates: Venezuela's most corrupt criminal gang**"); https://www.theatlantic.com/politics/archive/2017/07/bill-browders-testimony-to-the-senate-judiciary-committee/534864/ ("Veselnitskaya, through Baker Hostetler, hired Glenn Simpson of the firm Fusion GPS to conduct a smear campaign against me and Sergei Magnitsky in advance of congressional hearings on the Global Magnitsky Act.   He contacted a number of major newspapers and other publications to spread false information that Sergei Magnitsky was not murdered, was not a whistle-blower, and was instead a criminal.   They also spread false information that my presentations to lawmakers around the world were untrue."); https://thefederalist.com/2017/10/10/u-s-media-help-russia-destabilize-united-states/ ("**Does U.S. Media Help Russia Destabilize The United States?**")].

24.     Fusion GPS hired Orbis to create the "dossier" to smear Trump and help in disseminating the scandalous accusations to the media.

25.     At the time Fusion GPS hired Orbis, Steele acted as a paid informant for the FBI.

26.     Steele, acting in concert and combination with Fusion GPS, created a compendium of "Company "Intelligence Report[s]" that Simpson and Steele ultimately

delivered to the FBI for the purpose of influencing the FBI's Crossfire Hurrican investigation.

27.     The various "Company Intelligence Report[s]" that are part of the "dossier" manufactured by Steele and Fusion GPS are complete fabrications.

28.     Fusion GPS paid Orbis approximately $170,000 for the fraudulent Steele "dossier".

**B.**     ***Fusion GPS, Simpson and Steele Leak The Fraudulent "Steele Dossier"***

29.     The Republican National Committee ("RNC") held its presidential nominating convention in Cleveland, Ohio, from July 18-21, 2016.

30.     Trump won the Republican nomination for President of the United States.

31.     On July 31, 2016, the FBI officially launched operation "Crossfire Hurricane".  [https://www.nytimes.com/2018/05/16/us/politics/crossfire-hurricane-trump-russia-fbi-mueller-investigation.html].

32.     Between July 31, 2016 and September 23, 2016, Fusion GPS and Simpson, acting in concert with Steele, leaked the Steele "dossier" to the FBI, DOJ, State Department, and multiple "journalists" who were friendly to presidential candidate, Clinton.  By September 23, 2016, the so-called "dossier" was in the hands of at least nine (9) media outlets, including the *Wall Street Journal*, *Washington Post*, the *New Yorker*, McClatchy, and *Yahoo News*.  [https://www.washingtonpost.com/politics/hero-or-hired-gun-how-a-british-former-spy-became-a-flash-point-in-the-russia-investigation/2018/02/06/94ea5158-0795-11e8-8777-2a059f168dd2_story.html].

33.     Steele was "desperate" to see Donald Trump defeated in the 2016 Presidential election.  [https://thehill.com/opinion/white-house/425739-fisa-shocker-doj-

17

official-warned-steele-dossier-was-connected-to-clinton (Associate Deputy Attorney General Bruce Ohr ("Bruce Ohr") told congressional investigators that "Christopher Steele was, as I said, desperate that Trump not be elected.")]. Steele's personal bias and lack of veracity was well-known to Fusion GPS and Simpson. Fusion GPS and Simpson commissioned the Steele "dossier" and leveraged Steele's extreme political bias and motive to lie. On October 11, 2016, Steele met with Deputy Assistant Secretary of State Kathleen Kavalec ("Kavalec"). Steele admitted to Kavalec that his "research" was political and that he was facing an Election Day deadline to make it public. Steele told Kavalec that his "client" (Fusion GPS) was "keen to see this information come to light prior to November 8," the date of the 2016 presidential election. [https://thehill.com/opinion/white-house/442592-steeles-stunning-pre-fisa-confession-informant-needed-to-air-trump-dirt]. Notwithstanding is contemporaneous admissions of extreme bias against then-candidate Trump, Steele lied to the OIG and stated that any claim of bias was "ridiculous".

34.     On October 21, 2016, the FBI used part of the Steele/Fusion "dossier" – Company Intelligence Report (CIR) 94 – to seek a warrant to spy on Carter W. Page ("Page") pursuant to the Foreign Intelligence Surveillance Act of 1978 ("FISA"). The FISA application, signed by Comey, falsely represented to the FISA Court that the information in the application was "VERIFIED":

All information is considered unclassified except where otherwise shown.

~~TOP SECRET//NOFORN~~

U.S. FOREIGN INTELLIGENCE SURVEILLANCE COURT

UNITED STATES

2016 OCT ▮▮▮▮

Classify By: J23J98T32
Reason: (C)
Derived From: FBI NSICG, dated 10-▮▮-2016
Declassify On: ▮▮▮▮▮▮

FOREIGN INTELLIGENCE SURVEILLANCE COURT

WASHINGTON, D.C.

LEEANN FLYNN HALL
CLERK OF COURT

b1-1
b3-1
b7A-1

(S) IN RE CARTER W. PAGE, A U.S.

PERSON.

Docket Number:

▮▮▮▮▮▮▮

b1-1
b3-1
b7A-1

(U) VERIFIED APPLICATION

35.     The Steele/Fusion "dossier" accusations of collusion between the Trump campaign or persons associated with it and Russians have never been verified.  They cannot be verified because they are false.  They were manufactured by Steele and Fusion GPS out of whole cloth.  The creation of unverifiable "intelligence" is a hallmark of Fusion GPS' ordinary way of doing business.

