**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| DEVIN G. NUNES<br><br>              Plaintiff,<br><br>      v.<br><br>FUSION GPS A/K/A BEAN LLC, GLENN SIMPSON, and CAMPAIGN FOR ACCOUNTABILITY, INC.<br><br>              Defendants. | Civil Case No. 1:19-cv-1148 |

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**MOTION TO DISMISS OF DEFENDANTS GLENN SIMPSON AND FUSION GPS**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

ARGUMENT .................................................................................................................... 6

I.      PLAINTIFF DOES NOT HAVE STANDING .................................................. 6

II.     THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS
        FUSION GPS AND GLENN SIMPSON ........................................................... 8

    A.  The Court Lacks Specific Jurisdiction Over Defendants Because None of the Alleged
        Conduct Forming the Basis of the Case Took Place in Virginia ................................... 9

    B.  The Court Lacks General Jurisdiction Over Defendants Because Fusion GPS Is
        Incorporated in Delaware with its Principal Place of Business in Washington, D.C.,
        and Glenn Simpson Is a Domiciliary of Washington, D.C. ........................................... 9

III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER RICO ... 11

    A.  LEGAL STANDARDS ............................................................................................. 11

    B.  THE COMPLAINT FAILS TO PLEAD A VIOLATION OF RICO BY
        DEFENDANTS SIMPSON OR FUSION GPS BECAUSE IT DOES NOT ALLEGE
        THAT EITHER DEFENDANT SIMPSON OR FUSION GPS COMMITTED AT
        LEAST TWO PREDICATE ACTS .................................................................................. 13

    C.  PLAINTIFF FAILS TO PLAUSIBLY PLEAD EITHER A COGNIZABLE INJURY,
        OR THAT SUCH INJURY WAS PROXIMATELY CAUSED BY THE ALLEGED
        RICO VIOLATION ......................................................................................................... 17

    D.  THE COMPLAINT FAILS TO PLAUSIBLY PLEAD THAT DEFENDANTS
        "RECEIVED ANY INCOME" DERIVED FROM A PATTERN OF
        RACKETEERING ACTIVITY AS REQUIRED UNDER SECTION 1962(a) ........... 19

    E.  THE COMPLAINT FAILS TO PLAUSIBLY PLEAD THAT DEFENDANTS
        ACQUIRED OR MAINTAINED ANY INTEREST OR CONTROL OF AN
        ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY AS
        REQUIRED UNDER SECTION 1962(b) ........................................................................ 19

    F.  THE COMPLAINT FAILS TO PLAUSIBLY PLEAD A VIOLATION OF 1962(c)
        BECAUSE IT DOES NOT ALLEGE AN ENTERPRISE DISTINCT FROM
        DEFENDANTS OR THAT DEFENDANTS CONDUCTED THE AFFAIRS OF THE
        ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY ......... 20

    G.  THE COMPLAINT DOES NOT ADEQUATELY PLEAD PREDICATE ACTS ...... 22

**1. Plaintiff Fails to Plausibly Plead a Violation of Section 1503(a).** .........................22

**2. Plaintiff Fails to Plausibly Plead a Violation of §§ 1512(b)(1) or (b)(2)**...............23

**3. Plaintiff Fails to Plausibly Plead a Violation of § 1512(d)(2)-(4).** .........................24

**4. Plaintiff Fails to Plausibly Plead a Violation of § 1513(e).** ...................................25

**5. Plaintiff Fails to Plausibly Plead a Violation of § 1343**..........................................25

**6. Defendants' Alleged Criminal Conduct Constitutes Protected First Amendment Activity.** ...................................................................................................................26

**H. PLAINTIFF FAILS TO PLAUSIBLY PLEAD A VIOLATION OF THE RICO CONSPIRACY PROVISION** ........................................................................................27

**IV.    THE COMMON LAW CONSPIRACY CLAIM SHOULD BE DISMISSED** ........28

**CONCLUSION** ...................................................................................................................29

# TABLE OF AUTHORITIES

**CASES**

*Aggarwal v. Sikka*,
   No. 1:12CV60, 2012 WL 12870349 (E.D. Va. June 12, 2012)...........................27

*Al-Abood ex rel. Al-Abood v. El-Shamari*,
   217 F.3d 225 (4th Cir. 2000) ...........................................................13

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)......................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................12, 18

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979).......................................................................7

*Bast v. Cohen, Dunn & Sinclair, PC*,
   59 F.3d 492 (4th Cir. 1995) ............................................................17

*Beck v. McDonald*,
   848 F.3d 262 (4th Cir. 2017) ...................................................7, 8, 18

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................12

*Boyle v. United States*,
   556 U.S. 938 (2009)......................................................................20

*Brown v. R & B Corp. of Virginia*,
   267 F. Supp. 3d 691 (E.D. Va. 2017) ..............................................7

*Carroll v. Washington Gas Light Fed. Credit Union*,
   No. 1:17-CV-1201, 2018 WL 2933412 (E.D. Va. Apr. 4, 2018) (O'Grady, *J.*) .7, 12

*Cedric Kushner Promotions, Ltd. v. King*,
   533 U.S. 158 (2001)......................................................................21

*Commercial Business Systems, Inc. v. Bellsouth Services, Inc.*,
   453 S.E.2d 261 (Va. 1995)............................................................28

*Cooksey v. Futrell*,
   721 F.3d 226 (4th Cir. 2013) ...........................................................7

*Curry v. Trans Union, LLC*,
   No. 3:16-cv-824, 2017 WL 2058266 (E.D. Va. Apr. 26, 2017), *report and recommendation
   adopted,* 2017 WL 2056176 (E.D. Va. May 12, 2017) ......................................11

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)................................................................10, 11

*Davis v. Hudgins*,
   896 F. Supp. 561 (E.D. Va. 1995), *aff'd,* 87 F.3d 1308 (4th Cir. 1996)..............20

*Dreher v. Experian Info. Sols., Inc.*,

856 F.3d 337 (4th Cir. 2017) ............................................................................7

*Efron v. Embassy Suites (Puerto Rico), Inc.,*
223 F.3d 12 (1st Cir. 2000) ...........................................................................27

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,*
385 F.3d 159 (2d Cir. 2004) ..........................................................................27

*Field v. GMAC LLC,*
660 F. Supp. 2d 679 (E.D. Va. 2008) ............................................................27

*Flip Mortg. Corp. v. McElhone,*
841 F.2d 531 (4th Cir. 1988) .........................................................................19

*GE Inv. Private Placement Partners II v. Parker,*
247 F.3d 543 (4th Cir. 2001) ...................................................................14, 27

*Gibbs v. Haynes Investments, LLC,*
368 F. Supp. 3d 901 (E.D. Va. 2019) ............................................................12

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
564 U.S. 915 (2011)...........................................................................9, 10, 11

*Gov't of Dominican Republic v. AES Corp.,*
466 F. Supp. 2d 680 (E.D. Va. 2006) ............................................................19

*Grayson v. Anderson,*
816 F.3d 262 (4th Cir. 2016) ...........................................................................8

*Griffin v. Sevatec, Inc.,*
No. 1:16-CV-630, 2016 WL 4527357 (E.D. Va. Aug. 29, 2016) (O'Grady, J.) .12

*Hamm v. Rhone–Poulenc Rorer Pharm., Inc.,*
187 F.3d 941 (8th Cir. 1999) .........................................................................18

*Hawkins v. i-TV Digitalis Tavkozlesi zrt.,*
935 F.3d 211 (4th Cir. 2019) ...........................................................................8

*Hecht v. Commerce Clearing House, Inc.,*
897 F.2d 21 (2d Cir. 1990)............................................................................27

*Hemi Grp., LLC v. City of New York, N.Y.,*
559 U.S. 1 (2010)..........................................................................................18

*Hirsch v. Johnson,*
No. 1:14CV332 JCC/TRJ, 2014 WL 2916748 (E.D. Va. June 26, 2014) ...........11

*H.J. Inc. v. Nw. Bell Tel. Co.,*
492 U.S. 229 (1989)................................................................................13, 16

*Int'l Data Bank, Ltd. v. Zepkin,*
812 F.2d 149 (4th Cir. 1987) ....................................................................16, 17

*Judson v. Bd. of Supervisors of Mathews Cty., Virginia,*
No. 4:18CV121, 2019 WL 2558243 (E.D. Va. June 20, 2019)...........................7, 8

