IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| DEVIN G. NUNES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case 1:19-cv-1148-LO-TCB |
| | ) | |
| | ) | |
| FUSION GPS a/k/a BEAN, LLC | ) | |
| et al | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Plaintiff, Devin G. Nunes ("Nunes"), by counsel, respectfully submits this Memorandum in Opposition to the motions to dismiss filed by defendants, Fusion GPS a/k/a Bean, LLC ("Fusion") and Glenn Simpson [*ECF No. 25*] and Campaign for Accountability, Inc. ("CfA") [*ECF No. 28*].

## I.  INTRODUCTION

This is a case about active, coordinated and continuous corruption, fraud and obstruction of justice orchestrated by Fusion GPS against a United States Congressman. Plaintiff commenced this action in September 2019 to address Fusion's joint and systematic efforts to intimidate, harass, threaten, influence, interfere with, impede, and ultimately to derail Plaintiff's congressional investigation into Russian intermeddling in the 2016 U.S. Presidential Election.  In his amended complaint, Plaintiff alleges that the Defendants, acting in concert and with others, filed fraudulent and retaliatory "ethics"

complaints against Plaintiff and took other actions, including weaponizing the press (McClatchy), that were solely designed to harass and intimidate Plaintiff, to undermine his Russia investigation, and to protect Fusion, Simpson and others from criminal referrals. [*ECF No. 12 ("Amended Complaint"), ¶¶ 14, 63, 69, 77*]  The amended complaint describes in detail Fusion's ordinary and regular way of doing business, including the common pattern, practices, means and methods employed for years on its many victims. [*Id., ¶¶ 8, 54*].  Plaintiff asserts three (3) claims: violations of Title 18 U.S.C. § 1962(a-c) (RICO), RICO conspiracy in violation of Title 18 U.S.C. § 1962(d), and common law conspiracy.

In response to Plaintiff's amended complaint, the Defendants filed motions to dismiss.  The Defendants dispute that they are persons associated with a RICO enterprise; that their actions were/are part of an effort to obstruct justice; and that they conspired to injure Plaintiff and obstruct justice.  They seek to portray themselves as ordinary citizens trying to hold a member of Congress "accountable".

The matter is before the Court on Defendants' motions to dismiss.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and § 1332 (diversity).  For the reasons stated below, the Defendants' motions should be denied.

## II.  STANDARD OF REVIEW

Each of the Defendants moves to dismiss under Rules 12(b)(1), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

### A.  *Motion To Dismiss Under Rule 12(b)(1)*

A motion to dismiss pursuant to Rule 12(b)(1) tests a district court's subject matter jurisdiction.  Typically, the Court must accept as true all material factual

allegations in the complaint and construe the complaint in the plaintiff's favor. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).  But where a defendant challenges the factual basis for subject matter jurisdiction, "the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-348 (4th Cir. 2009).  "Unless the jurisdictional facts are intertwined with the facts central to the merits of the dispute," the district court may "go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings." *Id.* at 348.  "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

B.      *Motion To Dismiss Under Rule 12(b)(2)*

When, as here, "the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016); *id. Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009) (citation omitted).  In reviewing the matter, the Court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction. *Sneha Media & Entm't, LLC v. Associated Broad. Co. P LTD*, 911 F.3d 192, 196 (4th Cir. 2018); *New Wellington Fin. Corp. v. Flagship Resort Dev. Co.*, 416 F.3d 290, 294 (4th Cir. 2005) (citations and quotations omitted).  "If a plaintiff makes the

requisite showing, the defendant then bears the burden of presenting a 'compelling case,' that, for other reasons, the exercise of jurisdiction would be so unfair as to violate due process." *Reynolds Foil, Inc. v. Pai*, 2010 WL 1225620, at * 1 (E.D. Va. 2010) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)).

**C.**      ***Motion To Dismiss Under Rule 12(b)(6)***

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Instead, a plaintiff must assert facts that rise above speculation and conceivability to those stating a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

### III. <u>DISCUSSION</u>

**A.** <u>*The Plaintiff Has Standing To Sue*</u>

In order to bring suit in federal court in the United States of America, "[l]itigants must have a sufficient personal interest in the outcome of the litigation in order to establish standing pursuant to Article III of the Constitution." *Allen, Allen, Allen & Allen v. Williams*, 254 F.Supp.2d 614, 623 (E.D. Va. 2003) (cited in *Government of Dominican Republic v. AES Corp.*, 466 F.Supp.2d 680, 687 (E.D. Va. 2006)).