36.     The FISA application discloses that Steele was approached by Fusion GPS through Simpson[6] (referred to in the application as an "identified US person"), and that Perkins Coie (referred to in the application as a "US-based law firm") had hired Fusion GPS "to conduct research regarding Candidate #1s [Trump] ties to Russia."  The FISA

---

[6]     Simpson formerly was an investigative reporter for the *Wall Street Journal*. He has a long history of working with the FBI and reporting on corruption and influence in and around Russia.  Simpson orchestrated Fusion GPS' media outreach program and dissemination of the Steele/Fusion "dossier" to the Government agencies and the media. [https://dailycaller.com/2019/03/04/glenn-simpson-jonathan-winer-dossier/; https://dailycaller.com/2017/07/13/details-emerge-about-trump-dossier-firms-media-outreach-campaign/].

application confirms that Steele and Fusion GPS "have a long-standing business relationship". The FISA application does not identify Steele's "sub-source(s)".[7]

37.     On October 31, 2016, *Mother Jones* published an article entitled, "**A Veteran Spy Has Given the FBI Information Alleging a Russian Operation to Cultivate Donald Trump**". [https://www.motherjones.com/politics/2016/10/veteran-spy-gave-fbi-info-alleging-russian-operation-cultivate-donald-trump/].[8]     The source of the *Mother Jones* article was Steele. Steele spoke with *Mother Jones'* reporter, David Corn, at Simpson's behest.[9] *Mother Jones* reported that Steele "now works" for Fusion GPS,

---

[7]     Simpson told Bruce Ohr that Steele's main source wasn't in Moscow but, rather, was a "former Russian intelligence figure in Washington". Bruce Ohr's notes quote Simpson as follows: "[m]uch of the collection about the Trump campaign ties to Russia comes from a former Russian intelligence officer (? not entirely clear) who lives in the US".          [https://thehill.com/hilltv/rising/417535-questions-grow-about-fbi-vetting-of-christopher-steeles-russia-expertise].

[8]     On October 10, 2016, Simpson told Bruce Ohr that he (Simpson) asked Steele to talk to *Mother Jones*. [https://thehill.com/hilltv/rising/401185-the-handwritten-notes-exposing-what-fusion-gps-told-doj-about-trump ("'Glen [sic] asked Chris to speak to the Mother Jones reporter. It was Glen's Hail Mary attempt [to influence the election],'" Ohr wrote.")].

[9]     In October 2016, the FBI "suspended" its relationship with Steele because of Steele's flagrant breaches of FBI trust and protocol. According to the FISA application:

> (U)       (TS//NF) In or about late October 2016, however, after the Director of the FBI sent a letter to the U.S. Congress, which stated that the FBI had learned of new information that might be pertinent to an investigation that the FBI was conducting of Candidate #2, Source #1 told the FBI that he/she was frustrated with this action and believed it would likely influence the 2016 U.S. Presidential election. In response to Source #1's concerns, Source #1 independently, and against the prior admonishment from the FBI to speak only with the FBI on this matter, released the reporting discussed herein to an identified news organization. Although the FBI continues to assess Source #1's reporting is reliable, as noted above, the FBI has suspended its relationship with Source #1 because of this disclosure.

which *Mother Jones* described as "a US firm that gathers information on Russia for corporate clients". *Mother Jones* revealed that Steele "was assigned the task of researching Trump's dealings in Russia and elsewhere, according to the former spy [Steele] and his associates [Simpson] in this American firm." *Mother Jones* quoted a "fiery letter" from Democratic Senator Harry Reid ("Reid") to Comey that disclosed the following:

> "In my communications with you and other top officials in the national security community, it has become clear that you possess explosive information about close ties and coordination between Donald Trump, his top advisors, and the Russian government … The public has a right to know this information."

Reid was briefed on the "Steele Dossier" sometime prior to the end of August 2016.

38.     In November 2016, Steele met in Great Britain with David J. Kramer ("Kramer"), director of the McCain Institute for International Leadership, a private foundation associated with the late-U.S. Senator John McCain ("McCain"). [https://www.mccaininstitute.org/staff/david-j-kramer/].   The purpose of the meeting was to brief Kramer on behalf of Senator McCain, who at the time was an outspoken critic of the Trump candidacy.   Steele and/or Simpson gave Kramer a copy of the first sixteen reports in the Steele/Fusion "dossier" for redelivery to Senator McCain.   Kramer, a former State Department official and a Trump detractor, leaked (republished) the DNC-financed Steele/Fusion "dossier" to, *inter alia*, *BuzzFeed News*.

39.     Kramer met with *BuzzFeed's* Ken Bensinger ("Bensinger") during the 2016 Christmastime holidays.   Bensinger took cellphone photos of the entire Steele/Fusion "dossier".   [https://www.washingtontimes.com/news/2019/mar/14/david-kramer-spread-steele-dossier-around-washingt/; *see also* https://www.mcclatchydc.com/news/nation-world/national/article160622854.html ("At least a dozen national media organizations had

a copy of the Steele dossier before it became public but hadn't published details because much of the information had not been corroborated")].[10]

40.     On January 10, 2017, CNN reported that "intelligence chiefs" had briefed President-Elect Trump and President Obama on the accusations contained in the "Steele Dossier".     CNN described the Steele/Fusion "dossier" as "Classified". [https://www.cnn.com/2017/01/10/politics/donald-trump-intelligence-report-russia/index.html].