*KMLLC Media, LLC v. Telemetry, Inc.,*

No. 1:15-cv-432, 2015 WL 6506308 (E.D. Va. Oct. 27, 2015) ........................10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...............................................................................6

*Lyon v. Campbell*,
28 F.3d 1210 (4th Cir. 1994) (*per curiam*) .........................................17

*Mktg. Prod. Mgmt., LLC v. Healthandbeautydirect.com, Inc.*,
333 F. Supp. 2d 418 (D. Md. 2004) ...................................................16

*Menasco, Inc. v. Wasserman*,
886 F.2d 681 (4th Cir. 1989) ..........................................................17, 25,

*Myers v. Lee*,
No. 10-cv-131, 2010 WL 3745632 (E.D. Va. Sept. 21, 2010) ...........20, 21

*Nat'l Org. for Women, Inc. v. Scheidler*,
510 U.S. 249 (1994)............................................................................25

*Palmetto State Med. Ctr., Inc. v. Operation Lifeline*,
117 F.3d 142 (4th Cir. 1997) .........................................13, 14, 20, 21

*Perdue Foods LLC v. BRF S.A.*,
814 F.3d 185 (4th Cir. 2016) ...............................................................9

*Phoenix Renovation Corp. v. Rodriguez*,
461 F. Supp. 2d 411 (E.D. Va. 2006), *aff'd*, 258 F. App'x 526 (4th Cir. 2007)..28

*Raines v. Byrd*,
521 U.S. 811 (1997)..............................................................................7

*Regions Bank v. J.R. Oil Co., LLC*,
387 F.3d 721 (8th Cir. 2004) .............................................................17

*Reves v. Ernst & Young*,
507 U.S. 170 (1993)...........................................................................20

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985)...........................................................................14

*Shanaghan v. Cahill*,
58 F.3d 106 (4th Cir. 1995) ...............................................................28

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*,
884 F.3d 489 (4th Cir. 2018) .........................................................18, 19

*Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*,
911 F.3d 192 (4th Cir. 2018) ...............................................................9

*Snyder v. Phelps*,
562 U.S. 443 (2011)...........................................................................26

*Solomon v. Am. Web Loan*,
2019 WL 1320790 (E.D. Va. Mar. 22, 2019) ....................................21

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ................................................................6, 7, 8

*United States v. Abed*,
    203 F.3d 822 (4th Cir. 2000) (Table) ................................................................. 27

*United States v. Aguilar*,
    515 U.S. 593 (1995) ............................................................................................ 22

*United States v. Cassidy*,
    814 F. Supp. 2d 574 (D. Md. 2011) .................................................................. 26

*United States v. Denham*,
    663 F. Supp. 2d 561 (E.D. Ky. 2009) ............................................................... 25

*United States v. Edlind*,
    887 F.3d 166 (4th Cir. 2018) ............................................................................ 23

*United States v. Mitchell*,
    877 F.2d 294 (4th Cir. 1989) ............................................................................ 22

*United States v. Stoker*,
    706 F.3d 643 (5th Cir. 2013) ............................................................................ 25

*United States v. Taylor*,
    942 F.3d 205 (4th Cir. 2019) ............................................................................ 26

*United States v. Wilson*,
    796 F.2d 55 (4th Cir. 1986) .............................................................................. 24

*Walters v. McMahen*,
    684 F.3d 435 (4th Cir. 2012) ...................................................................... 11, 12

*Zaletel v. Prisma Labs, Inc.*,
    226 F. Supp. 3d 599 (E.D. Va. 2016) ................................................................ 9

## STATUTES

18 U.S.C. § 1343 ............................................................................................. 6, 25, 26

18 U.S.C. § 1503 ............................................................................................. 6. 23, 26

18 U.S.C. § 1505 ...................................................................................................... 22

18 U.S.C. § 1512 ................................................................................... 6, 23, 24, 25, 26

18 U.S.C. § 1513 ............................................................................................. 6, 25, 26

18 U.S.C. § 1962 ................................................................................................ *passim*

18 U.S.C. § 1964 ................................................................................................ *passim*

## OTHER AUTHORITIES

First Amendment, U.S. Constitution ................................................................. *passim*

Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(6) ............................................................ *passim*

## INTRODUCTION

The House of Representatives created the Office of Congressional Ethics ("OCE"), so that members of the public could make Congress "more accountable to … the American people" by filing ethics complaints about individual members of Congress with OCE.[1] Though a member of the House of Representatives himself, Plaintiff has filed suit against members of the public, in which he preposterously alleges that the submission of ethics complaints to OCE is criminal conduct, in violation of the Racketeering Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961 *et seq*.

After Defendant Campaign for Accountability ("CfA") filed a motion to dismiss this complaint, Plaintiff filed an Amended Complaint that failed to cure any of the original complaint's defects argued in CfA's motion to dismiss. Plaintiff's Amended Complaint (hereinafter "Complaint"), should be dismissed with prejudice because: (1) the Court lacks subject matter jurisdiction, as Plaintiff has not pleaded an injury-in-fact resulting from the submission of these ethics complaints, Fed. R. Civ. P. 12(b)(1); (2) the Court lacks personal jurisdiction over Defendants Glenn Simpson and Fusion GPS, as none of the conduct complained of took place in Virginia, and Defendants Simpson and Fusion GPS are not subject to general personal jurisdiction in Virginia, Fed. R. Civ. P. 12(b)(2); and (3) the Complaint fails to state a claim for relief under RICO, Fed. R. Civ. P. 12(b)(6).

In particular, with respect to this last deficiency, the Complaint does not allege that Defendants Simpson and Fusion GPS committed two or more predicate acts, as required to state a claim for a substantive RICO violation under 18 U.S.C. §§ 1962(a)-(c). The Complaint also does

---

[1] Rep. Nancy Pelosi, on the resolution to create the OCE, *Congressional Record* (Mar. 11, 2008) p. H1529, https://www.congress.gov/crec/2008/03/11/CREC-2008-03-11-pt1-PgH1525.pdf

not allege any RICO injury, proximate cause, or an enterprise distinct from the Defendants. Nor does the Complaint plead that Defendants "received any income derived" from, or "acquir[ed] or maintain[ed]" any interest or control through, a pattern of racketeering activity. Because the RICO claim fails, the Court lacks supplemental jurisdiction over Plaintiff's common law conspiracy claim, which, in any event, was not adequately pleaded itself. The Complaint is riddled with inaccurate statements about Defendants, but even assuming for purposes of this motion that they are true, as the Court must when reviewing a Rule 12(b)(6) motion to dismiss, Plaintiff has failed to state a claim for relief.

## BACKGROUND

In his Complaint, Plaintiff Congressman Devin Nunes plays the victim without alleging an injury-in-fact, and he is suing Defendants in Virginia, where none of Defendants reside and where none of the alleged conduct took place. Plaintiff served as the recused chair of a congressional committee investigating Defendant Fusion GPS, an entity incorporated in Delaware with its principal place of business in the District of Columbia, and Defendant Glenn Simpson, a citizen and domiciliary of the District of Columbia. Plaintiff claims that Defendant CfA, a non-profit organized and located outside of Virginia, filed three ethics complaints with OCE (also located outside of Virginia) about Plaintiff "to retaliate against him and to take action that was intended to harass, intimidate and influence Plaintiff in the performance of his congressional investigation." Am. Compl. at 39 (Conclusion).

Plaintiff alleges that Defendant CfA's submission of these three ethics complaints are criminal acts, with the aspiration of claiming they constitute a pattern of racketeering activity. But he fails to allege that Defendant Simpson took part in *any* of these three ethics complaints, and he alleges that Defendant Fusion GPS participated in only the first of these three ethics complaints.

The Complaint includes multiple pages of allegations that do not relate to the alleged claims. This brief summarizes the few allegations that do.

*The Congressional Investigation*

According to the Complaint, on March 1, 2017, the House Permanent Select Committee on Intelligence ("House Intelligence Committee"), initiated "its investigation into the Russian active measures campaign that targeted the 2016 U.S. Presidential Election." Am. Compl. ¶ 7.