In paragraphs 4, 77, 79, 84 and 88 of his amended complaint, Plaintiff alleges "(1) an injury in fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision." *Carroll v. Washington Gas Light Fed. Credit Union*, 2018 WL 2933412, at * 2 (E.D. Va. 2018) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)). The injury or threat of injury to Plaintiff from the filing of the "ethics" complaints and utilization of the press (McClatchy) as a weapon actually exists. It is real. As a member of Congress, Plaintiff faces a substantial risk that harm will occur from the ethics investigations caused by Defendants. *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2341 (2024) (regarding the injury-in-fact prong, "[a]n allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.") (internal quotations omitted). The injury to Plaintiff's reputation from the false and defamatory statements in the "ethics" complaints obviously affords standing to pursue a claim of common law conspiracy. This Court can offer monetary damages and injunctive

relief, remedies that will compensate the Plaintiff for his losses and prevent wrongdoing in the future. [*Amended Complaint, ¶¶ 4, Relief Requested*].

This case is analogous to *Allen, Allen, Allen & Allen v. Williams*.  In *Allen*, the defendant argued that the plaintiff had not suffered an actual or threatened injury-in-fact sufficient to establish standing because "because SCOLA and Bar Council's opinions are 'advisory' and because the Bar has not initiated formal disciplinary proceedings to enforce or attempt to enforce Rule 7.1 as it is interpreted in those opinions."  254 F.Supp.2d at 623.  The District Court rejected defendant's argument.  The Court found that:

> "the threat of disciplinary action against the Allens is not remote.  The Allens have taken action that the Bar Counsel and a disciplinary committee may find violates the Virginia Rules of Professional Conduct based on the interpretation of those Rules in the advisory opinions of SCOLA and the Council, even though those opinions do not have binding legal effect.  Moreover, the opinions specifically and directly target the Allens' advertising.  The Allens do not claim an injury because of an opinion addressing conduct that they might, at some point in the future, wish to take."

*Id.* at 624.  Plaintiff was and is subject to the ethical rules promulgated by the United States House of Representatives and enforced by the Committee on Ethics. [https://ethics.house.gov/about].  Plaintiff alleges a concrete threat of prosecution, threats to influence, intimidate or impede Plaintiff in the discharge of his duty as Chairman of the House Intelligence Committee in violation of 18 U.S.C. § 1503(a), and intentional harassment that hindered Plaintiff from making criminal referrals to the Department of Justice ("DOJ").

Viewing the facts in the light most favorable to Plaintiff, Defendants' motions to dismiss under Rule 12(b)(1) should be denied.

**B.**     ___*Defendants Are Subject To Personal Jurisdiction In Virginia*___

Created in 1977, the House Permanent Select Committee on Intelligence (the "House Intelligence Committee") oversees the nation's intelligence agencies, including components of the Departments of Defense, Homeland Security, Justice, State, Treasury and Energy.   Consistent with its mission and jurisdiction, the House Intelligence Committee has the authority and power, *inter alia*, to conduct investigations, issue subpoenas for the production of memoranda, documents and records or other material, to compel testimony from witnesses, and to make criminals referrals to the DOJ. [https://republicans-intelligence.house.gov/uploadedfiles/hpsci_rules_of_procedure_-_115th_congress.pdf; https://www.govinfo.gov/content/pkg/HMAN-115/pdf/HMAN-115.pdf].  Plaintiff serves as Ranking Member of the House Intelligence Committee.  He served as Committee Chairman in 2018.   As a member of the House Intelligence Committee, Plaintiff participates in oversight of the U.S. national security apparatus, including the intelligence-related activities of seventeen agencies, departments, and other elements of the United States Government, most of which are located in Virginia within the Alexandria Division.  On March 1, 2017, the House Intelligence Committee approved a bipartisan "Scope of Investigation" to guide the Committee in its investigation into the Russian active measures campaign that targeted the 2016 U.S. Presidential Election. Plaintiff confirmed that the "Intelligence Committee has been investigating Russia for years and warning about the Putin regime's hostile international actions, its aggression in cyber space, and its influential international propaganda campaigns.  The committee is determined to continue and expand its inquiries into these areas, including Russian activities related to the 2016 U.S. elections.   On a bipartisan basis, we will fully

investigate all the evidence we collect and follow that evidence wherever it leads." [*Amended Complaint, ¶¶ 5, 6, 7*].