41.     On January 10, 2017, after publication of the CNN report, Bensinger published the Steele/Fusion "dossier". The "full document" linked to Bensinger's story was the cell phone copy of the Steele/Fusion Dossier" that Bensinger obtained from Kramer.     [https://www.buzzfeednews.com/article/kenbensinger/these-reports-allege-trump-has-deep-ties-to-russia;   https://www.nytimes.com/2017/01/11/us/politics/donald-trump-russia-intelligence.html?module=inline].[11]

42.     On January 11, 2017, the *New York Times* revealed that Fusion GPS was behind the "dossier". [https://www.nytimes.com/2017/01/11/us/politics/donald-trump-russia-intelligence.html?smid=tw-nytimes&smtyp=cur&_r=0]. The *Wall Street Journal*

---

[10]     McCain gave Comey a copy of the "Trump dossier" on January 6, 2017. [https://www.mcclatchydc.com/news/nation-world/national/article160622854.html]. Comey briefed President-elect Trump on the "dossier" that same day. Briefing the President-elect was the "brainchild" of Director of National Intelligence James Clapper ("Clapper"), who also had the "dossier". [https://thefederalist.com/2018/04/20/comeys-memos-indicate-dossier-briefing-of-trump-was-a-setup/].

[11]     On January 10, 2017, Ben Smith ("Smith"), editor-in-chief of *BuzzFeed*, advised the staff of *BuzzFeed News* that there were "**real solid reasons to distrust**" the veracity of the allegations contained in the "Trump dossier". Smith tweeted the note he sent to his staff. [https://twitter.com/BuzzFeedBen/status/818978955965464580/photo/1].

revealed that Steele was the author. [https://www.wsj.com/articles/christopher-steele-ex-british-intelligence-officer-said-to-have-prepared-dossier-on-trump-1484162553].

C.    *The Congressional Investigation*

43.    Plaintiff was one of the leading and most vocal members of Congress to advocate for a thorough investigation of the role that Fusion GPS and the Steele/Fusion "dossier" played in advancing the "Russia collusion" narrative.  Fusion GPS and Simpson harbored spite and ill-will towards Plaintiff as a result.  Using the same corrupt practices employed on the FBI during operation Crossfire Hurricane, Fusion GPS and Simpson decided to smear Plaintiff as a result of his tenacious efforts in 2017 to expose Fusion GPS' nefarious activities.

44.    On August 24, 2017, in his capacity as Chairman of the House Intelligence Committee, Plaintiff authorized subpoenas to both DOJ and FBI for all documents they had relating to their relationship with Steele and/or the Steele/Fusion "dossier". [http://i2.cdn.turner.com/cnn/2017/images/09/06/chm.ltr.to.ag.sessions.re.subpoena.compliance--1.september.17.pdf].  All subpoenas authorized by Plaintiff were issued pursuant to a constitutionally authorized investigation by a Committee of the U.S. House of Representatives with jurisdiction over intelligence and intelligence-related activities— activities designed to protect the United States and its citizens from potential cyber-attacks now and in the future.

45.    In a September 1, 2017 letter to Attorney General, Jeff Sessions ("Sessions"), Plaintiff stated as follows:

On August 24, 2017, the House Permanent Select Committee on Intelligence ("Committee") served subpoenas on the Attorney General, in his capacity as head of the Department of Justice ("DOJ"), and the Director of the Federal Bureau of Investigation ("FBI") for production of documents relevant to the Committee's ongoing investigation of Russian interference in the 2016 U.S. presidential election, including allegations of collusion between the Trump campaign and the Russians.

The subpoenas directed DOJ and FBI to produce any and all documents relating to the agencies' relationship with former British Secret Intelligence Service officer Christopher Steele and/or the so-called "Trump Dossier," including those memorializing FBI's relationship with Mr. Steele, any payments made to Mr. Steele, and efforts to corroborate information provided by Mr. Steele and his sub-sources—whether directly or via Fusion GPS.  The subpoenas also directed DOJ and FBI to provide copies of any Foreign Intelligence Surveillance Act (FISA) applications submitted to the Foreign Intelligence Surveillance Court (FISC)—whether or not approved by the FISC—incorporating information provided by Mr. Steele, his sub-sources, and/or Fusion GPS.

Plaintiff's letter pointed out the lack of cooperation he had received in 2017 in obtaining responses to Russia-investigation related requests:

Resort to compulsory process was necessary because of DOJ's and FBI's insufficient responsiveness to the Committee's numerous Russia-investigation related requests over the past several months.  On multiple occasions, through written requests and direct engagements, the Committee has sought but failed to receive responsive testimony or documents from DOJ and FBI.  For example, to date the Committee has not received a meaningful response to its May 9, 2017, request to Attorney General Sessions.  Additionally, on May 16, 2017, the Committee sent a letter asking then-Acting Director Andrew McCabe to participate in a voluntary interview, and produce relevant documents. The Committee received no reply until May 27—more than two months later—when DOJ declined the interview request and indicated that "the Department is not prepared to respond further to your request at this time."