The Complaint claims that on "November 14, 2017, Simpson testified behind closed doors before the House Intelligence Committee." Am. Compl. ¶ 49. The Complaint then alleges the Committee released the transcript of Simpson's testimony on January 17, 2018, Am. Compl. ¶ 50, and that it was "immediately obvious to Representatives and reporters alike" that Simpson "lied in his testimony," Compl. ¶ 51, even though the Complaint cites to no contemporaneous statements to that effect, other than an obscure blog post from January 2018. *Id.*[2]

In a conclusory fashion, Plaintiff claims that "[f]earing a criminal referral for his false statements to the FBI and DOJ, for lying to Congress and the Senate, and for obstructing the House Intelligence Committee in its Russia investigation, the Defendants directly and aggressively retaliated against Plaintiff, employing the same or similar means and methods as Fusion GPS and Simpson have employed multiple times in the past to smear the opposition." Am. Compl. ¶ 54.

*The Ethics Complaints*

---

[2] The Committee's March 22, 2018 investigation report did not find that either Simpson or Fusion GPS had violated any laws, including but not limited to perjury or criminal false statements. *See* House Permanent Subcommittee on Intelligence Majority Report, *Report on Russian Active Measures* (Mar. 22, 2018), *available at* https://republicans-intelligence.house.gov/uploadedfiles/final_russia_investigation_report.pdf.

Plaintiff alleges that the "retaliation and obstruction of justice" engaged in by Defendants were comprised of three isolated incidents within a seven-month period: to wit, "[t]he [r]etaliatory [e]thics [c]omplaints" that CfA submitted to the OCE. Am. Compl. § D. *See also* Am. Compl. ¶ 3.

*First*, Plaintiff alleges that on January 25, 2018, "CfA, acting in concert with Fusion GPS, faxed an 'ethics' complaint against Plaintiff to [OCE]." Am. Compl. ¶ 55. Plaintiff claims that the "purpose of Defendants' first 'ethics' complaint was to threaten and intimidate Plaintiff, impede his communications with 'conservative' members of the press, chill reporting of Fusion GPS and Simpson's wrongdoing, interfere with Plaintiff's congressional investigation into Fusion GPS and the 'Steele Dossier', [sic] and dissuade Plaintiff from making criminal referrals to the DOJ." Am. Compl. ¶ 56. The Complaint does not allege that Simpson played any role in the submission of this ethics complaint.

*Second,* Plaintiff claims that, on March 1, 2018, "CfA faxed a second 'ethics' complaint against Plaintiff to OCE" that allegedly "falsely accused Plaintiff and staff members acting at his direction of having leaked to the press private text messages between Senator Mark Warner and Adam Waldman, a lawyer connected to Steele[.]" Am. Compl. ¶ 58. Plaintiff alleges that "Defendants' intended goal was to undermine confidence in Plaintiff, harass and overwhelm him with litigation, and distract him from his duties as a member of the House Intelligence Committee." Am. Compl. ¶ 59. Plaintiff does not allege ***any*** involvement by Simpson or Fusion GPS in the submission of this ethics complaint.

*Third*, Plaintiff claims that on July 11, 2018, "CfA faxed a third 'ethics' complaint to OCE, this time falsely stating that Plaintiff 'violated federal law and House ethics rules by failing to include information on his personal financial disclosure forms and accepting an impermissible gift.'" Am. Compl. ¶ 60. Again, Plaintiff does not allege any involvement by Simpson or Fusion

GPS in the submission of this ethics complaint. Plaintiff claims that this ethics complaint is related to information obtained through a public records request. Am. Compl. ¶ 61. In a sweeping statement, Plaintiff claims that the

> purpose of the Fusion GPS/CfA 'ethics' complaints was to create negative publicity for Plaintiff, to harass, intimidate and distract Plaintiff, to cast a pall upon the Congressional investigation into the role that Fusion GPS, Simpson and the 'Steele Dossier' played in advancing the 'Russia collusion' narrative, and to dissuade Plaintiff from pursuing criminal charges against Simpson and Fusion GPS.

Am. Compl. ¶ 63. Plaintiff, however, omitted from the Complaint that, by this point in time, he had already announced that the Committee's investigation had been closed, on March 12, 2018.[3]

Although Plaintiff describes alleged conduct by the newspaper *McClatchy* and another individual, Elizabeth Mair, Plaintiff does not allege that their conduct constituted predicate acts.[4]

---

[3] Press Release: Nunes statement on Russia Investigation, Mar. 12, 2018, https://republicans-intelligence.house.gov/news/documentsingle.aspx?DocumentID=873.

[4] As to Mair, Plaintiff alleges that "Fusion GPS, upon information and belief, recruited additional bad actors, including political operative Elizabeth 'Liz' Mair," who "controls the Swamp Accountability Project," and "encouraged and enticed them to participate in the coordinated attacks upon Plaintiff." Am. Compl. ¶ 62. Plaintiff claims that "[o]n the same day CfA filed its third complaint, Swamp filed an 'ethics' complaint against Plaintiff." *Id.* However, Plaintiff does not allege that this was one of the "retaliatory ethics complaints" or otherwise claim that it was a predicate RICO act. *Id.*

As to *McClatchy*, Plaintiff alleges: "Fusion GPS, acting in concert with CfA and Mair, coordinated the attacks on Plaintiff with *McClatchy*, a newspaper with a known axe to grind against Plaintiff. Each of the 'ethics' complaints filed against Plaintiff was leaked to *McClatchy* and immediately reported by *McClatchy* in the *Fresno Bee*." Am. Compl. ¶ 63. In the "Conclusion" to the Complaint, Plaintiff also alleges that the "retaliation and obstruction of justice consisted of a coordinated effort by the Defendants to manufacture 'ethics' complaints against Plaintiff and utilize the press (*McClatchy*) as a weapon to pressure Plaintiff to back off his investigation of Fusion GPS and Simpson." Am. Compl. at 39. The Complaint does not allege any specific alleged wrongful conduct by *McClatchy*, that any of *McClatchy*'s conduct was a predicate act, or that Defendants' unspecified "coordinated effort …[to] utilize the press" was a predicate act. Plaintiff does not allege any facts showing how or what Defendants "coordinated" with *McClatchy*, what that means, or that Plaintiff was harmed by the "coordinat[ion]." Nor does the Complaint assert any facts showing that any of the Defendants "leaked" the ethics complaints to *McClatchy*.

*Simpson's Book and the Department of Justice's Inspector General's Report*

In his Amended Complaint, Plaintiff adds lengthy excerpts from a book by Defendant Simpson and his co-founder of Fusion GPS, Peter Fritsch, entitled *Crime in Progress: Inside the Steele Dossier and the Fusion GPS Investigation of Donald Trump*. Am. Compl. ¶ 14. But Plaintiff does not allege that *Crime in Progress* or anything described in the quoted passages are predicate acts. *Id.*

Plaintiff also adds to his Amended Complaint a purported summary of the Department of Justice's Inspector General's Report, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* ("IG Report"). *Id.* ¶¶ 15 & 16. But Plaintiff does not allege that the IG Report – or any of the IG's findings – is a predicate act that forms the basis of his RICO claim. *Id.*

*Plaintiff's RICO and Common Law Conspiracy Claims*

Plaintiff claims that Defendants Fusion GPS, Simpson, and CfA violated all four sections of RICO, 18 U.S.C. § 1962(a)-(d). In Count I, Plaintiff alleges that all three Defendants violated RICO § 1962(a)-(c), through a pattern of racketeering activity comprised of the following alleged predicate acts: violations of Title 18 U.S.C. §§ 1503(a), 1512(b)(1) & (b)(2), 1513(e), and 1343, and that these predicate acts constituted a "pattern of racketeering," Am. Compl. ¶¶ 73-77, that "injured [Plaintiff] in his business, property and reputation." *Id.* ¶ 78. In Count II, Plaintiff alleges that Defendants violated the RICO conspiracy provision, 18 U.S.C. § 1962(d). Finally, in Count III, Plaintiff alleges a claim of common law conspiracy.

## ARGUMENT

## I.    PLAINTIFF DOES NOT HAVE STANDING

The plaintiff has the burden of establishing the "irreducible constitutional minimum" of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560 (1992)). "'The standing requirement stems from Article III ... [and] is a threshold jurisdictional question'" that ensures a lawsuit is "'appropriate for the exercise of the [federal] courts' judicial powers.'" *Brown v. R & B Corp. of Virginia*, 267 F. Supp. 3d 691, 695 (E.D. Va. 2017) (quoting *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017)). "To meet the standing requirements of Article III, '[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)) (emphasis omitted). Plaintiff's indefinite, speculative, and abstract claims of having "been injured in his business, property and reputation," Am. Compl. ¶ 78, do not satisfy his burden.