Fusion operates a for-profit political war room that specializes in dirty tricks and smears.  As a regular way of doing business, it smears the opposition on behalf of its undisclosed clients, including clients, agents and donors located in Virginia.  As disclosed and admitted in Simpson's new book, *Crime in Progress*, one of Fusion's main targets since 2018 has been Plaintiff.  Plaintiff alleges that Fusion as an "astroturfer" used CfA and other agents in Virginia, including Elizabeth "Liz" Mair ("Mair"), to create an impression of widespread grassroots support for Fusion's false narratives, where no such support actually existed.  Plaintiff asserts that Fusion uses multiple "cut-outs", such as CfA and Mair, to mislead the public into believing that its positions on behalf of clients are correct and/or commonly held.  In his complaint, Plaintiff states that Defendants reside, are found, have agents, and transact affairs in Virginia.  Plaintiff identifies numerous key witnesses to the Defendants' corrupt business practices – including former FBI director, James Comey ("Comey"), Andrew McCabe ("McCabe"), Bruce Ohr, and Fusion GPS contractor, Nellie Ohr – who reside in Virginia. [*Amended Complaint, ¶¶ 8, 19, 62, 77*].

The parties agree that Plaintiff need only make a prima facie showing of personal jurisdiction.  When the complaint is viewed in the light most favorable to the Plaintiff, with the most favorable inferences drawn in favor of the existence of jurisdiction, it is clear that Plaintiff has made a prima facie showing of personal jurisdiction.  The Defendants' motion under Rule 12(b)(2) should be denied for two (2) reasons:

1.      *__Personal Jurisdiction Under RICO__*

Title 18 U.S.C. § 1965(a) provides that "any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." The statute also authorizes service of process in any judicial district in which the defendant resides, is found, has an agent, or transacts his affairs.  The Fourth Circuit has determined that § 1965(d) authorizes nationwide service of process and, thus, the exercise of personal jurisdiction in any district court. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997) (cited in *D'Addario v. Geller*, 264 F.Supp.2d 367, 387 (E.D. Va. 2003) ("As there is no evidence in the record suggesting extreme inconvenience or unfairness in litigating in this forum, *in personam* jurisdiction comports with due process in this case."); *Hengle v. Curry*, 2018 WL 3016289, at * 9 (E.D. Va. 2018) ("there is no evidence that any defendant would suffer extreme inconvenience or unfairness from litigating in the Newport News Division.  Defendants have conducted their business in connection with the underlying dispute in states like Oklahoma, Delaware, and New York.  Even if there would be some inconvenience in having to defend the action in Virginia instead of one of those states, 'it is not so extreme as to defeat the exercise of personal jurisdiction pursuant to valid service of process, although it may certainly factor into a transfer decision'").

Because Fusion, Simpson and CfA's respective personal jurisdiction challenges necessarily rely on the Court dismissing Plaintiff's RICO claims, such challenges must also fail. *See, e.g., Henle v. Asner*, 2020 WL 113496, at * 51 (E.D. Va. 2020).

2.    *__Conspiracy Theory Of Jurisdiction__*

Virginia recognizes that the in-state acts of co-conspirators – in this case Mair – are sufficient to confer personal jurisdiction over out-of-state confederates. *See, e.g., B2Gold Corp. v. Christopher*, 2019 WL 4934969, at * 3 (E.D. Va. 2019) ("A co-conspirator is subject to jurisdiction in a forum where substantial acts in furtherance of the conspiracy were performed by any member of the conspiracy, if the co-conspirator knew or should have known that the acts would be performed in the forum state"); *St. Paul Fire and Marine Ins. Co. v. Hoskins*, 2011 WL 1897683, * 3 (W.D. Va. 2011) ("Under a conspiracy theory of personal jurisdiction, a conspirator not present in the forum state will, nevertheless, be adjudged to have had a personal presence in the forum State by means of adequate minimum contacts of the other conspirators") (quotation and citation omitted); *Verizon Online Services, Inc. v. Ralsky*, 203 F.Supp.2d 601, 622 (E.D. Va. 2002) (citing *Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & Brecher*, 635 F. Supp. 15, 18 (E.D. Pa. 1995) ("When co-conspirators have sufficient contacts with the forum, so that due process would not be violated, it is imputed against the 'foreign' co-conspirators who allege there is [sic] not sufficient contacts; co-conspirators are agents for each other.")); *Krantz v. Air Line Pilots*, 245 Va. 202, 427 S.E.2d 326 (1993) (entry of message on computer in New York with the knowledge that persons in Virginia would transmit negative comments about the plaintiff and thereby interfere with plaintiffs prospective employment, subject New York resident to personal jurisdiction in Virginia); *Nathan v. Takeda Pharmaceuticals America, Inc.*, 2011 WL 8947650, at * 13 (Fairfax Cir. 2011) ("In the instant case, Plaintiff has alleged a conspiracy between Flood, Smith, Venanzi, Savant, and Fouchie.  Accordingly, under the conspiracy theory of jurisdiction,