46.     On October 4, 2017, Plaintiff, in his capacity as Chairman of the House Intelligence Committee, authorized subpoenas for documents and to compel testimony

from Simpson and his Fusion GPS partners Peter Fritsch[12] and Thomas Catan.[13]

https://www.cnn.com/2017/10/10/politics/fusion-gps-subpoenas-devin-nunes/index.html;

https://www.cnn.com/2017/10/18/politics/fusion-gps-partners-plead-fifth-before-house-intel/index.html (noting that Fusion GPS' attorney revealed that Fritsch and Catan invoked their Fifth Amendment rights not to answer questions before the Committee)].

47.     Plaintiff also issued a subpoena to Fusion GPS' bank, TD Bank, for the company's financial records.  Fusion GPS sought a temporary restraining order and preliminary injunction to block release of the bank records.  Fusion GPS failed in its effort to prevent disclosure of the bank records. *Bean, LLC v. John Doe Bank*, 291 F.Supp.3d 34 (D. D.C. 2018).  The bank records produced by Fusion GPS revealed that the Clinton campaign, the DNC and Perkins Coie paid for Fusion GPS' anti-Trump research. [https://thehill.com/homenews/house/354796-nunes-signs-off-on-new-subpoenas-in-russia-investigation; https://www.washingtonexaminer.com/byron-york-in-dossier-probe-fusion-gps-asks-court-to-stop-house-from-seeing-bank-records].

---

[12]     Fritsch is a co-founder of Fusion GPS and partner of Simpson's.  Fritsch was responsible for running opposition research for Fusion GPS on Theranos. [https://www.washingtonpost.com/investigations/journalism-for-rent-inside-the-secretive-firm-behind-the-trump-dossier/2017/12/11/8d5428d4-bd89-11e7-af84-d3e2ee4b2af1_story.html ("Fusion GPS bills itself as a corporate research firm, but in many ways it operates with the secrecy of a spy agency … Fusion worked to blunt aggressive reporting on the medical-device company Theranos, which was later found to have problems with its novel blood-testing technology.  It was also hired to ward off scrutiny of the nutritional supplement company Herbalife, which ultimately paid $200 million to distributors to settle claims by regulators … Fusion's work on the dossier went beyond ordinary opposition research, the kind that might explore a candidate's past legislative history or embarrassing gaffes — known in the industry as "votes and quotes."  Instead, it paid a former British spy to compile intelligence from unnamed Russian sources.")].

[13]     Catan is the third partner of Fusion GPS.  Like Simpson and Fritsch, he used to work for the Wall Street Journal. [https://www.wsj.com/news/author/thomas-catan].

48.     On August 22, 2017, Simpson testified before the Senate Intelligence Committee.  Simpson claimed he originally hired Steele to research Trump's business activities in Russia:

> "I would say that's broadly why I asked him to see what he could find out about Donald Trump's business activities in Russia … I'll just stress that we weren't looking for – at least it wasn't at the forefront of my mind there was going to be anything involving the Russian government per se, at least not that I recall.

https://www.feinstein.senate.gov/public/_cache/files/3/9/3974a291-ddbe-4525-9ed1-22bab43c05ae/934A3562824CACA7BB4D915E97709D2F.simpson-transcript-redacted.pdf (pp. 78-79)].[14]

49.     On November 14, 2017, Simpson testified behind closed doors before the House Intelligence Committee.  He was accompanied by three (3) lawyers.

50.     On January 17, 2018, the House Intelligence Committee published an unclassified, redacted transcript of Simpson's testimony in executive session. [https://docs.house.gov/meetings/IG/IG00/20180118/106796/HMTG-115-IG00-20180118-SD002.pdf].

51.     It was immediately obvious to Representatives and reporters alike that Simpson had lied in his testimony to the House Intelligence Committee. [*See, e.g.,*

---

[14]     The IG Report concluded that Simpson's reasons for hiring Steele included far more than simply research on Trump's "business activities" in Russia:

> "In May 2016, Simpson met Steele at a European airport and inquired whether Steele could assist in determining Russia's actions related to the 2016 U.S. elections, whether Russia was trying to achieve a particular election outcome, whether candidate Donald Trump had any personal and business ties in Russia, and whether there were any ties between the Russian government and Trump and his campaign."

[https://www.justice.gov/storage/120919-examination.pdf (p. 93)].

https://www.powerlineblog.com/archives/2018/01/simpson-tried-to-deceive-congress-on-the-fusion-gps-obama-doj-connection.php ("**SIMPSON TRIED TO DECEIVE CONGRESS ON THE FUSION GPS/OBAMA DOJ CONNECTION**");

https://dailycaller.com/2018/09/17/bruce-ohr-testimony-fusion-gps-glenn-simpson/

("DOJ official Bruce Ohr testified that he met with Fusion GPS founder Glenn Simpson in August 2016.  That conflicts with what Simpson told a congressional committee in November.  He [Simpson] said he did not meet Ohr until after the 2016 election … Department of Justice (DOJ) official Bruce Ohr told Congress in August that he met before the 2016 election with Glenn Simpson, a direct contradiction to what the Fusion GPS founder said in a congressional deposition in 2017"); https://www.tabletmag.com/jewish-news-and-politics/253004/fusion-gps-donald-trump ("**Did Glenn Simpson Lie to Congress?**"); https://www.washingtontimes.com/news/2018/may/31/glenn-simpson-accused-lying-congress-sen-charles-g/ ("**Why key architect of the anti-Trump dossier is now accused of lying to Congress**")].