To demonstrate standing, the plaintiff must show: "(1) an injury in fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision." *Carroll v. Washington Gas Light Fed. Credit Union*, No. 1:17-CV-1201, 2018 WL 2933412, at *2 (E.D. Va. Apr. 4, 2018) (O'Grady, *J.*) (quoting *Spokeo*, 136 S. Ct. at 1548). A concrete injury "must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548. It must be "'real,' and not 'abstract.'" *Id.* In other words, "the plaintiff must have suffered an injury or threat of injury that is 'credible,' not 'imaginary or speculative.'" *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

A motion to dismiss for lack of subject matter jurisdiction "may attack a complaint on its face, insofar as the complaint fails to allege facts upon which the court can base jurisdiction, or it may. . . attack the truth of any underlying jurisdictional allegations contained in the complaint." *Judson v. Bd. of Supervisors of Mathews Cty., Virginia*, No. 4:18CV121, 2019 WL 2558243, at *4 (E.D. Va. June 20, 2019) (quoting *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)). Here,

Plaintiff does not allege facts demonstrating any injury-in-fact to himself. He describes his "injuries" in a conclusory and abstract fashion that is not entitled to a presumption of truth. *See Beck*, 848 F.3d at 270 (explaining that at the pleading stage, conclusory statements and legal conclusions about the alleged injury are not presumed true). For instance, the Complaint alleges: "Plaintiff was injured in his business, property and reputation by Defendants' racketeering activity and tortious conduct," Am. Compl. ¶ 4; "Plaintiff has been injured in his business, property and reputation by reason of Defendants' multiple violations of Title 18 U.S.C. § 1962," Am. Compl. ¶ 78; "Plaintiff suffered injury and loss," Am. Compl. ¶ 79; "Plaintiff suffered injury and loss," Am. Compl. ¶ 84; "Plaintiff suffered damage and incurred loss, including, but not limited to, injury to his business reputation, court costs, and other damages." Am. Compl. ¶ 88. The Complaint's conclusory allegations about injuries are "not enough." *Judson*, 2019 WL 2558243, at *9, and do not show that any injury to Plaintiff from the ethics complaints "actually exist[s]." *Spokeo*, 136 S. Ct. at 1584.

Plaintiff has not alleged any concrete and particularized harm from the filing of ethics complaints with OCE. Therefore, he lacks standing and the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## II.   THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS FUSION GPS AND GLENN SIMPSON

The Complaint fails to establish personal jurisdiction over either Defendants Fusion GPS or Simpson. "To enter a judgment that adjudicates the rights of a party, a federal court must have personal jurisdiction over that party." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 228 (4th Cir. 2019). At this stage, Plaintiff must make a "*prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). In determining whether Plaintiff has made a *prima facie* showing of personal jurisdiction, the Court

takes "the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Id.* Even under that standard, however, Plaintiff does not allege any contacts between Virginia and either Fusion GPS or Simpson. Consequently, Plaintiff cannot show that the Court has general or specific personal jurisdiction over either Fusion GPS or Simpson.

### A. The Court Lacks Specific Jurisdiction over Defendants Because None of the Alleged Conduct Forming the Basis of the Case Took Place in Virginia.

Specific jurisdiction is appropriate only where the defendant has "purposefully established minimum contacts in the forum State," *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016), and where those "alleged contacts with the forum also constitute the asserted basis for the suit." *Zaletel v. Prisma Labs, Inc.*, 226 F. Supp. 3d 599, 606 (E.D. Va. 2016). The basis of Plaintiff's suit is CfA's submission of ethics complaints to the OCE, an office of the US House of Representatives in the District of Columbia, *see* Am. Compl. ¶¶ 3, 55-56, 58-63, 65, 69, 72-85 & Concl. Neither Fusion GPS nor Simpson conducted any work concerning the challenged ethics complaints in Virginia. Simpson Decl. ¶¶ 6 & 7, attached at Ex. 1. Therefore, this Court cannot exercise specific jurisdiction over Defendants Fusion GPS and Simpson because Plaintiff does not allege that his suit "aris[es] out of or relate[s] to the defendant[s'] contacts with the forum." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923–24 (2011) (alterations in original) (internal quotation marks and citation omitted).

### B. The Court Lacks General Jurisdiction over Defendants Because Fusion GPS Is Incorporated in Delaware with its Principal Place of Business in Washington, D.C., and Glenn Simpson Is Domiciled in Washington, D.C.

In the absence of specific jurisdiction, Plaintiff must show "a State's *general* jurisdiction over the defendant by demonstrating the defendant's continuous and systematic contact with the State." *Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198 (4th Cir. 2018) (emphasis in original). A court "may assert general jurisdiction over foreign (sister-state or

foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks and citations omitted). "[O]nly a limited set of affiliations with a forum will render a defendant amendable to all-purpose [or general] jurisdiction there." *KMLLC Media, LLC v. Telemetry, Inc.*, No. 1:15-cv-432, 2015 WL 6506308, at *4 (E.D. Va. Oct. 27, 2015) (quoting *Daimler AG,* 571 U.S. at 137) (alterations in original). For a corporation, "the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'" *Daimler AG*, 571 U.S. at 137 (citation omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear*, 564 U.S. at 924.

Defendant Fusion GPS is not "essentially at home" in Virginia because Virginia is not its place of incorporation or its principal place of business. *Daimler AG*, 571 U.S. at 127; *see, e.g.,* Am. Compl. ¶ 8 (Plaintiff's description of Fusion GPS); *id.* ¶ 15 (conclusory statement that "[e]ach of the Defendants is subject to personal jurisdiction in Virginia"). The Complaint alleges no contacts between Defendant Fusion GPS and Virginia. The Complaint merely alleges that "[u]pon information and belief, many of Fusion GPS' clients, agents and donors are located in Virginia," *id.* at ¶ 8, and that "[m]any of the key witnesses to the Defendants' corrupt business practices . . . reside in Virginia." *Id.* at ¶ 19. But the Complaint does not plead facts showing the "limited set of affiliations with a forum [that] will render a defendant amenable to all-purpose jurisdiction there," namely, place of incorporation and its principal place of business. *Daimler AG*, 571 U.S. at 137 (rejecting argument that a corporation is subject to general jurisdiction in any state where it "engages in a substantial, continuous, and systematic course of business."). In fact, Fusion GPS is incorporated in Delaware and its principal place of business is Washington, D.C. Simpson Decl.

10

¶ 5. Fusion GPS has no offices in Virginia. *Id.* Accordingly, general jurisdiction over Fusion GPS is improper. *See Daimler AG*, 571 U.S. at 139 (parent corporation that was not incorporated in the forum state and did not have its principal place of business there was not subject to suit there on claims not related to its contacts with the state, even assuming that its subsidiary was "at home" in the state) (internal quotation marks and citation omitted); *Curry v. Trans Union, LLC*, No. 3:16-cv-824, 2017 WL 2058266, at *7 (E.D. Va. Apr. 26, 2017), *report and recommendation adopted,* 2017 WL 2056176 (E.D. Va. May 12, 2017) (corporation not subject to general jurisdiction in Virginia even assuming that its regional subsidiary was "at home" in Virginia; presence of a few offices and management of twenty apartment complexes were insufficient contacts for general jurisdiction).

General jurisdiction is also improper over Defendant Simpson, because he is domiciled in Washington, D.C. *See Goodyear*, 564 U.S. at 924; Simpson Decl. ¶ 2. The Complaint alleges no contacts whatsoever between Simpson and Virginia. *See* Am. Compl. ¶ 9 (Plaintiff's description of Simpson). Simpson is not subject to personal jurisdiction in Virginia. *See Hirsch v. Johnson*, No. 1:14CV332 JCC/TRJ, 2014 WL 2916748, at *6 (E.D. Va. June 26, 2014) (court lacked general personal jurisdiction over defendant who was a resident of Arizona and had no continuous and systematic contacts with Virginia).

Accordingly, because the Court lacks personal jurisdiction over both Defendants Fusion GPS and Glenn Simpson, the suit against them should be dismissed under Rule 12(b)(2).