Flood and Smith could be subject to jurisdiction based on the acts of Venanzi, Savant or Fouchie that occurred in Virginia in furtherance of the conspiracy. The underlying torts of Plaintiff's conspiracy claim are defamation and tortious interference. Thus, if Savant, Venanzi, or Fouchie committed acts in furtherance of these torts in Virginia, jurisdiction could lie against Flood or Smith as co-conspirators"); *Massey Energy Co.*, 2005 WL 3476771 at * 4-5 ("At this stage, plaintiff need not prove the entire case but only make a 'prima facie' showing of the conspiracy. Once this prima facie showing of conspiracy is adequately alleged, and where co-conspirators have sufficient contacts with the forum, so that due process would not be violated, these contacts are imputed against the foreign co-conspirator.") (quotations and citations omitted); *North Fork Shenandoah, Inc. v. Bunning*, 7 Va. Cir. 327 (1986) (Warren Cir. 1986) (Whiting, J.) (California resident was subject to personal jurisdiction in Virginia, where plaintiff alleged a conspiracy between the defendants to breach an employment contract by acts of disloyalty in Virginia – non-resident, who had never set foot in state, was subject to personal jurisdiction because he "has acted in Virginia through [his] agent … a co-conspirator.").

In this case, Fusion and Simpson's conspiracy with Mair provides an additional ground for the exercise of personal jurisdiction. [*Amended Complaint.* ¶¶ *62, 63*].

**C.**     ***Plaintiff Has Stated Claims Upon Which Relief Can Be Granted***

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1969, imposes criminal and civil liability upon those who engage in certain "prohibited activities." 18 U.S.C. § 1962. The statute lists four (4) prohibited activities: (1) § 1962(a), using or investing income derived "from a pattern of racketeering activity" "to acquire an interest in or to operate an enterprise engaged in interstate commerce"; (2)

§ 1962(b), acquiring or maintaining "an interest in or control of such an enterprise" "through a pattern of racketeering activity"; (3) § 1962(c), a person "employed by or associated with such an enterprise, [who] conducts or participates in the conduct of its affairs 'through a pattern of racketeering activity'"; or (4) § 1962(d), conspiring to violate the first three subsections. *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232-233 (1989) (quoting § 1962). "RICO liability is reserved" for "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989)).

Fusion's clandestine political operations threaten to undermine the entire fabric of Government.  Fusion's creation of fake dossier's and its willingness to target members of Congress, weaponize the media, and obstruct justice is a special threat that cannot go unchecked.

> 1. *Enterprise*

In asserting a RICO claim, a plaintiff must "show an enterprise, which is defined as an ongoing organization, formal or in-formal, in which the various associates function as a continuing unit." *Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997).  An enterprise includes any individual, union, or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4).  The RICO enterprise must be distinct from the persons alleged to have violated RICO.  A RICO claim alleging that the defendant was both the "person" and "enterprise" will not survive. *See New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1163-1166 (4th Cir. 1994).  An association-in-fact enterprise "is simply a continuing unit that

functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009); *see also Solomon v. Am. Web Loan*, 2019 U.S. Dist. LEXIS 48420, at \*19 (E.D. Va. 2019).

Here, Plaintiff plausibly alleges the existence of an enterprise. Plaintiff alleges an association-in-fact enterprise that has continued to exist since well before 2018. [*Amended Complaint, ¶¶ 2, 23, 77, 78*]. The enterprise consists of a group of individuals that are not a legal entity. The common purpose of the enterprise is to enrich the enterprise by obstructing justice and damaging Plaintiff's professional reputation. The enterprise is distinct from Fusion, Simpson and CfA, the individuals alleged to have violated the RICO statute, because it is comprised of other individuals and entities, including Mair and McClatchy. The Court should find that Plaintiff has demonstrated the existence of a RICO enterprise.

## 2.    *Interstate Commerce*

Plaintiff must allege that the enterprise is engaged in interstate commerce or that the enterprise's activities affect interstate commerce. *See, e.g. United States v. Rone*, 598 F.2d 564, 573 (9th Cir. 1979) (stating that RICO requires that "the activity of the Enterprise, not each predicate act of racketeering, have an effect on interstate commerce" and that there must be "a nexus of the enterprise to interstate or foreign commerce"). The nexus between the enterprise and interstate commerce need only be minimal. *United States v. Robertson*, 514 U.S. 669, 672 (1995).

Plaintiff's complaint demonstrates that the activity of the enterprise has an effect on interstate commerce. There is a minimal nexus between the enterprise's activities and interstate commerce because the Internet and interstate wires were used to facilitate the enterprise's unlawful activities.