52.     In fact, Simpson lied to _both_ the House of Representatives _and_ the United States Senate about his role and involvement in advancing the anti-Trump smear campaign before and after the 2016 presidential election.  The following testimony by Simpson to the House Intelligence Committee was knowingly and willfully false:

> Q    You've never heard from anyone in the U.S. Government in relation to
> those matters, either the FBI or the Department of Justice?
>
> A    After the election.   I mean, during the election, no.
>
> Q    What did you hear after and from whom and when?
>
> A    I was asked to provide some information to the Justice Department.
>
> Q    By whom and when?
>
> A    It was by a prosecutor named Bruce Ohr, who was following up.
> You know, I can't remember when.   It was sometime after Thanksgiving, I think.
>
> Q    Thanksgiving of 2016?
>
> A    Yes.

Simpson also knowingly and willfully lied to the Senate Judiciary Committee.   His statement to the Senate Judiciary Committee on August 22, 2017 that he "had no client after the [2016 presidential] election" was an "outright lie".  As Senator Grassley observed:

> "For example, when the Committee staff interviewed Glenn Simpson in August of 2017, Majority staff asked him: 'So you didn't do any work on the Trump matter after the election date, that was the end of your work?'  Mr. Simpson answered: 'I had no client after the election.'  As we now know, that was extremely misleading, if not an outright lie."

[https://thefederalist.com/2018/12/04/grassley-fusion-gps-founder-ceo-glenn-simpson-lied-senate-testimony/;   https://www.breitbart.com/politics/2018/05/29/grassley-fusion-gps-founder-gave-extremely-misleading-testimony-about-trump-work/].

53.    Simpson knew that there was a substantial likelihood that he could be indicted for making false statements to the FBI and DOJ, lying to Congress and the Senate, and for obstructing justice.   Simpson knew that it was a Federal crime to "corruptly"

influence, obstruct, or impede, or endeavor to influence, obstruct or impede the House Intelligence Committee in its Russia investigation.[15]

54.     Fearing a criminal referral for Simpson's false statements to the FBI and DOJ, for lying to Congress and the Senate, and for obstructing the House Intelligence Committee in its Russia investigation, the Defendants directly and aggressively retaliated against Plaintiff, employing the same or similar pattern, practices, means and methods as Fusion GPS and Simpson had employed multiple times in the past to smear the opposition. [*See, e.g., Halvorssen v. Simpson*, Case 2:18-cv-02683-ENV-RLM (E.D.N.Y.) (Document 1) (Simpson creates a phony "dossier" that he passes on to "friendly journalists" and/or associates who use the negative information to smear the target); *see id Crime In Progress, supra*; *and IG Report, supra*].

D.     ***The Retaliatory Ethics Complaints***

55.     On January 25, 2018, as news of Simpson's perjury was being widely reported, CfA, acting in concert with Fusion GPS, faxed an "ethics" complaint against Plaintiff to the Office of Congressional Ethics ("OCE").[16]

56.     The purpose of Defendants' first "ethics" complaint was to threaten and intimidate Plaintiff, impede his communications with "conservative" members of the press, chill reporting of Fusion GPS and Simpson's wrongdoing, interfere with Plaintiff's

---

[15]     As used in Title 18 U.S.C. § 1505, the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information. *18 U.S.C. § 1515(b)*.

[16]     In addition to CfA, Fusion GPS and Simpson ran numerous other political operations against Plaintiff using McClatchy, Mair, Swamp, ADLF and others.   All coordinated operations were designed to impede Plaintiff's congressional investigation.

congressional investigation into Fusion GPS and the "Steele Dossier", and dissuade Plaintiff from making criminal referrals to the DOJ.

57.    On February 2, 2018, President Trump declassified a memorandum prepared by House Intelligence Committee staff that discussed Foreign Intelligence Surveillance Act at the DOJ and FBI.  The memorandum began as follows:

**UNCLASSIFIED** ~~TOP SECRET//NOFORN~~

January 18, 2018

Declassified by order of the President
February 2, 2018

To:        HPSCI Majority Members

From:     HPSCI Majority Staff

Subject:  Foreign Intelligence Surveillance Act Abuses at the Department of Justice and the Federal Bureau of Investigation

**Purpose**

This memorandum provides Members an update on significant facts relating to the Committee's ongoing investigation into the Department of Justice (DOJ) and Federal Bureau of Investigation (FBI) and their use of the Foreign Intelligence Surveillance Act (FISA) during the 2016 presidential election cycle.  Our findings, which are detailed below, 1) raise concerns with the legitimacy and legality of certain DOJ and FBI interactions with the Foreign Intelligence Surveillance Court (FISC), and 2) represent a troubling breakdown of legal processes established to protect the American people from abuses related to the FISA process.

Upon publication of the memorandum, Defendants, acting in concert, stepped up their efforts to interfere in Plaintiff's investigation.

58.    On March 1, 2018, CfA faxed a second "ethics" complaint against Plaintiff to OCE.  This time, CfA falsely accused Plaintiff and staff members acting at his direction of having leaked to the press private text messages between Senator Mark Warner and Adam Waldman, a lawyer connected to Steele, in which Senator Warner tried to arrange a meeting with Steele.

59.     Defendants' intended goal was to undermine confidence in Plaintiff, harass and overwhelm him with litigation, and distract him from his duties as a member of the House Intelligence Committee.