### III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER RICO

#### A.  LEGAL STANDARDS

##### 1.  Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the "complaint must state a 'plausible claim for relief.'" *Walters v. McMahen*, 684 F.3d

435, 439 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[5] "The determination whether a complaint adequately states a plausible claim is a 'context-specific task,' [*Iqbal*, 556 U.S. at 679,] in which the factual allegations of the complaint must be examined to assess whether they are sufficient 'to raise a right to relief above the speculative level.'" *Walters v. McMahen*, 684 F.3d at 439 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Although a plaintiff's "well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff," *Gibbs v. Haynes Investments, LLC*, 368 F. Supp. 3d 901, 926–27 (E.D. Va. 2019) (internal citations and quotation marks omitted), this principle "applies only to factual allegations," *id.*, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

The complaint "must assert facts that rise above speculation and conceivability to those that 'show' a claim that is 'plausible on its face.'" *Gibbs*, 368 F. Supp. 3d at 927 (quoting *Iqbal*, 556 U.S. at 678–79). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gibbs*, 368 F. Supp. 3d at 927 (quoting *Iqbal*, 556 U.S. at 678).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include more than "mere labels and conclusions stating that the plaintiff is entitled to relief." *Carroll v. Washington Gas*

---

[5] In reviewing a motion to dismiss under Rule 12(b)(6), "the court may consider 'matters of which a court may take judicial notice,' . . . such as 'matters of public record.' . . . The court can 'also consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Griffin v. Sevatec, Inc.*, No. 1:16-CV-630, 2016 WL 4527357, at *2 (E.D. Va. Aug. 29, 2016) (O'Grady, *J.*) (internal citations omitted).

*Light Fed. Credit Union*, 2018 WL 2933412, at *2 (O'Grady, J.) (dismissing complaint for failure to plausibly allege specifics to support standing).

### 2. RICO, 18 U.S.C. § 1962

RICO creates civil liability for "any person," (1) "who uses or invests income derived 'from a pattern of racketeering activity' to acquire an interest in or to operate an enterprise engaged in interstate commerce, § 1962(a);" (2) "who acquires or maintains an interest in or control of such an enterprise 'through a pattern of racketeering activity,' § 1962(b);" or (3) "who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs 'through a pattern of racketeering activity, § 1962(c)." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232–33 (1989).

### B. THE COMPLAINT FAILS TO PLEAD A VIOLATION OF RICO BY DEFENDANTS SIMPSON OR FUSION GPS BECAUSE IT DOES NOT ALLEGE THAT EITHER DEFENDANT SIMPSON OR FUSION GPS COMMITTED AT LEAST TWO PREDICATE ACTS.

The Complaint does not allege two or more predicate acts by Fusion GPS or Glenn Simpson. This failure dooms Plaintiff's claims against them under RICO, pursuant to which Plaintiff must adequately allege "at a minimum, [that] each RICO defendant committed two acts of racketeering activity within a ten-year period." *Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997); 18 U.S.C. § 1961(5) (A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity").

A "pattern of racketeering activity" is a required element of all RICO claims. *H.J.*, 492 U.S. at 239; 18 U.S.C. § 1962(a)-(c). "'Racketeering activity' is defined as any of a number of predicate acts," *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000),

including mail and wire fraud, obstruction of justice, and retaliation against an informant. To establish a pattern, "a minimum of two predicate acts is required," but "two acts alone do not necessarily establish a pattern." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985)). Critically here, the complaint must plausibly plead at least two predicate acts *by each defendant. See Palmetto*, 117 F.3d at 148; § 1962(a)-(c) (imposing liability on a person who engages in various prohibited activities through "a pattern of racketeering activity").

The Complaint fails to allege that Defendant Simpson played any role in any alleged predicate acts. The Complaint sought to allege that each of Defendant CfA's three submissions of ethics complaints about Plaintiff constituted a predicate act, but the Complaint does not allege any personal involvement by Defendant Simpson in the research, drafting, or filing of any of these three ethics complaints. Am. Compl. ¶¶ 55-64. In one abstruse sentence, Plaintiff alleges, "As an 'astroturfer,' Fusion GPS and Simpson chose CfA, Mair and McClatchy as fronts or 'cut-outs' for the smear campaign." Compl. ¶ 77. That is not a sufficient factual allegation to plausibly claim that Defendant Simpson committed a RICO predicate act.

As for Fusion GPS, the Complaint attempts to allege that Fusion GPS was involved only in the first ethics complaint: "CfA, acting in concert with Fusion GPS, faxed an 'ethics' complaint against Plaintiff to the Office of Congressional Ethics," not specifying what "acting in concert" means. Am. Compl. ¶ 55.

For the other two ethics complaints, Plaintiff does not make any factual allegations that Fusion GPS had any role in the drafting, research, or submission of the two subsequent ethics

complaints. *See* Am. Compl. ¶¶ 58-61.[6]  In a confusing paragraph, Plaintiff alleges that "CfA's

third ethics complaint was the result of a joint effort that included Michael Seeley ("Seeley")," *id.*

¶ 61, but then goes on to discuss matters that have nothing to do with the third ethics complaint:

> Upon information and belief, Fusion GPS and/or CfA directed Seeley to make a
> request under the California Public Records Act ("PRA") for emails received by
> Plaintiff's wife, Elizabeth, an elementary school teacher. Seeley's request targeting
> Plaintiff's wife ended up costing the Tulare County Office of Education thousands
> of dollars in unnecessary cost and expense. Seeley published Elizabeth Nunes'
> emails online and included the names and email addresses of numerous school
> administrators and teachers, resulting in extensive harassment of these innocent,
> hard-working citizens of Tulare County, including hateful accusations that they
> teach bigotry and racism.

*Id.* ¶ 61. Plaintiff does not allege any connection between the emails Seeley obtained from the

elementary school under the public records law and the third ethics complaint, which Plaintiff

describes as "relating to his investment in the Napa Valley winery." *Id.* ¶ 14 n.2. Therefore, he

does not plausibly allege any involvement of Fusion GPS in the third ethics complaint.

At another point, Plaintiff claims: "the third complaint was about wineries that Fusion GPS

just happened to be researching and spreading lies about." *Id.* ¶ 12. But Plaintiff does not allege

*when* Fusion GPS "happened to be researching" the wineries, does not allege that Fusion GPS *in*

*fact* conducted research for CfA's third ethics complaint, or that CfA hired Fusion GPS to conduct

---

[6] The Complaint's allegations concerning Elizabeth Mair do not adequately allege any conduct by
Fusion GPS in submitting an ethics complaint. *See* Am. Compl. ¶ 62. The Complaint states that
"Fusion GPS, upon information and belief, recruited additional bad actors, including political
operative Elizabeth 'Liz' Mair ('Mair'), and encouraged and enticed them to participate in the
coordinated attacks upon Plaintiff." *Id.* The Complaint claims that Mair's group, the Swamp
Accountability Project, "filed an 'ethics' complaint against Plaintiff" on the same day that CfA
filed its third ethics complaint. *Id.* The Complaint then alleges: "The organized and coordinated
attacks on Plaintiff bear all the hallmarks of a Fusion GPS smear operation." *Id.* Those are not
facts that "rise above speculation and conceivability to those that 'show' a claim" that Fusion GPS
had any role in Mair's ethics complaint against Plaintiff that is "plausible on its face." *Gibbs*, 368
F. Supp. 3d at 927 (quoting *Iqbal*, 556 U.S. at 678–79).

research for its ethics complaint. He at most alleges that at some unknown point in time, Fusion

GPS researched the wineries. Furthermore, Plaintiff also quotes from *Crime in Progress* that "[i]n

May, . . . Nunes's ownership stake in the Napa winery Alpha Omega became national news . . ."

*Id.* ¶ 14 (at p. 11). Plaintiff thus acknowledges that the information "about wineries" was "national

news" prior to CfA's submission of its ethics complaint allegedly related to the wineries.

Therefore, he does not plausibly allege that Fusion GPS had anything to do with that information.

As a result, the Complaint alleges (at most) just one predicate act by Fusion GPS and none

by Glenn Simpson, and thus the Complaint fails to state a plausible claim for relief under the RICO

substantive provisions, § 1962(a)-(c), against either Defendants Fusion GPS or Glenn Simpson.

Having failed to plead at least two predicate acts by either Fusion GPS or Glenn Simpson,

the Complaint cannot plead that Fusion GPS or Glenn Simpson engaged in a "pattern of

racketeering activity," and thus, as to these two Defendants, the analysis of the "pattern"

requirement ends here.[7] The RICO claims should be dismissed against these Defendants.