**3.**     *__Obstruction of Justice Is A Prohibited Activity__*

"Racketeering activity" means and includes, *inter alia*, an act which is indictable under Title 18 U.S.C. § 1503 (relating to obstruction of justice), 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant), and 18 U.S.C. § 1513 (relating to retaliating against a witness, victim, or an informant). 18 U.S.C. § 1961(1)(B).

Here, Plaintiff alleges that the Defendants engaged in acts of obstruction of justice in violation of Title 18 U.S.C. §§ 1503(a), 1512(b), 1512(d) and 1513(e).  The complaint details what Defendants' did, when they did it, and how each act violated each statute. Plaintiff has sufficiently alleged multiple predicate acts of obstruction of justice. [*Amended Complaint, ¶¶ 2, 73, 74,75, 76, 77*]; *compare D'Addario*, 264 F.Supp.2d at 389 ("Plaintiff further explains that the alleged obstruction of justice was very harmful to RMST because the misrepresentation to the court thwarted the court's administration of salvor rights and its ability to act as guardian to ensure the artifacts would be properly handled"); *Norris v. Norris*, 1990 WL 130470, at * 2 (4th Cir. 1990) ("Plaintiffs have alleged non-fraudulent predicate acts including attempted murder, criminal threats of violence, narcotics trafficking, obstruction of justice, and obstruction of a criminal investigation … some of which may involve a threat of continuing activity.  If plaintiffs are able to prove the claimed acts, there may be a 'pattern of racketeering activity.' Accordingly, plaintiffs' complaint is sufficient to survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6).  We express no view, however, as to whether this case can ultimately go to trial on the RICO claims.  If plaintiffs' allegations are found to be

insupportable, the case may yet be dismissed on summary judgment.  We hold only that the dismissal under Fed.R.Civ.P. 12(b)(6) is premature.") (citations omitted).

### 4.   *Pattern Of Racketeering Activity*

The Supreme Court of the United States fleshed out the definition of "pattern of racketeering activity" in *H.J., Inc.*  In essence, the Court found that the statutory definition of "pattern" requires two predicate acts as the minimum necessary condition to state a RICO claim. 492 U.S. at 236.  The Court observed that the legislative history of RICO indicates that Congress intended prosecutors or plaintiffs to prove that the racketeering predicates relate and "amount to or pose a threat of continued criminal activity." *Id.* at 238.  Thus, the Court found that RICO requires a plaintiff to allege continuity plus relationship to show a pattern of racketeering activity. *Id.* (citations omitted).

"Continuity" in criminal activity can be either "open-ended" or "closed-ended." Open-ended continuity can be demonstrated when past conduct, "by its nature projects into the future with a threat of repetition." *H.J., Inc.*, at 241 (citation omitted); [*see Amended Complaint, ¶ 78 ("Defendants' past misconduct, including aggressive smear campaigns undertaken against Halvorssen, Browder, Trump and Plaintiff, by its nature projects into the future with the threat of repetition.  Indeed, Fusion GPS was paid $3,300,000 in 2017 to continue the campaign against President Trump.")*].  A series of related predicate acts that occur over a "substantial" period time period may constitute closed-ended continuity.  There is no specific time period that must be established. Although time periods of less than two (2) years fail to provide the requisite period of time, *Menasco*, 886 F.2d at 684, a plaintiff may, as has been done in this case, properly

allege related predicate acts against other victims to establish a pattern of racketeering activity. *GE Inv.*, 247 F.3d at 550.

While noting that the specific facts of each case are critical, the Supreme Court in *H.J., Inc.*, provided two examples to illustrate when RICO continuity would definitely be established.  The first example involves a "hoodlum" selling "insurance" to store owners; the insurance payments each month would prevent the hoodlum from breaking their windows.  "Though the number of related predicates involved may be small, and they may occur close together in time, the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity." *Id.* at 241.  A second example of a case that meets the continuity test involves predicate acts and offenses that are integrated into an entity's regular business practices. *Id.* at 242-243.  In addition, the continuity requirement would be satisfied if the predicate acts were "a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO 'enterprise.'" *Id.* at 243 (footnote omitted).

The element of relatedness may be defined by looking at the pattern requirement found in Title X of the Organized Crime Control Act of 1970 ("OCCA"), of which RICO existed as Title IX. *H.J., Inc.*, 239-240.  Following Title X, to be "related" for RICO purposes, the predicate acts need to have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise [be] interrelated by distinguishing characteristics; the acts should not simply be 'isolated events.'" *Id.* at 240 (citation omitted).  In some circumstances, a plaintiff can allege related predicate acts

16

against other victims in order to establish a "pattern" of activity. *GE Inv.*, 247 F.3d at 548 (citing *Menasco*, 886 F.2d at 685 (recognizing that a RICO plaintiff could allege a pattern if the plaintiff alleged that other defendants had used similar schemes to defraud others)).