60.     On July 11, 2018, CFA faxed a third "ethics" complaint to OCE, this time falsely stating that Plaintiff "violated federal law and House ethics rules by failing to include information on his personal financial disclosure forms and accepting an impermissible gift." An accompanying press release published on CfA's website contained the following defamatory clickbait headline:

# Ethics Complaint Against Rep. Devin Nunes for Lying About His Investments in Several California Companies

[https://campaignforaccountability.org/work/ethics-complaint-against-rep-devin-nunes-for-lying-about-his-investments-in-several-california-companies/].

61.     CfA's third ethics complaint was the result of a joint effort that included Michael Seeley ("Seeley"), a political activist and long-time member of Southern California Americans for Democratic Action ("SCADA"), a left-wing, populist political organization committed to liberal politics, liberal policies, and a liberal future. [https://www.adasocal.org/board_members_1]. Upon information and belief, Fusion GPS and/or CfA directed Seeley to make a request under the California Public Records Act ("PRA") for emails received by Plaintiff's wife, Elizabeth, an elementary school teacher. Seeley's request targeting Plaintiff's wife ended up costing the Tulare County Office of Education thousands of dollars in unnecessary cost and expense. Seeley published Elizabeth Nunes' emails online and included the names and email addresses of numerous

school administrators and teachers, resulting in extensive harassment of these innocent, hard-working citizens of Tulare County, including hateful accusations that they teach bigotry and racism. [https://www.scribd.com/user/399236302/Michael-Seeley].   In fact, the school was so concerned about security problems resulting from this situation that it adopted enhanced security measures.

62.     In addition to CfA, Fusion GPS, upon information and belief, recruited additional bad actors, including political operative Mair, and encouraged and enticed them to participate in the coordinated attacks upon Plaintiff.  Mair works for anonymous, dark money clients.  In her own words, she "anonymously smear[s]" her clients' opposition "on the internet". [https://www.linkedin.com/in/liz-mair-76b03a2/ ("What do I do for these clients?  Anonymously smear their opposition on the Internet.")].  Mair controls the Swamp Accountability Project ("Swamp"), a dark money group run out of Alexandria, Virginia. On the same day CfA filed its third complaint, Swamp filed an "ethics" complaint against Plaintiff. [https://swampaccountabilityproject.com/letter/].  It was no coincidence.  It was, as Mair boasts, a planned and extremely well-organized smear campaign.  The organized and coordinated attacks on Plaintiff bear all the hallmarks of a Fusion GPS smear operation.

63.     The purpose of the Fusion GPS/CfA "ethics" complaints and other coordinated action undertaken by Fusion GPS was to create negative publicity for Plaintiff, to harass, intimidate and distract Plaintiff, to cast a pall upon the Congressional investigation into the role that Fusion GPS, Simpson and the Steele/Fusion "dossier" played in advancing the "Russia collusion" narrative, and to dissuade Plaintiff from pursuing criminal charges against Simpson and Fusion GPS.  Just as they had done with Halvorssen and many others, Fusion GPS, acting in concert with CfA and Mair,

coordinated the attacks on Plaintiff with McClatchy, a newspaper with a known axe to grind against Plaintiff.  Each of the "ethics" complaints filed against Plaintiff was leaked to McClatchy and immediately reported by McClatchy in the *Fresno Bee*. [*E.g.*, https://www.fresnobee.com/news/politics-government/politics-columns-blogs/political-notebook/article214693435.html].

64.     On September 6, 2018, the *Federalist* reported that CfA refused to comment when asked if they had collaborated with Seeley in submitting the FRA request for Elizabeth Nunes' emails. [https://thefederalist.com/2018/09/06/resistance-torches-devin-nunes-family-dared-expose-intel-agencies-collusion-democrats/ ("Devin Nunes is precisely why we know anything about Hillary Clinton and the Democratic National Committee's dishonest and bizarre activities.  No wonder he's a huge Democrat target").

65.     Although CfA defended Fusion GPS in its initial "ethics" complaint, Plaintiff did not know and could not have discovered the depth of the concerted effort between Fusion GPS and CfA to injure and intimidate Plaintiff and interfere with his congressional investigation.

66.     On March 22, 2019, Special Counsel Robert Mueller submitted his confidential report entitled "Report on the Investigation into Russian Interference in the 2016 Presidential Election" (the "Mueller Report").  The Special Counsel and his staff of 19 lawyers, assisted by a team of approximately 40 FBI agents, intelligence analysts, forensic accountants, and other professional staff, issued more than 2,800 subpoenas, executed nearly 500 search warrants, obtained more than 230 orders for communication records, issued almost 50 orders authorizing use of pen registers, made 13 requests to foreign governments for evidence, and interviewed approximately 500 witnesses.

67.     The Mueller Report proves that the Steele/Fusion "dossier" was false and misleading in all material respects.

68.     On August 1, 2019, Plaintiff learned that CfA paid Fusion GPS almost $140,000 in 2018 to conduct "research".

69.     CfA collaborated with Fusion GPS to weaponize the ethics process against Plaintiff.   The "ethics" complaints, reported by media sympathizer McClatchy as if legitimate, were, in fact, deceitful political attacks designed to intimidate Plaintiff and obstruct his congressional investigation.