---

[7] As to all three ethics complaints (even though Plaintiff has not plausibly alleged Defendants Simpson's and Fusion GPS' involvement in all of them), the Complaint fails to plausibly plead the required elements of the pattern requirement: relatedness and continuity. *Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 154 (4th Cir. 1987). The alleged predicate acts (*i.e.*, the three ethics complaints) are not related because Plaintiff has alleged the purpose of submitting these ethics complaints at such a general level that it is meaningless and cannot support a finding of relatedness. *See, e.g.,* Am. Compl. ¶¶ 56, 63; *Mktg. Prod. Mgmt., LLC v. Healthandbeautydirect.com, Inc.*, 333 F. Supp. 2d 418, 426 (D. Md. 2004) (cautioning that RICO elements should not be interpreted "at too high a 'level of generality'") (quoting *H.J.*, 592 U.S. at 236). Plaintiff further alleges just a single scheme—filing ethics complaints against Plaintiff – that involves different participants: he claims that CfA submitted the first ethics complaint "in concert with" with Fusion GPS, and that CfA submitted the second and third ethics complaints by itself. Plaintiff also fails to allege the "results" of CfA's ethics complaints beyond mere conclusory allegations, let alone related *results*. These allegations do not show sufficient relatedness of the purpose, participants, or results to constitute a "pattern."

The Complaint also fails to plead continuity. The Complaint does not assert facts showing close-ended continuity. It alleges acts that span a mere seven months – *i.e.*, CfA filed ethics complaints on January 25, 2018, March 1, 2018, and July 11, 2018. *See* Compl. ¶¶ 51, 53, 55, 57. Allegations

### C. PLAINTIFF FAILS TO PLAUSIBLY PLEAD EITHER A COGNIZABLE INJURY, OR THAT SUCH INJURY WAS PROXIMATELY CAUSED BY THE ALLEGED RICO VIOLATION.

A RICO complaint must adequately allege that Plaintiff was "injured in his business or property by reason of a violation" of the statute. *Int'l Data Bank*, 812 F.2d at 151 (quoting 18 U.S.C. § 1964(c)). "An allegation of personal injury and pecuniary losses occurring therefrom are not sufficient to meet the statutory requirement of injury to 'business or property.'" *Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995) (affirming dismissal of the complaint and its "absurd" claim of a RICO violation, and awarding sanctions against the plaintiff) (internal quotation marks and citation omitted). Moreover, "[i]njury to … 'intangible property interests' is not injury that may support standing to bring RICO claims." *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 730 (8th Cir. 2004) (harm to bank's position as a bankruptcy creditor was not an actionable RICO injury).

The Complaint nowhere pleads any actionable RICO injury to Plaintiff "by reason of" the alleged predicate acts of submitting ethics complaints. *Int'l Data Bank, Ltd.*, 812 F.2d at 151 (quoting 18 U.S.C. § 1964(c)). As described previously, *supra* at Section I, the Complaint describes Plaintiff's alleged "injuries" in a conclusory and abstract fashion, such as: "Plaintiff was

---

of isolated events covering such a short period of time do not suffice to establish continuity. *See Lyon v. Campbell*, 28 F.3d 1210 (4th Cir. 1994) (*per curiam*) (no continuity where the "majority" of the predicate acts took place over the course of seven months, the "remaining predicate acts were sporadic at best," and there was only one set of victims). Nor does the Complaint adequately allege open-ended continuity. Plaintiff's allegations that the "pattern of racketeering" "continue through the present," Am. Compl. ¶¶ 2 & 82, is unsupported by any factual allegations and certainly none with the "specificity needed to show a 'distinct' threat of continuing racketeering activity." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (citation omitted). A mere three isolated events occurring over a period of less than seven months, allegedly perpetrated by CfA, and with only one purported victim do not amount to "a prolonged criminal endeavor," and thus fail to adequately allege open-ended continuity. *Menasco*, 886 F.2d at 684 (finding no continuity where the scheme took place over one year, was "narrowly directed towards a single fraudulent goal," "involved a limited purpose," "involved but one perpetrator" and "involved but one set of victims.").

injured in his business, property and reputation by Defendants' racketeering and tortious conduct," Am Compl. ¶ 4; *see also id.* ¶¶ 78-79, 84. These assertions are not entitled to a presumption of truth. *See Beck*, 848 F.3d at 270 (quoting *Iqbal*, 556 U.S. at 678). Moreover, injury to reputation is not a cognizable RICO injury. *See Hamm v. Rhone–Poulenc Rorer Pharm., Inc.,* 187 F.3d 941, 954 (8th Cir. 1999) ("Damage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c)."). Plaintiff has alleged no cognizable RICO injury "in his business or property." 18 U.S.C. § 1964(c).

The Complaint equally fails to allege proximate cause. In a RICO case, proximate cause requires the plaintiff to demonstrate a "'direct causal connection' between the predicate offense and the alleged harm." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 10-12 (2010). When "a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries." *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 493 (4th Cir. 2018) (emphasis in original) (finding no proximate cause in a RICO action) (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)). Proximate cause "turns on the *directness* of the resultant harm, not the *foreseeability* of that harm." *Slay's Restoration*, 884 F.3d at 493 (citing *Hemi Grp.*, 559 U.S. 1). "RICO causation requires a proximity of statutory violation and injury such that the injury is sequentially the direct result—generally at 'the first step' in the chain of causation." *Id.* at 494.

As noted above, Plaintiff does not allege how Defendants CfA's and Fusion GPS' alleged conduct – *i.e.*, "faxing" three ethics complaints to OCE and conspiring to fax these ethics complaints to OCE – could *directly* cause any injury to Plaintiff.[8] Assuming *arguendo* Plaintiff

---

[8] As Plaintiff has not alleged that Simpson played any role in any of the predicate acts, Plaintiff has likewise failed to plead that Simpson's conduct was the proximate cause of any harm.

had alleged that an ethics investigation caused his unspecified harm, he cannot plausibly allege that Defendant CfA's ethics complaints directly caused that alleged harm, because OCE advises that "*a submission of information does not automatically result in an investigation. The decision to begin an investigation (preliminary review) lies solely* with the OCE Board." OCE, https://oce.house.gov/contact-us/make-a-submission (last visited Dec. 30, 2019) (emphasis added). Consequently, submitting an ethics complaint does not trigger an investigation. Defendants had no say in whether OCE initiated an ethics investigation into Plaintiff. Therefore, any alleged harm to Plaintiff from an ethics investigation would have been the direct result of OCE's independent decision to investigate Plaintiff and *not* the alleged predicate act of faxing ethics complaints. By contrast, Defendants' alleged conduct (*i.e.*, the submission of the ethics complaints to OCE) was not "the first step" that "directly resulted" in any harm. *Slay's Restoration*, 884 F.3d at 494.

### D. THE COMPLAINT FAILS TO PLAUSIBLY PLEAD THAT DEFENDANTS "RECEIVED ANY INCOME" DERIVED FROM A PATTERN OF RACKETEERING ACTIVITY AS REQUIRED UNDER SECTION 1962(a).

Under Section 1962(a), Plaintiff must plausibly allege in part that Defendants "received any income derived, directly or indirectly, from a pattern of racketeering activity…." The allegation that "CfA engaged Fusion GPS as an 'independent contractor' in 2018 and paid Fusion GPS nearly $140,000 for unspecified 'research,'" Am. Compl. ¶ 13, does not establish that Fusion GPS (or any of the Defendants) "received income derived" from submitting the ethics complaints. Accordingly, the Complaint fails to state a claim for relief under § 1962(a).

### E. THE COMPLAINT FAILS TO PLAUSIBLY PLEAD THAT DEFENDANTS ACQUIRED OR MAINTAINED ANY INTEREST OR CONTROL OF AN ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY AS REQUIRED UNDER SECTION 1962(b).

"To state a cause of action under section 1962(b), Plaintiff must allege that Defendants, through a pattern of racketeering activity or collection of an unlawful debt, acquired an interest in or control of an enterprise." *Davis v. Hudgins*, 896 F. Supp. 561, 567 (E.D. Va. 1995), *aff'd,* 87 F.3d 1308 (4th Cir. 1996) (dismissing the § 1962(b) claim because the complaint failed to "allege that Defendants acquired an interest in any sort of enterprise."). The Complaint does not make any factual assertions showing that Defendants "acquir[ed] or maintain[ed]" any interest in or control of an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(b). Accordingly, the claim under Section 1962(b) fails.