Viewing the facts at issue in the light most favorable to the Plaintiff, as the Court must at this stage, there is little question but that the complaint states a plausible case of both open-ended and closed-ended continuity.  The predicate acts alleged by Plaintiff meet the RICO "pattern of activity" relatedness test because they had a similar purpose – obstructing justice in violation of Federal law – and employed similar means and methods.  Here, there are multiple sets of victims, including Plaintiff, and a multi-year, ongoing time frame.  Here, there are multiple perpetrators, assuming multiple roles on behalf of Fusion and Simpson, the astroturfers.  Defendants' conduct evinces a "scope and persistence" that poses a special threat to Plaintiff and to the integrity of the House Intelligence Committee. *GE Inv*, 247 F.3d at 551 (citing *Menasco*, 886 F.2d at 694).  The facts demonstrate both that Defendants' obstruction of justice will occur indefinitely into the future (as in the "hoodlum" example given by the *H.J., Inc.* Court) and that the obstruction is Fusion and Simpson's regular way of doing business.  Given that there is a distinct threat of long-term racketeering activity inherent in the predicate acts, [*see Amended Complaint, ¶ 70*], Plaintiff has established open-ended continuity under RICO. *Compare CVLR Performance Horses, Inc. v. Wynne*, 2013 WL 2322180, at * 4 (4th Cir. 2013) ("at the time the Appellees' acts occurred, the conduct 'project[ed] into the future with a threat of repetition,' and there was no other indication that Wynne's conduct was to be limited to only the identified victims.  Thus, the victims' discovery of the Appellees' misconduct does not prevent CVLR from establishing open-ended

continuity"); *Navient Solutions, LLC v. Krohn & Moss, Ltd.*, 2018 WL 6790654, at * 7 (E.D. Va. 2018) ("Racketeering activities amount to or pose a threat of continued activity when a plaintiff shows 'continuity of racketeering activity, or its threat.'"  Plaintiff has established each requirement to show that Mr. Johnson has engaged in a pattern of racketeering activity in furtherance of the enterprise.").

### 5.    *Causation and Injury*

A private RICO plaintiff has standing under 18 U.S.C. § 1964(c) to bring suit if he can show damage to "business or property" proximately caused by the defendant's RICO violation. *Anza v. Ideal Steel Supply Corp.*, 126 S.Ct. 1991, 1994 (2006); *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 264 (4th Cir. 2001).  The Court's main focus in determining if proximate cause exists is to ascertain whether or not the alleged violation "led directly to the plaintiff's injuries." *Anza*, 126 S.Ct. at 1998.  The Court examines "whether the conduct has been so significant and important a cause that the defendant should be held responsible." *Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 336 (4th Cir. 1996) (citations omitted)).

As alleged in Plaintiff's complaint, Defendant's obstruction of justice directly caused injury to Plaintiff's business, property and professional reputation.  Viewed in the light most favorable to Plaintiff, Plaintiff's allegations are sufficient at this stage to allege a RICO injury.

### 6.    *Section 1962(a)*

To state a claim under § 1962(a), a plaintiff must allege that: (1) the Defendants derived income, directly or indirectly from a pattern of racketeering activity; and, (2) the income was used or invested, directly or indirectly, in the establishment or operation; (3)

of an enterprise; (4) which is engaged in or the activities of which affect interstate or foreign commerce. *Gibbs v. Stinson*, 2019 WL 4752792, at * 29 (E.D. Va. 2019) (citations omitted).

Reading his allegations favorably, Plaintiff readily meets his burden under Rule 12(b)(6). Plaintiff alleges that Defendants derived substantial income through a pattern of racketeering in which Fusion and Simpson were paid by CfA and others to "dirty up" Plaintiff. [*Amended Complaint, ¶¶ 2, 68, 69, 70*]. Defendants received millions in donations from third-parties, most of whom are undisclosed, and acted for a common purpose. [*Id., ¶ 12*]. Plaintiff plausibly alleges that this income was used in the operation of the enterprise, which, as demonstrated above, is engaged in interstate commerce. Because Plaintiff's allegations satisfy all prongs required to state a § 1962(a) claim, he meets his burden to state this RICO claim. As such, Count I pursuant to § 1962(a) survives Defendants' motions to dismiss.

### 7.    *Section 1962(b)*

To establish a violation of § 1962(b), a plaintiff must allege that: (1) the Defendants engaged in a pattern of racketeering activity; (2) in order to acquire or maintain, directly or indirectly; (3) any interest or control over an enterprise; (4) which is engaged in, or the activities of which affect interstate or foreign commerce. *Gibbs*, 2019 WL 4752792 at * 31.