70.     In 2017, after Trump won the presidential election, the Democracy Integrity Project ("TDIP") paid Fusion GPS and firms tied to it and Steele more than $3.8 million to continue opposition "research" on Trump and alleged "collusion" with "Russia".   TDIP paid $3.3 million to Fusion GPS, another $250,000 to "Walsingham Partners Ltd.", a London-based firm owned by Steele and his partner, Christopher Burrows, nearly $130,000 to "Edward Austin Ltd.", a London-based intelligence consultancy operated by Edward Baumgartner, a Fusion GPS contractor, and another $148,000 to the law firm Zuckerman Spaeder, which has represented Fusion GPS in a variety of dossier-related legal matters. Perkins Coie paid $1 million to Fusion GPS in 2016 to investigate Trump.   The payments made by TDIP are more than three times what the DNC and the Clinton campaign paid Fusion GPS and Steele during the 2016 presidential campaign to investigate Donald Trump's possible ties to Russia.   [https://dailycaller.com/2019/04/01/fusion-gps-steele-soros-millions/].

71.     As *Crime in Progress* and the December 2019 IG Report both confirm, Fusion GPS' dirty tricks and pattern of obstructing justice continue to the present day.

## COUNT I - <u>RICO</u>

72.     Plaintiff restates paragraphs 1 through 71 of this Amended Complaint and incorporates them herein by reference.

73.     Fusion GPS, Simpson and CfA corruptly and by threatening letters or communications influenced, obstructed and impeded, or endeavored to influence, obstruct or impede, the due administration of justice in violation of Title 18 U.S.C. § 1503(a).

74.     Fusion GPS, Simpson and CfA knowingly used intimidation, threatened, and attempted to corruptly persuade Plaintiff, and engaged in misleading conduct toward Plaintiff with the intent to influence, prevent or delay the testimony of Plaintiff, other members of the House Intelligence Committee, and other third-parties in an official proceeding in violation of Title 18 U.S.C. § 1512(b)(1).  Fusion GPS, Simpson and CfA also knowingly used intimidation, or attempted to do so, and engaged in misleading conduct toward Plaintiff with the intent to cause or induce Plaintiff to withhold one or more criminal referrals to the DOJ in violation of Title 18 U.S.C. § 1512(b)(2).

75.     Fusion GPS, Simpson and CfA intentionally harassed Plaintiff and thereby hindered, delayed, prevented or dissuaded Plaintiff and other members of the House Intelligence Committee, or attempted to do so, from (a) reporting to a law enforcement officer of the United States, including the FBI and/or DOJ, the commission or possible commission of a Federal offense, (b) seeking the arrest of Simpson, other officers and employees of Fusion GPS, and/or Steele, and (c) causing a criminal prosecution to be sought or instituted, in violation of Title 18 U.S.C. § 1512(d)(2-4).

76.     Fusion GPS, Simpson and CfA knowingly, with the intent to retaliate, took action harmful to Plaintiff, including interference with Plaintiff's lawful employment and

livelihood as a U.S. Congressman, for providing to a law enforcement officer truthful information relating to the commission or possible commission of a Federal offense by Fusion GPS, Simpson and/or other officers and employees of Fusion GPS in violation of Title 18 U.S.C. § 1513(e).

77.     Fusion GPS and Simpson, together with Orbis and Steele, corruptly created and supplied a fraudulent document – the "Steele Dossier" – and made false statements to the FBI, DOJ, State Department, and to Congress for the express purpose of influencing the outcome of the 2016 U.S. Presidential election and, thereafter, to topple a sitting President.  In his capacity as a United States Congressman, Plaintiff investigated the allegations of "collusion" between the Trump campaign and persons associated with it and Russia.  Plaintiff investigated the role of Fusion GPS, Simpson and the "Steele Dossier" in advancing the "Russia collusion" narrative.  Plaintiff discovered that Fusion GPS and Simpson committed multiple federal crimes, including violations of Title 18 U.S.C. §§ 1001 and 1505.  Through a pattern of racketeering activity that, *inter alia*, involved acts of wire fraud in violation of 18 U.S.C. § 1343 and obstruction of justice in violation of Title 18 U.S.C. §§ 1503, 1512 and 1513, the Defendants engaged in concerted action the purpose of which was to harass, intimidate, influence, obstruct and impede Plaintiff's investigation, to dissuade Plaintiff from making a criminal referral, and to injure Plaintiff's reputation. The Defendants functioned as a continuing unit.  As an "astroturfer", Fusion GPS and Simpson chose CfA, Mair and McClatchy as fronts or "cut-outs" for the smear campaign. The Defendants controlled the specific means and methods employed by the enterprise, the nature and timing of the smear campaign launched in January 2018, and they pursued a common goal of intimidation and harassment.