## F. THE COMPLAINT FAILS TO PLAUSIBLY PLEAD A VIOLATION OF 1962(c) BECAUSE IT DOES NOT ALLEGE AN ENTERPRISE DISTINCT FROM DEFENDANTS OR THAT DEFENDANTS CONDUCTED THE AFFAIRS OF THE ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY.

A RICO claim under § 1962(c) must allege an "enterprise" that is "distinct from the persons alleged to have violated § 1962(c)." *Palmetto*, 117 F.3d at 148. Plaintiff has not done so here.

Section 1962(c) limits RICO liability to a "person employed by or associated with any enterprise." 18 U.S.C. § 1962(c). An "enterprise" is defined as an "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An "association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009). The "person" and the "enterprise" must be distinct. *Palmetto*, 117 F.3d at 148. "Thus, 'liability depends on showing that the defendants conducted or participated in the conduct of the *enterprise's affairs,* not just their *own* affairs." *Myers v. Lee*, No. 1:10CV131 AJTJFA, 2010 WL 3745632, at *3 (E.D. Va. Sept. 21, 2010) (quoting *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993) (emphasis in the original)).

20

Here, Plaintiff alleges Defendants are coextensive with the enterprise and merely conducted their own affairs: "Defendants are persons associated in fact (a RICO enterprise)," Am. Compl. ¶ 2, thereby pleading himself out of court. *See Solomon v. Am. Web Loan*, No. 17-cv-145, 2019 WL 1320790, at *6 (E.D. Va. Mar. 22, 2019) ("[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name.") (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). The Complaint asserts "a complete overlap between the defendants, their alleged agents, and the enterprise," and makes no allegation "that the affairs of the enterprise are any different from the affairs of the defendants." *Myers v. Lee*, 2010 WL 3745632, at *4 (dismissing RICO complaint for failure to plead a RICO enterprise distinct from the defendants). The Complaint does not allege that the activities of the alleged enterprise (an association-in-fact comprised of Defendants) are "distinguishable from the normal day to day activities of these 'persons,' *i.e.*, Fusion GPS, Glenn Simpson, and CfA. *Myers v. Lee*, 2010 WL 3745632, at *5.

Additionally, the Complaint does not allege that "each RICO defendant conducted the affairs of an enterprise through a pattern of racketeering activity." *Palmetto*, 117 F.3d at 148 (reversing judgment under 1962(c) because there was no evidence that the conduct was "in the affairs" of the enterprise). For a person to be liable under § 1962(c), the person must have "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Here, Plaintiff alleges that the "enterprise" is the association of all three Defendants, but does not allege that all three Defendants comprising the enterprise were involved in each of the three predicate acts; thus, the Defendants could not have plausibly conducted the affairs of the enterprise in each of the three acts. To wit,

Plaintiff alleges that CfA "act[ed] in concert with Fusion GPS" only as to the first ethics complaint, Am. Compl. ¶ 55, and Plaintiff does not allege that Simpson took part in any of the ethics complaints.

Accordingly, the Complaint fails to state a claim under § 1962(c).

## G.  THE COMPLAINT DOES NOT ADEQUATELY PLEAD PREDICATE ACTS.

The premise of the Complaint is absurd: that submitting ethics complaints to the OCE about a sitting congressman amounts to criminal conduct. That cannot be. Whereas only other members of Congress may make referrals to the US House of Representatives Committee on Ethics, Congress created the OCE as *the* place for the public, which includes CfA, to file an ethics complaint about a sitting member of Congress. *See supra* at 1 n.1.

### 1.  Plaintiff Fails to Plausibly Plead a Violation of Section 1503(a).

Plaintiff's allegation that Defendants have violated Section 1503(a) has no application here. Am. Compl. ¶¶ 2, 73, 77. Section 1503(a) applies to obstruction of "judicial proceedings," not congressional investigations. *United States v. Aguilar*, 515 U.S. 593, 599 (1995); *see* 18 U.S.C. § 1505 (interference with congressional proceedings). Moreover, to the extent the Complaint attempts to plead a violation of § 1505, Am. Compl. at 29 n.15, the filing of ethics complaints against the chair of a congressional committee is lawful and protected First Amendment activity, and thus cannot constitute a corrupt interference with *any* proceeding. *See United States v. Mitchell*, 877 F.2d 294, 299 (4th Cir. 1989) (Section 1505 requires intent to "corruptly influence a congressional investigation").[9] The Complaint does not plausibly allege that Defendants had the

---

[9] The third and final alleged ethics complaint could not have plausibly obstructed the congressional investigation because it was submitted on July 11, 2018, four months after Plaintiff announced "the Committee has finished its Russia investigation," on March 12, 2018. Press Release: Nunes statement on Russia Investigation, Mar. 12, 2018, https://republicans-intelligence.house.gov/news/documentsingle.aspx?DocumentID=873. Also, on April 6, 2017, Plaintiff announced he had recused himself from the investigation, well before CfA allegedly

requisite corrupt intent when they allegedly engaged in lawfully submitting ethics complaints.

### 2.   Plaintiff Fails to Plausibly Plead a Violation of §§ 1512(b)(1) or (b)(2).

The Complaint fails to plausibly allege the predicate acts of tampering with a witness, 18 U.S.C. § 1512(b)(1), (b)(2). "Section 1512(b)(1) makes it a crime to (1) knowingly (2) use intimidation, threats, or corrupt persuasion or engage in misleading conduct toward another (3) with the intent to influence, delay, or prevent the (4) testimony of that person in an official proceeding." *United States v. Edlind*, 887 F.3d 166, 172–73 (4th Cir. 2018).

The Complaint does not plead factual content that permits the reasonable inference that Defendants, in lawfully submitting ethics complaints to OCE, had the requisite intent to "influence, delay or prevent the testimony of any person in an official proceeding." 18 U.S.C. § 1512(b)(1). Plaintiff cannot plausibly allege that someone who uses the official and prescribed process for submitting ethics complaints has "knowingly" used intimidation or threats with the intent to influence testimony. Were the Court to find such allegations plausible, no member of the public could ever file an ethics complaint with OCE, which cannot be, as creating a route for public participation in the congressional ethics process was one of the House of Representatives' core purposes in creating OCE, *see supra* at 1 n.1.[10] The Complaint also fails to identify any testimony that Defendants allegedly sought to influence. Am. Compl. ¶ 74.

---

submitted any ethics complaints. *See* Nunes Statement on Russia Investigation (Apr. 6, 2017), https://intelligence.house.gov/news/documentsingle.aspx?DocumentID=775. It is not plausible that CfA could have submitted ethics complaints against a recused chairman with the intent of influencing the investigation's findings or recommendations, as the chairman's recusal indicates that he would play no role in such decisions.

[10] The process for submitting such complaints is set forth in the OCE rules. *See* OCE, Rules for the Conduct of Investigations, at 7, https://oce.house.gov/sites/congressionalethics.house.gov/files/OCE_Rules_Conduct_Investigations.pdf

As for section 1512(b)(2), it similarly requires in part that Defendants "knowingly use[d] intimidation, threaten[ed], or corruptly persuade[d] another person, or attempt[ed] to do so, or engage[d] in misleading conduct toward another person, with intent to" cause a person to withhold testimony or documents from an official proceeding; alter or destroy an object "with intent to impair the object's integrity or availability for use in an official proceeding"; "evade legal process summoning that person to appear as a witness" in an official proceeding; or "be absent from an official proceeding" to which the person was summoned. Plaintiff merely parrots the statute, Am. Compl. ¶ 74, but fails to allege any facts showing Defendants' intent to cause Plaintiff to withhold "one or more criminal referrals" *by submission of an ethics complaint* through the process created by OCE and the House of Representatives.