Plaintiff's plausible, non-speculative, factual allegations related to Defendants' efforts to obstruct justice in 2018 and 2019 plainly support their claim that Defendants exerted substantial control over the alleged enterprise described above. Plaintiffs contend

that the Defendants continued to file fraudulent "ethics" complaints and publish throughout 2018 in order to maintain an interest in or control over the enterprise.

**8.**   *__Section 1962(c)__*

In order to properly state a claim under § 1962(c), a plaintiffs must establish (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Treads USA, LLC v. Boyd LP I*, 2010 WL 2711266, at * 4 (W.D. Va. 2010) (citing *Sedima, S.P.R.I. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)).

In *Reves v. Ernst & Young*, the Supreme Court of the United States adopted the "operation or management" test to determine whether someone has conducted the affairs of an enterprise. 507 U.S. 170, 179 (19930.  To be sure, "[a]n enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management," as well as third parties who are somehow "associated with" the enterprise and exert control over it. *Id.*, at 184.  However, to be liable under § 1962(c), an individual must be a "direct participant" in the affairs of the enterprise and not merely "acting in an advisory professional capacity (even if in a knowingly fraudulent way)." *Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*, 633 F.Supp.2d 214, 230 (E.D. Va. 2008).

Applying *Reves* to the instant case, and viewing the complaint in the most favorable light, Plaintiff has stated a plausible claim that the Defendants conducted the affairs of the alleged RICO enterprise through a pattern of racketeering activity.  Plaintiff satisfies the pleading requirements by alleging facts regarding the formation, nature and operation of the alleged enterprise.  The facts detailed in the complaint support the plausible inference that Fusion, Simpson and CfA did not merely participate in the

alleged enterprise through their ordinary business activity, but, at least in the case of Fusion and Simpson, helped to devise and structure an associated group of individuals and businesses whose purpose it was to smear Plaintiff and obstruct justice, including Plaintiff's congressional investigations.  The facts are sufficient to support the plausible inference that Fusion, Simpson and CfA were "associated with" the alleged enterprise as distinct persons.

### 9.     *Plaintiff States A Plausible Claim Under § 1962(d)*

"A conspiracy may exist even if a coconspirator does not agree to commit or facilitate each and every part of the substantive offense." *United States v. Salinas*, 522 U.S. 52, 63 (1997).  A  plaintiff need not allege that each defendant committed or agreed to commit predicate acts, but must allege that each defendant agreed to facilitate the unlawful activity.  "A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Id.* at 65.  A defendant may be a conspirator by the mere agreement to facilitate only some of the acts leading to the substantive offense. *Id.*

Plaintiff has alleged sufficient facts to support the plausible inference that Fusion, Simpson and CfA agreed to engage in a conspiracy together and, in the case of Fusion and Simpson, with other individuals and entities with knowledge that the objective of the conspiracy would be the obstruction of justice.   Plaintiff alleges multiple business arrangements between and among the Defendants and other individuals and entities in the alleged enterprise, including shared involvement and shared responsibility for dissemination of the fraudulent "ethics" charges.   Ultimately, these facts support the

inference that the Defendants "objectively manifested an agreement to participate directly or indirectly in the affairs of the enterprise" through a pattern of racketeering activity and "had knowledge of the essential nature of the plan" of the conspiracy. *Tillett v. United States*, 763 F.2d 628, 632 (4th Cir. 1985); *compare Treads USA*, 2010 WL 2711266 at * 6 ("the plaintiffs allege that CMFL, and other named defendants 'controlled VFI and Treads and engaged in racketeering activities for the purpose of defrauding the [p]laintiffs.' The use of the word 'controlled' indicates that the plaintiffs contend that CMFL and the others conducted and participated in the direction of the enterprises' affairs. Thus, on its face, it appears that the plaintiffs have alleged enough to assert a plausible RICO Act conspiracy claim").