78.     Plaintiff has been injured in his business, property and reputation by reason of Defendants' multiple violations of Title 18 U.S.C. § 1962, described above.  Defendants proximately caused Plaintiff's loss.  Their collusion to smear Plaintiff and to obstruct his congressional investigation of Fusion GPS and the "Steele Dossier" and their actions in levelling the fraudulent "ethics" complaints led directly to Plaintiff's injuries.  Defendants have engaged in at least two acts of racketeering activity (wire fraud and obstruction of justice), one of which occurred after the effective date of Part 1, Chapter 96 of Title 18 of the United States Code and the last of which occurred within ten years after the commission of a prior act of racketeering activity.  Defendants operated or managed an enterprise through a pattern of racketeering activity.  Defendants continue to engage in related racketeering activity, the direct purpose of which is to intimidate and harm Plaintiff and to interfere with his congressional investigation, which continues.  The nature of the Defendants' racketeering activity (including its multiple schemes or artifices), its continuity (over many years in the case of Fusion GPS and Simpson), its relatedness (same *modus operandi* as has been used against multiple other targets, same media sympathizer, McClatchy, same or similar purposes, results, and methods of commission), and its breadth (the sheer number of victims), is such that there is a threat that it will continue indefinitely and be repeated in the future.  Defendants' past misconduct, including aggressive smear campaigns undertaken against Halvorssen, Browder, Trump and Plaintiff, by its nature projects into the future with the threat of repetition.  Indeed, Fusion GPS was paid $3,300,000 in 2017 to continue the campaign against President Trump.

79.     As a direct and proximate cause of the Defendants' violations of Title 18 U.S.C. § 1962(a-c), Plaintiff suffered injury and loss.

80.     In accordance with 18 U.S.C. § 1964(c), Plaintiff seeks threefold the damages he has sustained, the costs of this suit, and reasonable attorney's fees incurred.

## COUNT II – <u>RICO CONSPIRACY</u>

81.     Plaintiff restates paragraphs 1 through 80 of this Amended Complaint and incorporates them herein by reference.

82.     Beginning in or about January 2018 and continuing through the present, Fusion GPS and Simpson combined, associated, agreed or acted in concert with CfA and others, including Mair, for the express purposes of injuring Plaintiff through a pattern of racketeering activity and acts of racketeering in violation of Title 18 U.S.C. § 1962.

83.     Defendants acted intentionally, purposefully, without lawful justification, and with the express knowledge that they were injuring Plaintiff's business and reputation.

84.     As a direct and proximate cause of the Defendants' violations of Title 18 U.S.C. § 1962(d), Plaintiff suffered injury and loss.

85.     In accordance with 18 U.S.C. § 1964(c), Plaintiff seeks threefold the damages he has sustained, the costs of this suit, and reasonable attorney's fees incurred.

## COUNT III – <u>COMMON LAW CONSPIRACY</u>

86.     Plaintiff restates paragraphs 1 through 85 of this Amended Complaint and incorporates them herein by reference.

87.     The Defendants' actions, detailed above, constitute a conspiracy at common law.

88.     As a direct result of the Defendants' willful misconduct, Plaintiff suffered damage and incurred loss, including, but not limited to, injury to his business and reputation, court costs, and other damages.

## **CONCLUSION**

Fusion GPS, Simpson and Steele fraudulently developed the Steele/Fusion "dossier" and disseminated it to U.S. Government officials and the press as if the salacious accusations were true. Plaintiff investigated this wrongdoing, causing Fusion GPS and Simpson to retaliate against him and to take action that was intended to harass, intimidate and influence Plaintiff in the performance of his congressional investigation. That retaliation and obstruction of justice consisted of a coordinated effort by the Defendants to manufacture "ethics" complaints against Plaintiff and to utilize the press (McClatchy) as a weapon to pressure Plaintiff to back off his investigation of Fusion GPS and Simpson. Defendants' corrupt acts of racketeering are part of their regular way of doing business. That way of doing business must end here and now.


Plaintiff alleges the foregoing based upon personal knowledge, public statements of others, and records in his possession. Plaintiff believes that substantial additional evidentiary support, which is in the exclusive possession of the Defendants and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Plaintiff reserves his right to amend this Complaint upon discovery of additional instances of the Defendants' wrongdoing.

## **CONCLUSION AND REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court to enter Judgment against the Defendants, jointly and severally, as follows:

A.      Compensatory damages in the amount of $3,300,000 or such greater amount as is determined by the Jury;

B.      Threefold damages in the sum of $9,900,000.00;

C.      Punitive damages in the amount of $350,000 or the maximum amount allowed by law;

D.      Disgorgement of all income and profit obtained by the enterprise from or as a result of the alleged racketeering activity;

E.      Injunctive relief in accordance with Title 18 U.S.C. § 1964;

F.      Dissolution and/or reorganization of Fusion GPS and CfA to prevent these Defendants from engaging in wrongdoing in the future;

G.      Prejudgment interest at the maximum rate allowed by law;

H.      Postjudgment interest on the principal sum of the Judgment entered against Google from the date of Judgment until paid;

I.      Attorney's Fees, Expert Witness Fees and Costs;

J.      Such other relief as is just and proper.


## **TRIAL BY JURY IS DEMANDED**


DATED:      December 13, 2019

DEVIN G. NUNES

By: ___*/s/ Steven S. Biss*_____
    Steven S. Biss (VSB # 32972)
    300 West Main Street, Suite 102
    Charlottesville, Virginia 22903
    Telephone:    (804) 501-8272
    Facsimile:    (202) 318-4098
    Email:        **stevenbiss@earthlink.net**

    *Counsel for the Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2019 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By: ___*/s/Steven S. Biss*_____
    Steven S. Biss (VSB # 32972)
    300 West Main Street, Suite 102
    Charlottesville, Virginia 22903
    Telephone:    (804) 501-8272
    Facsimile:    (202) 318-4098
    Email:        **stevenbiss@earthlink.net**

    *Counsel for the Plaintiff*