### 3.   Plaintiff Fails to Plausibly Plead a Violation of § 1512(d)(2)-(4).

The Complaint's claims of violations of § 1512(d)(2)-(4) likewise fail. *See* Am. Compl. ¶ 75. The purpose of Section 1512(d) is to "'reach thinly-veiled threats that create justifiable apprehension' in a witness." *United States v. Wilson*, 796 F.2d 55, 57 (4th Cir. 1986) (quoting 128 Cong. Rec. H8469 (daily ed. Oct. 1, 1982) (addressing the prior codification of the provision at § 1512(b)). Ethics complaints submitted to OCE are not "threats;" as Congress created OCE in part for the purpose of receiving such complaints. *See supra* at 1 n.1. The Complaint also fails to assert any facts showing that any of Defendants "intentionally harassed" Plaintiff, § 1512(d); that Plaintiff "justifiably reacted adversely" to the ethics complaints; that Plaintiff failed to take any action he otherwise would have taken in response to the ethics complaints; or that Defendants had the requisite intent to harass. *See United States v. Wilson*, 796 F.2d at 57 (finding that evidence of the defendant's threatening statements to witnesses sitting in the hallway outside of the courtroom and the witnesses' reactions was sufficient to sustain the verdict that defendant violated § 1512(d)).

Faxing an ethics complaint to OCE cannot plausibly amount to "intent to harass" a witness under § 1512(d).

### 4.  Plaintiff Fails to Plausibly Plead a Violation of § 1513(e).

The lawful submission of an ethics complaint cannot constitute a violation of Section 1513(e), because the statute requires that the defendant act "knowingly, with the intent to retaliate," and that the defendant's action be "harmful" to the victim, neither of which can be satisfied by the mere act of faxing an ethics complaint to OCE. *See United States v. Stoker*, 706 F.3d 643, 646 (5th Cir. 2013) (A violation of § 1513(e) requires proof that "(1) [the defendant] knowingly took an action with intent to retaliate; (2) [the defendant] harmed [the informant]; and (3) [the defendant's] retaliation was spawned by [the informant's] assistance to law enforcement.").

Plaintiff does not allege that he ever provided truthful information about a crime to law enforcement, or that Defendants had knowledge that Plaintiff provided such information, or that Defendants retaliated against Plaintiff *for providing* truthful information about a crime to law enforcement. *See* Am. Compl. ¶ 54. The Complaint does not and cannot allege any facts showing that Defendants' alleged "retaliation was spawned by [Nunes'] assistance to law enforcement," *Stoker*, 706 F.3d at 646, and that Defendants knowingly faxed the ethics complaints with the intent to retaliate against Plaintiff for providing to a law enforcement officer truthful information about a crime. *See United States v. Denham*, 663 F. Supp. 2d 561, 564-65 (E.D. Ky. 2009) ("The retaliatory intent must be *for* something, and the statute says the retaliation is *for* information provided to a law enforcement officer.") (emphasis in original). On that basis, the Complaint fails to allege a violation of § 1513(e).

### 5.  Plaintiff Fails to Plausibly Plead a Violation of § 1343.

To the extent Plaintiff alleges a predicate act of wire fraud, *see* Am. Compl. ¶ 2, 77, which is unclear because the Amended Complaint includes nothing more than a citation to the statute, and such "conclusory allegations fail to satisfy Fed. R. Civ. P. 9(b)'s requirement that averments of fraud be stated with particularity." *Menasco*, 886 F.2d at 684. The Complaint also makes no allegations of "(1) the existence of a scheme to defraud and (2) the fact that the defendant used or caused the use of wire communications in furtherance of that scheme," as required for a violation of Section 1343. *United States v. Taylor*, 942 F.3d 205, 213 (4th Cir. 2019).

### 6. Defendants' Alleged Criminal Conduct Constitutes Protected First Amendment Activity.

Defendants' alleged actions are protected by the First Amendment and thus cannot violate 18 U.S.C. §§ 1343, 1503, 1512, 1513. "Conduct alleged to amount to … one of the … somewhat elastic RICO predicate acts may turn out to be fully protected First Amendment activity, entitling the defendant to dismissal." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 264 (1994) (Souter, J. concurring). This is just such a case.

Here, the alleged conduct is the submission of ethics complaints about Plaintiff, a public official, Compl. ¶ 5, regarding the congressman's alleged leaks of private communications, his failure to disclose financial material as required by House rules, and his accepting an impermissible gift. *Id.* ¶¶ 53 & 55. These complaints constitute speech on a matter of public concern which is 'at the heart of the First Amendment's protection.'" *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011) (internal quotation marks and citations omitted). Defendants' alleged ethics complaints are protected speech about the character, conduct and qualifications of an elected official, and cannot amount to a violation of any of the statutes Plaintiff cites as predicate acts. *See also United States v. Cassidy*, 814 F. Supp. 2d 574, 583 (D. Md. 2011) (dismissing indictment for cyberstalking

because it was directed at protected speech: the Tweets and blog posts, "although in bad taste," concerned the character and qualifications of a well-known religious figure).

## H. PLAINTIFF FAILS TO PLAUSIBLY PLEAD A VIOLATION OF THE RICO CONSPIRACY PROVISION

"Section 1962(d) makes it unlawful for any person to conspire to violate the substantive RICO provisions." *Aggarwal v. Sikka*, No. 1:12-CV-60, 2012 WL 12870349, at *5 (E.D. Va. June 12, 2012). Plaintiff must allege "(1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant[s] knew of and agreed to the overall objective of the RICO offense." *United States v. Abed*, 203 F.3d 822 (4th Cir. 2000) (Table). Conclusory allegations that Fusion GPS or Simpson acted "in concert with" others, Compl. ¶ 51, do not plausibly show any specific agreement between two or more people to file ethics complaints (*i.e.,* the alleged substantive RICO offense), let alone an agreement to the overall objective of the alleged RICO offense. The Complaint fails to plead any agreement at all, and "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Field v. GMAC LLC*, 660 F. Supp. 2d 679, 688 (E.D. Va. 2008) (dismissing RICO conspiracy claim) (quoting *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir. 1990)).

Moreover, because Plaintiff has failed to adequately allege a violation of the RICO substantive provisions, 1962(a)-(c), Plaintiff's RICO conspiracy claim also fails. *See GE Inv.*, 247 F.3d 543, 551 n.2 ("Because the pleadings do not state a substantive RICO claim under § 1962(c), Plaintiffs' RICO conspiracy claim fails as well."). *See also Efron v. Embassy Suites (Puerto Rico), Inc.,* 223 F.3d 12, 21 (1st Cir. 2000) ("[I]f the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails") (cited in *GE Inv.*, 247 F.3d at 551 n.2); *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir.

2004) (affirming dismissal of RICO conspiracy claim where the complaint did not adequately allege a substantive violation of RICO).

## IV.     THE COMMON LAW CONSPIRACY CLAIM SHOULD BE DISMISSED

Because Plaintiff's RICO claims must be dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's common law conspiracy claim. 28 U.S.C. § 1367(c)(3). *See Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (A "court has discretion to dismiss or keep a case when it 'has dismissed all claims over which it has original jurisdiction.'").

Furthermore, Plaintiff fails to state a plausible claim for common law conspiracy. *"*A common law conspiracy exists under Virginia law where 'two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose, or some lawful purpose by a criminal or unlawful means.'" *Phoenix Renovation Corp. v. Rodriguez*, 461 F. Supp. 2d 411, 429 (E.D. Va. 2006) (quoting *Commercial Business Systems, Inc. v. Bellsouth Services, Inc.,* 453 S.E.2d 261, 267 (Va. 1995)), *aff'd,* 258 F. App'x 526 (4th Cir. 2007).

For many of the same reasons that Plaintiff's RICO claims fail, so too does his common law conspiracy claim. He has not plausibly alleged an agreement between any of Defendants, much less agreement to accomplish an unlawful purpose or a lawful purpose by unlawful means. Submitting the ethics complaints is both a lawful purpose and a lawful means. He also has not alleged any damage from the alleged conspiracy.

## CONCLUSION

For all of the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:  January 15, 2020

By: /s/ Kerry Brainard Verdi
Kerry Brainard Verdi
**Verdi & Ogletree PLLC**
1325 G St NW, Suite 500
Washington, DC 20005
Tel: (202) 449-7703
Fax: (202) 449-7701
kverdi@verdiogletree.com


Joshua A. Levy (*pro hac vice*)
Rachel Clattenburg (*pro hac vice*)
**Levy Firestone Muse LLP**
1401 K. St. NW, Ste. 600
Washington, D.C. 20005
jal@levyfirestone.com
Tel: 202-845-3215
Fax: 202-595-8253

*Counsel for Defendants*
*Fusion GPS and Glenn Simpson*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served through the Court's electronic filing system on January 15, 2020 to counsel of record.


/s/ Kerry Brainard Verdi
Kerry Brainard Verdi