### 10. *Plaintiff Adequately Alleges A Claim of Common Law Conspiracy*

In Virginia, a common law conspiracy consists of an agreement between two or more persons to accomplish, by some concerted action, an unlawful purpose or a lawful purpose by unlawful means. *Harrell v. Colonial Holdings, Inc.*, 2013 WL 550424, at * 7 (E.D. Va. 2013) ("The 'unlawful act' element requires that at least one member of the conspiracy commit an 'underlying tort.' … This can include the inducement of a breach of contract or defamation, as alleged in this case.") (citations omitted); *Ransome v. O'Bier*, 2017 WL 1437100, at * 4 (E.D. Va. 2017) ("In addition to alleging facts supporting a claim for defamation, Ransome also alleges that O'Bier, Sterrett, and Berman conspired to defame him, and that they used personal email accounts to coordinate and communicate their defamatory publications. The Court therefore denies the motion to dismiss Ransome's Count II common-law conspiracy claim as it relates to defamation."); *Massey Energy Co. v. United Mine Workers*, 2005 WL 3476771, at * 1

(Fairfax Cir. 2005) ("Plaintiffs allege that Defendants conspired to defame and defamed Plaintiffs with the purpose of injuring them in their trade, business, and profession. Plaintiffs allege that this was done via a defamatory television advertisement broadcast into West Virginia and Virginia, a defamatory press release, and subsequently published articles containing that press release.").

Count III of Plaintiff's amended complaint states all the requisite elements of a claim of common law conspiracy, including the identity of the participants, the object of the conspiracy (obstruction of justice and defamation), when the conspiracy was hatched, acts in furtherance of the joint scheme, and damages. [*Amended Complaint, ¶¶ 8, 14, 55, 62, 65, 77, 87*]; *Harrell*, 923 F.Supp.2d at 826 ("Even if the heightened standards of Rule 9(b) applied, the Court would find the allegations here to be sufficient.  Construed in Defendants' favor, the Counterclaim alleges that Plaintiffs purchased the Strawberry Hill Races Mark on May 24, 2012, and within one week formed an agreement to tortiously injure Defendants"); *T.G. Slater & Son, Inc. v. Donald P. and Patricia A. Brennan, LLC*, 385 F.2d 836, 845-846 (4th Cir. 2004) (complaint alleged that defendants "combined to terminate and interfere with the contractual relationship", and alleged that the parties to the conspiracy acted "together to complete the sale of the farm without paying Slater & Son a commission for the work it performed" and that this conduct was "intentional, purposeful and without lawful justification" resulting in "substantial monetary damages"); *Luckett v. Jennings*, 246 Va. 303, 307-308, 435 S.E.2d 400 (1993) (motion for judgment alleged numerous facts describing actions that defendant took to injure plaintiff in his business and where plaintiff "impliedly alleges that there was an injury").

Because Plaintiff plausibly alleges a claim of common law conspiracy, Defendants' motions to dismiss should be denied.

## **CONCLUSION**

Defendants suggest that their efforts to smear and sabotage a sitting member of Congress and interfere with his lawful oversight investigations and, in the case of Fusion and Simpson, their fraudulent efforts to influence a Presidential Election with a manufactured "dossier" are protected by the First Amendment.  This is nonsense.  This is the rot that is decaying the fabric of America society.  Fusion, Simpson and CfA are not engaged in "legitimate public criticism".  Fusion, Simpson and CfA have no right under the First Amendment to commit crimes of obstruction or to engage in defamation.  **To be clear, the United States Supreme Court has repeatedly and without exception held that libelous speech is not protected by the First Amendment**.  Simply put, there is "no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-350 (1974); *United States v. Alvarez*, 132 S. Ct. 2537, 2560 (2012) ("false factual statements possess no First Amendment value."); *Bose Corp. v. Consumers Union of the United States, Inc.*, 466 U.S. 485, 504 (1984) (same).

Fusion, Simpson and CfA will never stop.  They will continue with their smear campaigns and schemes and dirty tricks indefinitely.  Devin Nunes seeks a day in Court to hold them accountable for their misconduct.

For the reasons stated above and at the hearing on February 21, 2020, Plaintiff, Devin G. Nunes, respectfully requests the Court to deny Defendants' motions to dismiss and set this case for trial by jury.

DATED:        January 28, 2020


                        DEVIN G. NUNES


                        By:    */s/ Steven S. Biss*
                               Steven S. Biss (VSB # 32972)
                               300 West Main Street, Suite 102
                               Charlottesville, Virginia 22903
                               Telephone:    (804) 501-8272
                               Facsimile:    (202) 318-4098
                               Email:        **stevenbiss@earthlink.net**

                               *Counsel for the Plaintiff*



                        **CERTIFICATE OF SERVICE**

        I hereby certify that on January 28, 2020 a copy of the foregoing was filed

electronically using the Court's CM/ECF system, which will send notice of electronic

filing to counsel for the Defendant and all interested parties receiving notices via

CM/ECF.


                        By:    */s/ Steven S. Biss*
                               Steven S. Biss (VSB # 32972)
                               300 West Main Street, Suite 102
                               Charlottesville, Virginia 22903
                               Telephone:    (804) 501-8272
                               Facsimile:    (202) 318-4098
                               Email:        **stevenbiss@earthlink.net**

                               *Counsel for the Plaintiff*