**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

DEVIN G. NUNES

        Plaintiff,

   v.

FUSION GPS A/K/A BEAN LLC and GLENN
SIMPSON,

       Defendants.

Civil Case No. 1:19-cv-1148

**DEFENDANTS FUSION GPS'S AND GLENN SIMPSON'S MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................1

BACKGROUND ......................................................................................................3

ARGUMENT ..........................................................................................................8

I.      THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS .....8

    A.  Section 1964 Does Not Authorize Personal Jurisdiction Over Defendants Because Plaintiff's RICO Claims Are Not Colorable .............................................................8

    B.  The Court Lacks Specific Jurisdiction Over Defendants Because None of the Alleged Conduct Forming the Basis of the Case Took Place in Virginia ................10

    C.  The Court Lacks General Jurisdiction Over Defendants Because Fusion GPS Is Incorporated in Delaware with its Principal Place of Business in Washington, D.C., and Glenn Simpson Is a Domiciliary of Washington, D.C. ......................................1

II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER RICO ............................................................................................................12

    A.  LEGAL STANDARDS ....................................................................................12

    B.  THE COMPLAINT DOES NOT PLEAD FACTS PLAUSIBLY ESTABLISHING AN "ENTERPRISE" ......................................................................................14

      1.  The Complaint Fails to Plausibly Allege the Purpose, Relationships, and Longevity Required to Establish an Association-in-Fact Enterprise ......................................15

      2.  The Complaint Fails to Plausibly Allege That Defendants Acted on Behalf of a Distinct Enterprise ..........................................................................................17

    C.  THE COMPLAINT FAILS TO PLAUSIBLY PLEAD A VIOLATION OF RICO BY DEFENDANT SIMPSON BECAUSE IT DOES NOT ALLEGE THAT HE COMMITTED AT LEAST TWO PREDICATE ACTS ...........................................18

    D.  THE COMPLAINT FAILS TO PLEAD A PATTERN OF RACKETEERING ACTIVITY BY DEFENDANT FUSION GPS ...........................................................19

    E.  THE COMPLAINT FAILS TO PLAUSIBLY PLEAD EITHER A COGNIZABLE INJURY OR THAT SUCH INJURY WAS PROXIMATELY CAUSED BY THE ALLEGED RICO VIOLATION ..............................................................................23

    F.  THE COMPLAINT DOES NOT ADEQUATELY PLEAD PREDICATE ACTS ..25

      1.  Plaintiff Fails to Plausibly Plead a Violation of Section 1503(a) ........................26

      2.  Plaintiff Fails to Plausibly Plead a Violation of §§ 1512(b)(1) or (b)(2) ..............26

**3. Plaintiff Fails to Plausibly Plead a Violation of § 1512(d)(2)-(4)** ......................... 27

**4. Plaintiff Fails to Plausibly Plead a Violation of § 1513(e)** ................................... 27

**5. Plaintiff Fails to Plausibly Plead a Violation of § 1343** ........................................ 28

**G. PLAINTIFF FAILS TO PLAUSIBLY PLEAD A VIOLATION OF THE RICO CONSPIRACY PROVISION** ....................................................................................... 28

**III.   THE INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS CLAIM SHOULD BE DISMISSED** ........................................................................... 29

**IV.   THE COMMON LAW CONSPIRACY CLAIM SHOULD BE DISMISSED** ........ 30

**CONCLUSION** ................................................................................................................ 30

## TABLE OF AUTHORITIES

**CASES**

*Al-Abood ex rel. Al-Abood v. El-Shamari,*
   217 F.3d 225 (4th Cir. 2000) ...............................................................20

*Anza v. Ideal Steel Supply Corp.,*
   547 U.S. 451 (2006).............................................................................24

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).............................................................12, 13, 15, 18

*Bast v. Cohen, Dunn & Sinclair, PC,*
   59 F.3d 492 (4th Cir. 1995) ................................................................24

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)...........................................................2, 13, 22, 25

*Boyle v. United States,*
   556 U.S. 938 (2009)...........................................................14, 15, 16, 17

*Carroll v. Washington Gas Light Fed. Credit Union,*
   No. 1:17-CV-1201, 2018 WL 2933412 (E.D. Va. Apr. 4, 2018) .......13

*Chemical Leaman Tank Lines Inc. v. Aetna Cas. & Ins. Co.,*
   177 F.3d 210 (3d Cir. 1999).................................................................29

*Contreras v. Thor Norfolk Hotel, L.L.C.,*
   292 F. Supp. 2d 794 (E.D. Va. 2003) ................................................29

*D'Addario v. Geller,*
   264 F. Supp. 2d 367 (E.D. Va. 2003) ...............................................8, 9

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014).............................................................................11

*Efron v. Embassy Suites (Puerto Rico), Inc.,*
   223 F.3d 12 (1st Cir. 2000)..................................................................28

*ESAB Grp., Inc. v. Centricut, Inc.,*
   126 F.3d 617 (4th Cir. 1997) .............................................................8, 9

*Field v. GMAC LLC,*
   660 F. Supp. 2d 679 (E.D. Va. 2008) ................................................28

*Francis v. Giacomelli,*
   588 F.3d 186 (4th Cir. 2009) ..........................................................13, 25

*GE Inv. Private Placement Partners II v. Parker,*
   247 F.3d 543 (4th Cir. 2001) ..........................................................20, 28

*Gibbs v. Haynes Investments, LLC,*
   368 F. Supp. 3d 901 (E.D. Va. 2019) ...............................................6, 13

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
   564 U.S. 915 (2011)........................................................................10, 12

*Griffin v. Sevatec, Inc.*,
   No. 1:16-CV-630, 2016 WL 4527357 (E.D. Va. Aug. 29, 2016) ....................12

*Guidry v. Clare*,
   442 F. Supp. 2d 282 (E.D. Va. 2006) ...............................................................1

*Hamm v. Rhone–Poulenc Rorer Pharm., Inc.*,
   187 F.3d 941 (8th Cir. 1999) ..........................................................................23

*Hawkins v. i-TV Digitalis Tavkozlesi zrt.*,
   935 F.3d 211 (4th Cir. 2019) ............................................................................8

*Hecht v. Commerce Clearing House, Inc.*,
   897 F.2d 21 (2d Cir. 1990)..............................................................................29

*Hemi Grp., LLC v. City of New York, N.Y.*,
   559 U.S. 1 (2010)............................................................................................24

*Hirsch v. Johnson*,
   No. 1:14CV332 JCC/TRJ, 2014 WL 2916748 (E.D. Va. June 26, 2014)...........12

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989).........................................................................14, 21, 23

*Int'l Data Bank, Ltd. v. Zepkin*,
   812 F.2d 149 (4th Cir. 1987) .....................................................................20, 23

*KMLLC Media, LLC v. Telemetry, Inc.*,
   No. 1:15-cv-432, 2015 WL 6506308 (E.D. Va. Oct. 27, 2015) ..........................11

*Lyon v. Campbell*,
   28 F.3d 1210 (4th Cir. 1994) (*per curiam*) ..........................................................22

*Mktg. Prod. Mgmt., LLC v. Healthandbeautydirect.com, Inc.*,
   333 F. Supp. 2d 418 (D. Md. 2004)..................................................................21

*Menasco, Inc. v. Wasserman*,
   886 F.2d 681 (4th Cir. 1989) ..........................................................................22

*Myers v. Lee*,
   No. 10-cv-131, 2010 WL 3745632 (E.D. Va. Sept. 21, 2010) ....................17, 18

*Noble Sec. Inc. v. MIZ Eng'g, Ltd.*,
   611 F. Supp. 2d 513 (E.D. Va. 2009) .................................................................9

*Palmetto State Med. Ctr., Inc. v. Operation Lifeline*,
   117 F.3d 142 (4th Cir. 1997) .....................................................................14, 19

*Perdue Foods LLC v. BRF S.A.*,
   814 F.3d 185 (4th Cir. 2016) ..........................................................................10

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
   119 F.3d 935 (11th Cir. 1997) - .........................................................................9

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993).......................................................................................17

*Rojas v. Delta Airlines, Inc.*,
  __F. Supp. 3d ___, No. GJH-19-665,
  2019 WL 5893025 (D. Md. Nov. 12, 2019) ......................................................16, 18

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985)........................................................................................20

*Shanaghan v. Cahill*,
  58 F.3d 106 (4th Cir. 1995) ...........................................................................29

*Skillstorm, Inc. v. Elec. Data Sys., LLC*,
  666 F. Supp. 2d 610 (E.D. Va. 2009) .........................................................29, 30

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*,
  884 F.3d 489 (4th Cir. 2018) ..........................................................................24

*Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*,
  911 F.3d 192 (4th Cir. 2018) ..........................................................................10

*United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund
  v. Walgreen Co.*,
  719 F.3d 849 (7th Cir. 2013) ..........................................................................16

*United States v. Abed*,
  203 F.3d 822 (4th Cir. 2000) (Table).................................................................28

*United States v. Aguilar*,
  515 U.S. 593 (1995).......................................................................................26

*United States v. Brown*,
  742 F. App'x 742 (4th Cir. 2018) .....................................................................16

*United States v. Edlind*,
  887 F.3d 166 (4th Cir. 2018) ..........................................................................26

*United States v. Mitchell*,
  877 F.2d 294 (4th Cir. 1989) ..........................................................................26

*United States v. Pinson*,
  942 F.3d 205 (4th Cir. 2019) .....................................................................15, 16

*United States v. Stoker*,
  860 F.3d 152 (4th Cir. 2017) ..........................................................................27

*United States v. Taylor*,
  942 F.3d 205 (4th Cir. 2019) ..........................................................................28

*United States v. Turkette*,
  452 U.S. 576 (1981).................................................................................14, 15

*United States v. Wilson*,
  796 F.2d 55 (4th Cir. 1986) ............................................................................27

*Walters v. McMahen*,
  684 F.3d 435 (4th Cir. 2012) ..........................................................................12

*Whitney, Bradley & Brown, Inc. v. Kammermann*,

No. 01:09-CV-596, 2010 WL 2696648 (E.D. Va. July 7, 2010),
   *aff'd,* 436 F. App'x 257 (4th Cir. 2011)..............................................................21, 22

*Wood v. Maguire Auto., LLC,*
   508 F. App'x 65 (2d Cir. 2013) ........................................................................29

*Zaletel v. Prisma Labs, Inc.,*
   226 F. Supp. 3d 599 (E.D. Va. 2016) ...............................................................10

## STATUTES

18 U.S.C. § 1343...............................................................................................7, 27-28

18 U.S.C. § 1503....................................................................................................7, 26

18 U.S.C. § 1505..................................................................................................25, 26

18 U.S.C. § 1512.............................................................................................7, 26, 27

18 U.S.C. § 1513....................................................................................................7, 27

18 U.S.C. § 1962................................................................................................*passim*

18 U.S.C. § 1964................................................................................................*passim*

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(2), (b)(6) .........................................................................*passim*

Fed. R. Civ. P. 11 .....................................................................................................1

## INTRODUCTION

Congressman Devin Nunes has sought to harass his critics through meritless lawsuits.[1] This one is no exception. It is the third such complaint he has filed against Defendants Fusion GPS and Glenn Simpson, and the Court should dismiss it **with prejudice**.

By Order dated February 21, 2020, the Court dismissed the First Amended Complaint (Dkt. No. 12) and granted Plaintiff Devin Nunes leave to file a second amended complaint, but warned *sua sponte* that he should only so file, "if he can do so pursuant to Rule 11." Order (Dkt. No. 34). Plaintiff ignored that warning and filed a third complaint that does not cure the pleading deficiencies identified in either the Court's Order or the prior motions to dismiss (Dkt. Nos. 6, 26 & 29), and is so packed with irrelevant, frivolous and malicious allegations that it is impossible to decipher what conduct Plaintiff alleges is unlawful. The Court should therefore dismiss the Second Amended Complaint with prejudice and impose Rule 11 sanctions on Plaintiff and his counsel for having required Defendants to respond to a new complaint that fails to address the infirmities identified by the Court. *See* Fed. R. Civ. P. 11(c)(3) (authorizing the Court to impose sanctions on its own initiative). Plaintiff's "needlessly increas[ing] the cost of litigation" is an "improper purpose" for filing a pleading. Fed. R. Civ. P. 11(b)(1). *See also Guidry v. Clare,* 442 F. Supp. 2d 282, 289 (E.D. Va. 2006) ("Repeated filings [and] the outrageous nature of the claims made … are all appropriate indicators of an improper purpose.").

---

[1] *See, e.g.*, *Devin Nunes v. Twitter, Inc., et al.*, No. CL19001715-00 (Henrico, Va. Cir. Ct. filed Mar. 19, 2019) (alleging negligence, defamation, insulting words, seeking $250 million damages); *Devin Nunes v. McClatchy Co., et. al.*, No. CL 19000629-00 (Albemarle, Va. Cir. Ct. filed Apr. 8, 2019) (alleging defamation, conspiracy, seeking $150 million damages); *Devin Nunes Campaign Committee v. Michael J. Seeley, et al.*, No. 27966 (Tulare, Ca. Sup. Ct. filed Aug. 1, 2019) *dismissed*, Sep. 3, 2019) (alleging tortious interference and conspiracy, seeking unspecified damages), *Devin Nunes v. Ryan Lizza, et al.,* No. 5:19-cv-04064 (N.D. Iowa filed Sept. 30, 2019) (alleging defamation and conspiracy, seeking $75 million damages); *Devin Nunes v. Cable News Network*, Case No. 3:19-cv-00889 (E.D.Va., filed Dec. 3, 2019) (alleging defamation, conspiracy, and seeking over $450 million in damages).

In the Second Amended Complaint (Dkt. No. 35), Plaintiff recycles his absurd claim that criticism of him, a sitting Congressman, in the form of ethics complaints submitted to the Office of Congressional Ethics ("OCE") and a *McClatchy* news article, amounts to criminal racketeering activity, in violation of the Racketeering Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq*. Shoehorning these untimely defamation claims into an insufficiently pleaded RICO suit is an abuse of the statute and cannot succeed.

Plaintiff's Second Amended Complaint should be dismissed with prejudice because: (1) the Court lacks personal jurisdiction over the Defendants under the nationwide service of process provision, 18 U.S.C. § 1965, because the RICO claim is frivolous; and lacks specific or general personal jurisdiction over the defendants; and because (2) the Complaint fails to state a claim for relief under RICO, Fed. R. Civ. P. 12(b)(6).

This Court dismissed Plaintiff's First Amended Complaint for not meeting the requirements of Federal Rule of Civil Procedure 12(b)(6), as interpreted in *Bell Atlantic v. Twombley*, 550 U.S. 544, 550 (2007), *see* Dkt. No. 34 at 2, and the Second Amended Complaint ("Complaint") does not cure that fatal infirmity. In particular, the Complaint does not plausibly establish a RICO enterprise, that Defendant Simpson committed two or more predicate acts, as required to state a claim for a substantive RICO violation under 18 U.S.C. §§ 1962(c), or that Fusion GPS engaged in a "pattern of racketeering activity." The Complaint also does not allege any RICO injury or proximate cause. Because the RICO claim fails, the Court lacks supplemental jurisdiction over Plaintiff's tortious interference and common law conspiracy claims, which, in any event, are not adequately pleaded themselves. The Complaint is riddled with inaccurate statements about Defendants, but even assuming for purposes of this motion that they are true, as

the Court must when reviewing a Rule 12(b)(6) motion to dismiss, Plaintiff has failed to state a claim for relief.

## BACKGROUND

Plaintiff Devin Nunes has sued Defendants in Virginia, where none of the parties resides and where none of the alleged conduct took place. Plaintiff claims that the submission of ethics complaints to OCE about his unethical conduct and the publication of a news article about his unethical conduct obstructed justice, constituted wire fraud, and violated RICO because, at one point, Plaintiff served as the recused chair of a congressional committee investigating Defendant Fusion GPS and Defendant Glenn Simpson. Plaintiff does not allege that Defendant Simpson played a role in *any* of these ethics complaints. Further, Plaintiff alleges that three non-parties filed five ethics complaints about him with OCE, in Washington, D.C., without alleging that Defendant Fusion GPS was involved in any of them, but the very first one. Beyond the isolated act of Defendant Fusion GPS acting "in concert" with a non-party to file this one ethics complaint with OCE, the Complaint includes only one other incident, in which both Defendants allegedly "created a 'dossier' on Plaintiff, parts of which they used to create scandal and improperly interfere with and obstruct Plaintiff's investigation of Fusion GPS and Simpson," Sec. Am. Compl. (hereinafter "Compl.") ¶ 59, and allegedly "collaborated with *McClatchy* to publish a scandalous Fusion GPS 'dossier' about Plaintiff's involvement with a yacht, cocaine and prostitutes." *Id*. ¶ 60.

A lone incident alleged against Defendant Simpson does not a pattern make. Nor do two isolated incidents alleged against Defendant Fusion GPS, particularly when they occurred less than two years apart. For the most part, the Complaint includes multiple pages of allegations that do not relate to the alleged claims. This brief summarizes the few allegations that do.

### *The Congressional Investigation*

3

According to the Complaint, on March 1, 2017, the House Permanent Select Committee on Intelligence ("House Intelligence Committee" or "the Committee"), initiated "its investigation into the Russian active measures campaign that targeted the 2016 U.S. Presidential Election." Compl. ¶ 6. The Complaint claims that on "November 14, 2017, Simpson testified behind closed doors before the House Intelligence Committee." *Id.* ¶ 47. The Complaint then alleges the Committee released the transcript of Simpson's testimony on January 17, 2018, *see id.* ¶ 48, and that it was "immediately obvious to Representatives and reporters alike" that Simpson "lied in his testimony," *id.* ¶ 49, even though the Complaint cites to no contemporaneous statements to that effect, other than an obscure blog post from January 2018. *See id.*[2]

In a conclusory fashion, Plaintiff claims that "[f]earing a criminal referral for Simpson's false statements to the FBI and DOJ, for lying to Congress and the Senate, and for obstructing the House Intelligence Committee in its Russia investigation, the Defendants directly and aggressively retaliated against Plaintiff, employing the same or similar pattern, practices, means and methods as Fusion GPS and Simpson had employed multiple times in the past to smear the opposition." *Id.* ¶ 52.

### The Alleged Enterprise and the Alleged Predicate Acts

Plaintiff identifies the "enterprise" as "consisting of Fusion GPS, Simpson, CfA [the Campaign for Accountability], [Liz] Mair, McClatchy and other unnamed clients, officers, executives, and employees of Fusion GPS, CfA, Mair and McClatchy associated in fact" and that

---

[2] The Committee's March 22, 2018 investigation report did not find that either Simpson or Fusion GPS made any false statements or violated any laws. *See* House Permanent Subcommittee on Intelligence Majority Report, *Report on Russian Active Measures* (Mar. 22, 2018), *available at* https://republicans-intelligence.house.gov/uploadedfiles/final_russia_investigation_report.pdf.

the "persons involved in the enterprise associated for the common purpose of obstructing justice." Compl. ¶ 74.

The allegations of racketeering activity in the Complaint do not begin until Paragraph 54. Starting at that point, the Complaint alleges six unrelated acts, none of which is conducted through the affairs of the alleged "enterprise." *See* Compl. ¶¶ 54, 57, 59-61, 63, 64, 67. The Complaint alleges that the predicate acts occurred "[b]etween 2018 and the present," *id.* ¶ 3,[3] and alleges that Defendant Simpson was only involved in *one* of these, *see id.* ¶ 59, and that Defendant Fusion GPS was only involved in *two* of these, *see id.* ¶¶ 54 & 59-61. The other alleged predicate acts do not involve the Defendants and thus cannot form the basis for liability.

Specifically, as to Defendant Simpson, the Complaint alleges: "Fusion GPS and Simpson created a 'dossier' on Plaintiff, parts of which they used to create scandal and improperly interfere with and obstruct Plaintiff's investigation of Fusion GPS and Simpson," Compl. ¶ 59, and that "[i]n or before May 2018," Fusion GPS "approached *McClatchy*" and "collaborated with *McClatchy* to publish a scandalous Fusion GPS 'dossier' about Plaintiff's involvement with a yacht, cocaine and prostitutes." *Id.* ¶ 60. On May 23, 2018, *McClatchy* allegedly published an article about a winery partly owned by Plaintiff Nunes. *See id.* ¶ 61.

In addition, as to Defendant Fusion GPS, the Complaint alleges that CfA "acting in concert with Fusion GPS," faxed an ethics complaint about Plaintiff Nunes to OCE, on January 25, 2018. Compl. ¶ 54.

---

[3] The Complaint also alleges that "the obstruction launched in January 2018," Compl. ¶ 74, and, inconsistently, that "[b]etween 2017 and 2018, Fusion GPS and Simpson conducted the business of the enterprise (obstruction of justice), *id.* at ¶ 75. However, the Complaint only alleges predicate acts in 2018.

The Complaint does not allege that either of these acts—filing the ethics complaint and research for the *McClatchy* article—were conducted on behalf of the alleged "enterprise."

The Complaint fails to allege that Defendants Simpson or Fusion GPS played any role in the four other alleged predicate acts: (1) that CfA, acting *alone*, faxed a second ethics complaint to OCE, on March 1, 2018, *see* Compl. ¶ 57; (2) that American Democracy Legal Fund ("ADLF") filed an ethics complaint "based upon statements published on May 23, 2018 by McClatchy and Fusion GPS," but alleging no involvement by Defendants in the submission of the ethics complaint, *id.* ¶ 63; (3) that on July 11, 2018, CfA filed a third ethics complaint, with no alleged involvement of Defendants, *id.* ¶ 64; [4] and (4) that the Swamp Accountability Project, run by Liz Mair, filed an ethics complaint, but alleging no involvement by Defendants in the filing or creation of that ethics complaint, *see id.* ¶ 67.

### *Simpson's Book and the Department of Justice's Inspector General's Report*

Plaintiff includes lengthy excerpts from a book written by Defendant Simpson and his co-founder of Fusion GPS, Peter Fritsch, entitled *Crime in Progress: Inside the Steele Dossier and the Fusion GPS Investigation of Donald Trump*, describing Fusion GPS's 2018 research into

---

[4] The Complaint's allegations concerning Elizabeth Mair do not adequately allege any conduct by Fusion GPS in submitting an ethics complaint. *See* Compl. ¶ 67. The Complaint states that "Fusion GPS, upon information and belief, recruited additional bad actors, including political operative Elizabeth 'Liz' Mair ('Mair'), and encouraged and enticed them to participate in the coordinated attacks upon Plaintiff." *Id*. The Complaint claims that Mair's group, the Swamp Accountability Project, "filed an 'ethics' complaint against Plaintiff" on the same day that CfA filed its third ethics complaint. *Id.* The Complaint then alleges: "The organized and coordinated attacks on Plaintiff bear all the hallmarks of a Fusion GPS smear operation." *Id.* Those are not facts that "rise above speculation and conceivability to those that 'show' a claim" that Fusion GPS had any role in Mair's ethics complaint against Plaintiff that is "plausible on its face." *Gibbs*, 368 F. Supp. 3d at 927 (quoting *Iqbal*, 556 U.S. at 678–79).

Plaintiff Nunes. *See* Compl. ¶ 9. But Plaintiff does not allege that these excerpts form the basis of any alleged predicate act.

Plaintiff also includes a purported summary of the Department of Justice's Inspector General's Report, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* ("IG Report"). *See id.* ¶¶ 10 & 11. But Plaintiff does not allege that the IG Report – or any of the IG's findings – is a predicate act. *See id.*

### Allegations Concerning Fusion GPS's "Regular Way of Doing Business"

The Complaint includes 21 paragraphs concerning Fusion GPS's alleged "regular way of doing business," Compl. § IV.A & ¶¶ 17-38. The first ten are drawn from allegations in a civil RICO case filed in the U.S. District Court for the Eastern District of New York, that was dismissed with prejudice. *Halvorssen v. Simpson*, 328 F.R.D. 30 (E.D.N.Y. 2018). The Second Circuit affirmed that dismissal. *Halvorssen v. Simpson*, ___ Fed. App'x ___, No. 19-3068-CV, 2020 WL 1287789 (2d Cir. Mar. 18, 2020) (summary order). None of the allegations in these 21 paragraphs pertain to the alleged racketeering activity because they all pre-date the alleged predicate acts that the Complaint claims occurred "[b]etween 2018 and the present."

### Plaintiff's RICO, Common Law Conspiracy and Tortious Interference Claims

Plaintiff claims that Defendants Fusion GPS and Simpson violated RICO, 18 U.S.C. § 1962(c) & (d). In Count I, Plaintiff alleges that Defendants violated RICO § 1962(c), through a pattern of racketeering activity comprised of the following alleged predicate acts: violations of Title 18 U.S.C. §§ 1503(a), 1512(b)(1) & (b)(2), 1513(e), and 1343, and that these predicate acts constituted a "pattern of racketeering," Compl. ¶¶ 75-76, that "injured [Plaintiff] in his business" *id.* ¶ 77, and "injured Plaintiff's standing among colleagues and contituents, as reflected in the results of the 2018 congressional election." *Id.* In Count II, Plaintiff alleges that Defendants

violated the RICO conspiracy provision, 18 U.S.C. § 1962(d). In Count III, Plaintiff seeks injunctive relief pursuant to 18 U.S.C. § 1964(a). In Count IV, Plaintiff alleges a claim of tortious interference. In Count V, Plaintiff alleges common law conspiracy. For the reasons discussed below, each of these counts must be dismissed with prejudice.

## ARGUMENT

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

The Complaint fails to establish personal jurisdiction over either Defendant Fusion GPS or Simpson. "To enter a judgment that adjudicates the rights of a party, a federal court must have personal jurisdiction over that party." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 228 (4th Cir. 2019).

The Complaint alleges that (1) 18 U.S.C. § 1965(d), which permits nationwide service of process, authorizes the exercise of personal jurisdiction over Simpson and Fusion GPS, pursuant to Federal Rule of Civil Procedure 4(k)(1)(C),[5] and (2) that "Fusion and GPS [sic] are subject to general jurisdiction and specific jurisdiction in Virginia." Compl. ¶ 14.

### A.   Section 1964 Does Not Authorize Personal Jurisdiction over Defendants Because Plaintiff's RICO Claims Are Not Colorable.

The nationwide service of process provision in § 1965 does not apply here because Plaintiff's RICO claims are "not colorable, *i.e.*, [they are] implausible, insubstantial, or frivolous." *D'Addario v. Geller*, 264 F. Supp. 2d 367, 388 (E.D. Va. 2003) (citing cases). Indeed, because the Complaint is "wholly insubstantial and immaterial," *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997), Plaintiff cannot take advantage of nationwide service of process under § 1965. In *D'Addario*, the court found it had personal jurisdiction under § 1965 because the

---

[5] That Rule provides: "Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant … when authorized by a federal statute." Fed. R. Civ. P. 4(k)(1)(C).

complaint made a "colorable" RICO claim in that it pleaded the elements of a RICO claim –

namely, "1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity … (5) he

was injured in his business or property (6) by reason of the RICO violation." 264 F. Supp. 2d at

388 (internal quotation marks and citation omitted).

By contrast, and as set forth *infra*, here Plaintiff fails to plead the elements of a RICO

violation, and thus has not pleaded a "colorable" claim. *Id.* "A plaintiff must plead all the elements

of a violation under 18 U.S.C. § 1962 in order to state a civil claim under 1964(c)," *Noble Sec.,*

*Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 550 (E.D. Va. 2009) (holding that the plaintiff had

sufficiently pleaded all of the elements of § 1962 such that the plaintiff could take advantage of

the nationwide service of process provision), and Plaintiff Nunes has not done that here.

Plaintiff has not alleged a RICO "enterprise," two or more predicate acts by Defendant

Simpson, or that Defendant Fusion GPS committed two or more related and continuous predicate

acts on behalf of an enterprise. The Complaint does not allege a cognizable injury, or that any such

injury was proximately caused by Defendant's alleged racketeering activity. Additionally, the very

premise of this claim – that the use of a lawful process created by Congress for the public to submit

complaints about the ethical conduct *vel non* of its Members, and providing research for a news

article about a Congressman, are predicate acts for a RICO violation– is precisely the kind of

"implausible, insubstantial, or frivolous" complaint that defeats nationwide service of process.

*D'Addario*, 264 F. Supp. 2d at 388. Because Plaintiff's RICO claims are therefore "wholly

immaterial or insubstantial," *ESAB Grp., Inc.*, 126 F.3d at 629, he is not "entitled to take advantage

of the federal statute's nationwide service of process provision." *Republic of Panama v. BCCI*

*Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997) (stating that so long as the federal

claim is not "wholly immaterial or insubstantial," a plaintiff may rely on the federal statute's

nationwide service of process provision).

### B. The Court Lacks Specific Jurisdiction over Defendants Because None of the Alleged Conduct Forming the Basis of the Case Took Place in Virginia.

Specific jurisdiction is appropriate only where the defendant has "purposefully established

minimum contacts in the forum State," *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th

Cir. 2016), and where those "alleged contacts with the forum also constitute the asserted basis for

the suit." *Zaletel v. Prisma Labs, Inc.*, 226 F. Supp. 3d 599, 606 (E.D. Va. 2016). The basis of

Plaintiff's suit is third-party CfA's submission of an ethics complaint to the OCE, an office of the

US House of Representatives in the District of Columbia, *see* Compl. ¶¶ 54-55, and Defendants'

creation of a "dossier" about Plaintiff and *McClatchy*'s subsequent publication of an article, *id.*

¶ 59-60. Neither Defendant conducted any work concerning the challenged ethics complaints or

"dossier" in Virginia. Simpson Decl. ¶¶ 6 & 7. Therefore, this Court cannot exercise specific

jurisdiction over Defendants because Plaintiff does not allege that his suit "aris[es] out of or

relate[s] to the defendant[s'] contacts with the forum." *Goodyear Dunlop Tires Operations, S.A.

v. Brown*, 564 U.S. 915, 923–24 (2011) (alterations in original) (internal quotation marks and

citation omitted).

### C. The Court Lacks General Jurisdiction over Defendants Because Fusion GPS Is Incorporated in Delaware with its Principal Place of Business in Washington, D.C., and Glenn Simpson Is Domiciled in Washington, D.C.

In the absence of specific jurisdiction, Plaintiff must show "a State's *general* jurisdiction

over the defendant by demonstrating the defendant's continuous and systematic contact with the

State." *Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198 (4th Cir.

2018) (emphasis in original). A court "may assert general jurisdiction over foreign (sister-state or

foreign-country) corporations to hear any and all claims against them when their affiliations with

10

the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks and citations omitted). "[O]nly a limited set of affiliations with a forum will render a defendant amendable to all-purpose [or general] jurisdiction there." *KMLLC Media, LLC v. Telemetry, Inc.*, No. 1:15-cv-432, 2015 WL 6506308, at *4 (E.D. Va. Oct. 27, 2015) (quoting *Daimler AG,* 571 U.S. at 137) (alterations in original). For a corporation, "the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'" *Daimler AG*, 571 U.S. at 137 (citation omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear*, 564 U.S. at 924.

Defendant Fusion GPS is not "essentially at home" in Virginia because Virginia is not its place of incorporation or its principal place of business. *Daimler AG*, 571 U.S. at 127; *see, e.g.,* Compl. ¶ 7 (Plaintiff's description of Fusion GPS); *id.* ¶ 14 (conclusory statement that "Fusion and GPS are subject to general jurisdiction and specific jurisdiction in Virginia"). The Complaint alleges no contacts between Defendant Fusion GPS and Virginia. The Complaint merely alleges that "Fusion GPS and Simpson have agents and transact continuous and systematic business and affairs in Virginia," *id.*, without any factual support. The Complaint does not plead facts showing the "limited set of affiliations with a forum [that] will render a defendant amenable to all-purpose jurisdiction there," namely, place of incorporation and its principal place of business. *Daimler AG*, 571 U.S. at 137 (rejecting argument that a corporation is subject to general jurisdiction in any state where it "engages in a substantial, continuous, and systematic course of business"). In fact, Fusion GPS is incorporated in Delaware and its principal place of business is Washington, D.C. Simpson Decl. ¶ 5. Fusion GPS has no offices in Virginia. *Id.* Accordingly, general jurisdiction over Fusion GPS is improper. *See Daimler AG*, 571 U.S. at 139 (parent corporation that was not incorporated

11

in the forum state and did not have its principal place of business there was not subject to suit there on claims not related to its contacts with the state, even assuming that its subsidiary was "at home" in the state) (internal quotation marks and citation omitted).

General jurisdiction is also improper over Defendant Simpson, because he is domiciled in Washington, D.C. *See Goodyear*, 564 U.S. at 924; Simpson Decl. ¶ 2. The Complaint alleges no contacts whatsoever between Simpson and Virginia. *See* Compl. ¶ 8 (Plaintiff's description of Simpson). Simpson is not subject to personal jurisdiction in Virginia. *See Hirsch v. Johnson*, No. 1:14CV332 JCC/TRJ, 2014 WL 2916748, at *6 (E.D. Va. June 26, 2014) (court lacked general personal jurisdiction over defendant who was a resident of Arizona and had no continuous and systematic contacts with Virginia).

Accordingly, because the Court lacks personal jurisdiction over both Defendants Fusion GPS and Glenn Simpson, the suit against them should be dismissed under Rule 12(b)(2).

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER RICO

### A.  LEGAL STANDARDS

#### 1.  Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the "complaint must state a 'plausible claim for relief.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[6] "The determination whether a complaint adequately states a plausible claim is a 'context-specific task,'

---

[6] In reviewing a motion to dismiss under Rule 12(b)(6), "the court may consider 'matters of which a court may take judicial notice,' . . . such as 'matters of public record.' . . . The court can 'also consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Griffin v. Sevatec, Inc.*, No. 1:16-CV-630, 2016 WL 4527357, at *2 (E.D. Va. Aug. 29, 2016) (O'Grady, *J.*) (internal citations omitted).

[*Iqbal*, 556 U.S. at 679,] in which the factual allegations of the complaint must be examined to assess whether they are sufficient 'to raise a right to relief above the speculative level.'" *Walters v. McMahen*, 684 F.3d at 439 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Although a plaintiff's "well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff," *Gibbs v. Haynes Investments, LLC*, 368 F. Supp. 3d 901, 926–27 (E.D. Va. 2019) (internal citations and quotation marks omitted), this principle "applies only to factual allegations," *id.*, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

The complaint "must assert facts that rise above speculation and conceivability to those that 'show' a claim that is 'plausible on its face.'" *Gibbs*, 368 F. Supp. 3d at 927 (quoting *Iqbal*, 556 U.S. at 678–79). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gibbs*, 368 F. Supp. 3d at 927 (quoting *Iqbal*, 556 U.S. at 678).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include more than "mere labels and conclusions stating that the plaintiff is entitled to relief." *Carroll v. Washington Gas Light Fed. Credit Union*, 2018 WL 2933412, at *2 (O'Grady, J.) (dismissing complaint for failure to plausibly allege specifics to support standing). Significantly, the "requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him," but here Plaintiff's confusing complaint fails to give this notice to Defendants. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

## 2.   RICO, 18 U.S.C. § 1962(c)

RICO creates civil liability for "any person," "who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs 'through a pattern of racketeering activity, § 1962(c)." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232–33 (1989).

## B. THE COMPLAINT DOES NOT PLEAD FACTS PLAUSIBLY ESTABLISHING AN "ENTERPRISE"

The Complaint does not plausibly allege the existence of a distinct enterprise. "RICO makes it 'unlawful for any person employed by or *associated with any enterprise* engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.'" *Boyle v. United States*, 556 U.S. 938, 943–44 (2009) (quoting 18 U.S.C. § 1962(c)) (emphasis in original). The "existence of an enterprise is a separate element that must be proved," an "element distinct from the pattern of racketeering activity." *Id.* at 947. "[P]roof of one does not necessarily establish the other." *Id.* (internal quotation marks and citation omitted). The enterprise is proved "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). An enterprise is "an entity separate and apart from the pattern of activity in which it engages." *Id.* at 583. The "person" and the "enterprise" must be distinct. *Palmetto State Med. Center v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997).

The Complaint defines the "enterprise" as "consisting of Defendants, CfA, Mair, McClatchy and other unnamed clients, officers, executives, and employees of Defendant Fusion GPS, CfA, Mair and McClatchy." Compl. ¶ 74. The Complaint alleges:

> The persons involved in the enterprise associated for the common purpose of obstructing justice. The enterprise in this case has an ongoing organization with an ascertainable structure, and it functions as a continuing unit with separate roles and responsibilities. Fusion GPS and Simpson created the "dossier" to be used to facilitate the obstruction scheme. As an "astroturfer", Fusion GPS and Simpson

14

chose CfA, Mair and McClatchy as fronts or "cut-outs" to undertake the obstruction scheme. Fusion GPS and Simpson operated the enterprise and controlled the specific means and methods employed by the enterprise, the nature and timing of the obstruction launched in January 2018, and they pursued a common goal of intimidation and harassment.

*Id*. These allegations do not suffice to adequately allege a RICO enterprise.

### 1. The Complaint Fails to Plausibly Allege the Purpose, Relationships, and Longevity Required to Establish an Association-in-Fact Enterprise.

First, an "association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *United States v. Pinson*, 860 F.3d 152, 161 (4th Cir. 2017) (quoting *Boyle*, 556 U.S. at 946). The Complaint does not allege any facts showing that this unconnected group of individuals and entities "function[s] as a continuing unit," *Turkette*, 452 U.S. at 583, with "a purpose." *Pinson*, 860 F.3d at 161. As instructed by the Supreme Court in *Iqbal*, 129 S. Ct. at 1950, the Court can identify pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth," such as Plaintiff's allegation that the "enterprise in this case has an ongoing organization with an ascertainable structure, and it functions as a continuing unit with separate roles and responsibilities." Compl. ¶ 74. Because the Complaint fails to plead facts showing that these entities and individuals function as a unit, they also cannot have a common purpose.

An association-in-fact enterprise "requires both interpersonal relationships and a common interest." *Boyle*, 556 U.S. at 946. Beyond conclusory allegations, the Complaint makes no allegations of the existence of either. The Complaint also fails to plead any facts showing any longevity of the alleged association between these various individuals and entities, but "an 'enterprise' must have some longevity, since the offense proscribed by that provision demands proof that the enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity.'" *Boyle*, 556 U.S. at 946. For instance,

the Complaint alleges that the first predicate act (CfA's submission of an ethics complaint to OCE) occurred on January 25, 2018, Compl. ¶ 54, but that Defendant Fusion GPS did not "approach[ ]" *McClatchy*—another purported member of the "enterprise"—until "in or before May 2018." *Id.* ¶ 60. The Complaint also fails to allege when Defendant Fusion GPS "recruited" Liz Mair, whom the Complaint alleges independently submitted an ethics complaint to OCE, on July 11, 2018. *Id.* ¶ 67. In sum, the Complaint alleges no facts demonstrating any interpersonal relationships between or among the various members of the claimed "enterprise" or that they all associated at any point, let alone for a sufficient duration to meet the longevity requirement.

The Complaint merely alleges that these five different individuals and entities engaged in independent, parallel conduct directed at Plaintiff Nunes. But "RICO does not penalize parallel, uncoordinated [predicate acts]." *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013) (RICO claim failed because the complaint did not sufficiently allege a distinct enterprise or that the defendants were conducting the enterprise's affairs) (citing *Boyle*, 556 U.S. at 947 n.4); *Pinson*, 860 F.3d at 162 (finding no RICO enterprise where the defendant was involved in four different business ventures and each venture involved different memberships, methods, and motives); *Rojas v. Delta Airlines, Inc.*, __ F. Supp. 3d ___, No. GJH-19-665, 2019 WL 5893025, at *7 (D. Md. Nov. 12, 2019) (the complaint's allegation that the defendants were aware of each other's unlawful conduct only showed that they were "engaged in consciously parallel conduct," which is not sufficient to establish an association-in-fact enterprise); *cf. United States v. Brown*, 742 F. App'x 742, 744 (4th Cir. 2018) (holding that the Wild Boys was a RICO enterprise, because it was a group with members who had long-term relationships, it was a record label, a rap group, and a street gang, and its members used hand signs, gang colors, and tattoos to identify themselves). As the Supreme

Court explained in *Boyle*, proof that individuals engaged in racketeering activity, "independently and without coordination," is not sufficient to establish "that the individuals were members of an enterprise." *Boyle*, 556 U.S. at 947 n.4. The Complaint pleads no more than that Defendants, CfA, Mair, and McClatchy each engaged in parallel conduct directed at Plaintiff and had no long-term relationships with each other. As such, the Complaint fails to plead a requisite RICO element.

**2. The Complaint Fails to Plausibly Allege That Defendants Acted on Behalf of a Distinct Enterprise.**

To successfully plead a RICO claim, the Complaint must also allege that "the defendants . . . have conducted or participated in the conduct of the *enterprise's affairs,* not just their *own* affairs." *Myers v. Lee*, No. 1:10CV131 AJTJFA, 2010 WL 3745632, at *3 (E.D. Va. Sept. 21, 2010) (dismissing RICO complaint for failure to plead a RICO enterprise distinct from the defendants) (quoting *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993) (emphasis in the original)).

The Complaint fails to establish a distinct enterprise because the alleged members of the enterprise—including Defendants—pursued their own affairs, not conduct on behalf of the purported enterprise. The Complaint alleges the following six acts, *none* of which involve all of the alleged individuals and entities that make up the purported "enterprise":  (1) that CfA, "acting in concert with Fusion GPS," but with no involvement of the other individuals who make up the alleged enterprise (Simpson, Mair, and *McClatchy*), faxed an ethics complaint on January 25, 2018, Compl. ¶ 54; (2) that CfA, acting *alone*, faxed a second ethics complaint on March 1, 2018, *see id*. ¶ 57; (3) that Fusion GPS and Simpson created a dossier and gave it to McClatchy, which published an article, but alleging no involvement of CfA or Mair, *id*. ¶¶ 59-61; (4) that ADLF filed an ethics complaint "based upon statements published on May 23, 2018 by McClatchy and Fusion GPS," but alleging no involvement by Simpson, Fusion GPS, McClatchy, CfA, or Mair in the filing of the ethics complaint, *id*. ¶ 63; (5) that on July 11, 2018, CfA filed a third ethics complaint,

with no alleged involvement of Simpson, Fusion GPS, McClatchy, or Mair, *id.* ¶ 64; (6) that Fusion

GPS recruited "additional bad actors, including … Liz Mair," who filed an ethics complaint, but

alleging no involvement by Simpson, Fusion GPS, CfA, or McClatchy in the filing of that ethics

complaint, *id.* ¶ 67. In other words, the Complaint does not allege any conduct (let alone a pattern

of racketeering activity) performed on behalf of a distinct enterprise.

The Complaint's conclusory allegation that "CfA, McClatchy, ADLF and Mair combined,

associated and agreed with Fusion GPS and Simpson to weaponize the media and ethics process

against Plaintiff in order to injure Plaintiff in his business as a United States Congressman," *id.*

¶ 69, does not remedy this failure to establish a RICO enterprise. *See Rojas*, __ F. Supp. 3d __,

No. GJH-19-665, 2019 WL 5893025, at *7 (holding that the complaint's "general allegation that

'a collective decision was made' by all Defendants … cannot properly establish a RICO enterprise"

because it was a conclusory allegation unsupported by specific allegations about how, when, or

where the agreement occurred). The Complaint does not allege that the activities of the alleged

enterprise (an association-in-fact comprised of the Defendants, CfA, McClatchy, Mair and

unidentified others) are "distinguishable from the normal day to day activities of these 'persons.'"

*Myers v. Lee*, 2010 WL 3745632, at *5.

Therefore, the Complaint fails to plead sufficient facts to permit an inference that the

Defendants were acting on behalf of a distinct enterprise that is "plausible on its face." *Iqbal,* 556

U.S. at 678.

## C. THE COMPLAINT FAILS TO PLAUSIBLY PLEAD A VIOLATION OF RICO BY DEFENDANT SIMPSON BECAUSE IT DOES NOT ALLEGE THAT HE COMMITTED AT LEAST TWO PREDICATE ACTS.

The Complaint does not allege two or more predicate acts by Defendant Glenn Simpson.

This failure dooms Plaintiff's claim against Defendant Simpson under RICO, pursuant to which

Plaintiff must adequately allege "at a minimum, [that] *each* RICO defendant committed two acts

of racketeering activity within a ten-year period." *Palmetto State Med. Ctr., Inc.*, 117 F.3d at 148 (emphasis added); 18 U.S.C. § 1961(5) (A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity").

The Complaint does not allege that Defendant Simpson was involved in any of the ethics complaints submitted to OCE concerning Plaintiff. Compl. ¶¶ 54-58; 63, 64, 67. The Complaint, in fact, fails to allege that Defendant Simpson played any role in any alleged predicate acts except for "creat[ing] a 'dossier' on Plaintiff." *Id*. ¶ 59.[7] In one abstruse sentence, Plaintiff alleges, "[a]s an 'astroturfer,' Fusion GPS and Simpson chose CfA, Mair and McClatchy as fronts or 'cut-outs' for the smear campaign." *Id*. ¶ 74. That is not a sufficient factual allegation to plausibly claim that Defendant Simpson committed a RICO predicate act. But even reading the Complaint in the light most favorable for the plaintiff, it includes at most one alleged predicate act in which Defendant Stimpon participated.

Having failed to plead at least two predicate acts by Defendant Simpson, the Complaint cannot plead that he engaged in a "pattern of racketeering activity," and thus, the analysis of the "pattern" requirement ends here. The RICO claims should be dismissed against Defendant Simpson.

## D. THE COMPLAINT FAILS TO PLAUSIBLY PLEAD A PATTERN OF RACKETEERING ACTIVITY BY DEFENDANT FUSION GPS.

---

[7] The Complaint does not clearly allege whether the "dossier" that Defendant Fusion GPS and Simpson "created," Compl. ¶ 59, is the same one that *McClatchy* "agreed to publish," *id.* at ¶ 60, because the Complaint merely alleges that Defendant Fusion GPS "collaborated with *McClatchy* to publish *a* scandalous Fusion GPS 'dossier.'" *Id.* (emphasis added).

The Complaint attempts to allege that Defendant Fusion GPS was involved in two predicate acts: filing the first ethics complaint and publication of the *McClatchy* article. Plaintiff alleges that "CfA, acting in concert with Fusion GPS, faxed an 'ethics' complaint against Plaintiff to the Office of Congressional Ethics," and does not specify what "acting in concert" means. Compl. ¶ 54. The Complaint also attempts to allege that Defendant Fusion GPS "collaborated with *McClatchy* to publish a scandalous Fusion GPS 'dossier' about Plaintiff's involvement with a yacht, cocaine, and prostitutes." Compl. ¶ 60. In addition to not pleading a RICO enterprise, Plaintiff fails to plead a "pattern of racketeering activity" by Fusion GPS.

A "pattern of racketeering activity" is a required element of all RICO claims. *H.J.*, 492 U.S. at 239; 18 U.S.C. § 1962(a)-(c). "'Racketeering activity' is defined as any of a number of predicate acts," *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000), including mail and wire fraud, obstruction of justice, and retaliation against an informant. To establish a pattern, "a minimum of two predicate acts is required," but "two acts alone do not necessarily establish a pattern." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985)).

The Complaint fails to plausibly plead that these two alleged predicate acts amount to a pattern of racketeering activity by Defendant Fusion GPS because it fails to plead facts showing that these isolated acts are related or continuous. *See Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 154 (4th Cir. 1987) (relatedness and continuity are required to show a pattern of racketeering activity). These alleged predicate acts cannot be related because Plaintiff has not alleged that they are related to the affairs of the enterprise, as required by the RICO statute. 18 U.S.C. § 1962(c) ("It shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, *in the conduct of such enterprise's affairs through a pattern*

*of racketeering activity*) (emphasis added). But Plaintiff, as discussed *supra* at Section II.B.2, has not pleaded a distinct enterprise that conducts its own affairs and instead has defined the enterprise as an association-in-fact of Fusion GPS, Simpson, CfA, *McClatchy*, Mair, and other unnamed individuals, each of which conducts affairs independent of the enterprise. *See* Compl. ¶ 74.  Neither of Fusion GPS's alleged predicate acts was allegedly conducted on behalf of an "enterprise;" instead, Plaintiff claims that CfA submitted the first ethics complaint "in concert with" Fusion GPS (and with no involvement of any of the other alleged associates of the enterprise), and that Fusion GPS "collaborated" with *McClatchy* in publication of the article (again with no involvement of the other alleged associates that comprise the "enterprise").

Moreover, the Complaint alleges the purpose of submitting the ethics complaint and creating the "dossier" at such a general level that it is meaningless and cannot support a finding of relatedness. *See, e.g.,* Compl. ¶¶ 55, 59; *Mktg. Prod. Mgmt., LLC v. Healthandbeautydirect.com, Inc.*, 333 F. Supp. 2d 418, 426 (D. Md. 2004) (cautioning that RICO elements should not be interpreted "at too high a 'level of generality'") (quoting *H.J.*, 592 U.S. at 236).  The alleged predicate acts also involve different participants: CfA and Fusion GPS for the ethics complaint, and Fusion GPS and *McClatchy* in publication of the article.  Plaintiff also fails to allege the "results" of either predicate act, let alone that they are related results.  Plaintiff alleges only one victim—himself—and "[i]n the Fourth Circuit, a limited number of victims may suffice to demonstrate that the conduct alleged does not rise to the level of conduct necessary to support a RICO recovery." *Whitney, Bradley & Brown, Inc. v. Kammermann*, No. 01:09-CV-596, 2010 WL 2696648, at *7 (E.D. Va. July 7, 2010), *aff'd,* 436 F. App'x 257 (4th Cir. 2011).  Accordingly, the Complaint's allegations about Defendant Fusion GPS do not show sufficient relatedness to the enterprise or horizontal relatedness of the purpose, participants, or results to constitute a "pattern."

21

The Complaint also fails to plead continuity. The Complaint does not assert facts showing close-ended continuity. It alleges acts that span a mere five months – *i.e.*, CfA filed an ethics complaint on January 25, 2018 and *McClatchy* published the article on May 23, 2018. *See* Compl. ¶¶ 54, 61. Allegations of isolated events covering such a short period of time do not suffice to establish continuity. *See Lyon v. Campbell*, 28 F.3d 1210 (4th Cir. 1994) (*per curiam*) (no continuity where the "majority" of the predicate acts took place over the course of seven months, the "remaining predicate acts were sporadic at best," and there was only one set of victims). Nor does the Complaint adequately allege open-ended continuity. Plaintiff's allegations that "Defendants continue to engage in related racketeering activity," Compl. ¶ 78, is unsupported by any factual allegations and certainly none with the "specificity needed to show a 'distinct' threat of continuing racketeering activity." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (citation omitted). "Courts have refused to find open ended continuity where the racketeering activity was not actually continuing when the court considered the defendant's motion to dismiss." *Whitney, Bradley & Brown, Inc.*, 2010 WL 2696648, at *4 (holding that there was no pattern of racketeering activity because Plaintiff could not establish that the activity was continuing when the Complaint was filed or that the activities continued to the present).

Plaintiff's claims that "Defendants' past misconduct, including aggressive smear campaigns undertaken against Halvorssen, Boyd, Browder, Trump and Plaintiff, by its nature projects into the future with the threat of repetition," Compl. ¶ 78, and that "Defendants' corrupt acts of racketeering are part of their regular way of doing business," *id.* (Concl.) are conclusory allegations not entitled to a presumption of truth. *See Twombly*, 550 U.S. at 555 (complaints must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). In addition, Plaintiff does not allege that the alleged predicate act of

submitting an ethics complaint is Defendant Fusion GPS's "regular way of conducting defendant's ongoing legitimate business," as is required to show the "threat of continuity." *H.J.*, 492 U.S. at 423.

As a result, the Complaint alleges (at most) just two unrelated, isolated predicate acts by Fusion GPS and none by Glenn Simpson, and thus the Complaint fails to state a plausible claim for relief under § 1962(c) against either Defendants Fusion GPS or Glenn Simpson.

## E. THE COMPLAINT FAILS TO PLAUSIBLY PLEAD EITHER A COGNIZABLE INJURY OR THAT SUCH INJURY WAS PROXIMATELY CAUSED BY THE ALLEGED RICO VIOLATION.

A RICO complaint must adequately allege that Plaintiff was "injured in his business or property by reason of a violation" of the statute. *Int'l Data Bank*, 812 F.2d at 151 (quoting 18 U.S.C. § 1964(c)).

Under the section of the Complaint entitled "Plaintiff's Injuries," Plaintiff claims that he "suffered injury in fact to his business as a United States Congressman," and that he has:

> incurred legal fees and administrative expenses, including costs to research, travel, consult, and publicly address the obstruction scheme and smear campaign promoted by the Defendants and their confederates. The sum of these out-of-pocket expenses paid by Plaintiff through his campaign is estimated, upon information and belief, to be not less than $25,000.00.

Compl. ¶ 70. Elsewhere, Plaintiff alleges that "[i]n addition to concrete out-of-pocket losses, Defendants' actions injured Plaintiff's standing among colleagues and constituents, as reflected in the results of the 2018 congressional election." *Id.* at ¶ 77.

Injury to reputation is not a cognizable RICO injury. *See Hamm v. Rhone–Poulenc Rorer Pharm., Inc.,* 187 F.3d 941, 954 (8th Cir. 1999) ("Damage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c)."). Moreover, pecuniary losses flowing from any alleged injury to Plaintiff's reputation do not amount to a cognizable RICO injury, because "allegations of personal injury and pecuniary

losses occurring therefrom are not sufficient to meet the statutory requirement of injury to 'business or property.'" *Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995) (affirming dismissal of the complaint and its "absurd" claim of a RICO violation, and awarding sanctions against the plaintiff) (internal quotation marks and citation omitted). Therefore, Plaintiff's alleged injury of out-of-pocket expenses to "address the obstruction scheme and smear campaign" are not cognizable RICO injuries because they amount to damages for his claimed injury to reputation and losses occurring therefrom. Plaintiff is left with the allegation that he "suffered injury in fact to his business as a United States Congressman," Compl. ¶ 70, but that conclusory allegation is insufficient to meet the pleading requirements. Therefore, Plaintiff has not alleged a cognizable RICO injury "in his business or property." 18 U.S.C. § 1964(c).

The Complaint equally fails to allege proximate cause. In a RICO case, proximate cause requires the plaintiff to demonstrate a "'direct causal connection' between the predicate offense and the alleged harm." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 10-12 (2010). When "a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries." *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 493 (4th Cir. 2018) (emphasis in original) (finding no proximate cause in a RICO action) (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)). Proximate cause "turns on the *directness* of the resultant harm, not the *foreseeability* of that harm." *Slay's Restoration*, 884 F.3d at 493 (citing *Hemi Grp.*, 559 U.S. 1). "RICO causation requires a proximity of statutory violation and injury such that the injury is sequentially the direct result—generally at 'the first step' in the chain of causation." *Id.* at 494.

*First*, Plaintiff does not allege how Defendant Fusion GPS's "acting in concert with" CfA in the faxing of an ethics complaint to OCE could *directly* cause any injury to Plaintiff. Assuming

*arguendo* Plaintiff had alleged that an ethics investigation caused his unspecified harm, he cannot plausibly allege that the submission of ethics complaints directly caused that alleged harm, because OCE advises that "*a submission of information does not automatically result in an investigation. The decision to begin an investigation (preliminary review) lies solely with the OCE Board.*" OCE, https://oce.house.gov/contact-us/make-a-submission (last visited Apr. 10, 2020) (emphasis added). Consequently, submitting an ethics complaint does not trigger an investigation. Therefore, any alleged harm to Plaintiff from an ethics investigation would have been the direct result of OCE's independent decision to investigate Plaintiff and *not* the alleged predicate act of faxing an ethics complaint. Importantly, Plaintiff does not allege that OCE engaged in racketeering activity.

Nor does Plaintiff allege how Defendants' creation of a "dossier" about Plaintiff that *McClatchy* subsequently published, Compl. ¶¶ 59-60, *directly* caused harm to Plaintiff in "his business as a United States Congressman." *Id.* at ¶ 70. The Complaint makes no factual assertions showing how the "dossier" and article *directly* caused any harm to "Plaintiff's business by interfering with and obstructing Plaintiff's Congressional investigations and duties." *Id*. ¶ 75.

## F.  THE COMPLAINT DOES NOT ADEQUATELY PLEAD PREDICATE ACTS.

The premise of the Complaint is absurd: that submitting ethics complaints to the OCE about a sitting congressman and providing research on a sitting congressman to a news outlet for publication amount to criminal conduct. That cannot be. Moreover, Plaintiff's allegations of violations of criminal statutes do not specify supporting facts, leaving Defendants and the Court to guess at how the Plaintiff claims criminal statutes apply to Defendants' alleged conduct of submitting an ethics Complaint and "collaborat[ing]" in the publication of an article. Compl. ¶¶ 75(a)-(e). As described *infra*, Plaintiff's "'naked assertions' of wrongdoing" do not have the necessary "'factual enhancement' . . . to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557).

**1.  Plaintiff Fails to Plausibly Plead a Violation of Section 1503(a).**

Plaintiff's allegation that Defendants have violated Section 1503(a) has no application here. Compl. ¶¶ 3, 75. Section 1503(a) applies to obstruction of "judicial proceedings," not congressional investigations. *United States v. Aguilar*, 515 U.S. 593, 599 (1995); *see* 18 U.S.C. § 1505 (interference with congressional proceedings).[8] Moreover, to the extent the Complaint attempts to plead a violation of § 1505, Compl. at ¶ 75(e), the filing of an ethics complaint against the chair of a congressional committee, and research on a sitting Congressman and "collaborat[ing]" to have it published, *id.* at ¶ 60, is not only lawful and protected First Amendment activity, but cannot constitute a *corrupt* interference with *any* proceeding. *See United States v. Mitchell*, 877 F.2d 294, 299 (4th Cir. 1989) (Section 1505 requires intent to "corruptly influence a congressional investigation").

**2.  Plaintiff Fails to Plausibly Plead a Violation of §§ 1512(b)(1) or (b)(2).**

The Complaint fails to plausibly allege the predicate acts of tampering with a witness, 18 U.S.C. § 1512(b)(1), (b)(2). The Complaint does not plead factual content that permits the reasonable inference that Defendant Fusion GPS, in lawfully submitting an ethics complaint to OCE, or Defendants Simpson and Fusion GPS, in lawfully researching Plaintiff and providing the research to McClatchy, had the requisite intent to "influence, delay or prevent the testimony of any person in an official proceeding." 18 U.S.C. § 1512(b)(1); *see also United States v. Edlind*, 887 F.3d 166, 172–73 (4th Cir. 2018) (listing elements of claim). As for section 1512(b)(2), Plaintiff merely parrots the statute, Compl. ¶ 75(b), but fails to allege any facts showing Defendants' intent

---

[8] Plaintiff has repeatedly failed to correct this error and at this point, he should be held to have pleaded only § 1503, and not § 1505. CfA, formerly a defendant in this case, alerted Plaintiff to this same error in CfA's motion to dismiss Plaintiff's original Complaint, *see* Mem. in Supp. of CfA's Mtn. to Dismiss (Dkt. No. 7) at 22. Defendants Fusion GPS and Simpson pointed out the same error in their Mem. in Supp. of Mtn. to Dismiss (Dkt. No. 26-1) at 22, and in their Reply Memorandum (Dkt. No. 32) at 14 n.4.

to cause Plaintiff to withhold "one or more criminal referrals" by submission of an ethics complaint through the process created by OCE or provision of research to *McClatchy*.

### 3.   Plaintiff Fails to Plausibly Plead a Violation of § 1512(d)(2)-(4).

The Complaint's claims of violations of § 1512(d)(2)-(4) likewise fail. *See* Compl. ¶ 75(c). The purpose of Section 1512(d) is to "'reach thinly-veiled threats that create justifiable apprehension' in a witness." *United States v. Wilson*, 796 F.2d 55, 57 (4th Cir. 1986) (quoting 128 Cong. Rec. H8469 (daily ed. Oct. 1, 1982) (addressing the prior codification of the provision at § 1512(b)). Neither ethics complaints submitted to OCE nor news articles are "threats." The Complaint also fails to assert any facts showing that any Defendant "intentionally harassed" Plaintiff, § 1512(d); that Plaintiff "justifiably reacted adversely" to the ethics complaints; that Plaintiff failed to take any action he otherwise would have taken in response to the ethics complaints; or that Defendants had the requisite intent to harass.

### 4.   Plaintiff Fails to Plausibly Plead a Violation of § 1513(e).

The lawful submission of an ethics complaint and providing research for a news article cannot constitute a violation of Section 1513(e), because the statute requires that the defendant act "knowingly, with the intent to retaliate," and that the defendant's action be "harmful" to the victim, neither of which can be satisfied by these acts. *See United States v. Stoker*, 706 F.3d 643, 646 (5th Cir. 2013) (explaining elements of § 1513(e)). Plaintiff does not allege that he ever provided truthful information about a crime to law enforcement, or that Defendants had knowledge that Plaintiff provided such information, or that Defendants retaliated against Plaintiff *for providing* truthful information about a crime to law enforcement. *See* Compl. ¶ 75(d).

### 5.   Plaintiff Fails to Plausibly Plead a Violation of § 1343.

To the extent Plaintiff alleges a predicate act of wire fraud, *see* Compl. ¶ 75(e), which is unclear because the Complaint includes nothing more than a citation to the statute, the claim fails. The Complaint also makes no allegations of "(1) the existence of a scheme to defraud and (2) the fact that the defendant used or caused the use of wire communications in furtherance of that scheme," as required for a violation of Section 1343. *United States v. Taylor*, 942 F.3d 205, 213 (4th Cir. 2019).

## G. PLAINTIFF FAILS TO PLAUSIBLY PLEAD A VIOLATION OF THE RICO CONSPIRACY PROVISION

Because Plaintiff has failed to adequately allege a violation of the RICO substantive provisions, 1962(a)-(c), Plaintiff's RICO conspiracy claim also fails. *See GE Inv.*, 247 F.3d 543, 551 n.2 ("Because the pleadings do not state a substantive RICO claim under § 1962(c), Plaintiffs' RICO conspiracy claim fails as well."). *See also Efron v. Embassy Suites (Puerto Rico), Inc.,* 223 F.3d 12, 21 (1st Cir. 2000) ("[I]f the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails.") (cited in *GE Inv.*, 247 F.3d at 551 n.2).

Moreover, Plaintiff has not alleged "(1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant[s] knew of and agreed to the overall objective of the RICO offense." *United States v. Abed*, 203 F.3d 822 (4th Cir. 2000) (Table). Conclusory allegations that Defendant Fusion GPS acted "in concert with" others, Compl. ¶ 54, or that Defendants "collaborated with *McClatchy*," *id.* at 60, do not plausibly show any specific agreement between two or more people to file an ethics complaint or publish an article (*i.e.,* the alleged substantive RICO offenses), let alone an agreement to the overall objective of the alleged RICO offenses. The Complaint fails to plead any agreement at all, and "[b]ecause the core of a RICO   civil   conspiracy   is   an   agreement   to   commit   predicate   acts,   a   RICO

civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Field v. GMAC LLC*, 660 F. Supp. 2d 679, 688 (E.D. Va. 2008) (dismissing RICO conspiracy claim) (quoting *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir. 1990)).

### III.   THE INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS CLAIM SHOULD BE DISMISSED

Because Plaintiff's RICO claims must be dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's tortious interference and common law conspiracy claims. 28 U.S.C. § 1367(c)(3).[9] *See Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (A "court has discretion to dismiss or keep a case when it 'has dismissed all claims over which it has original jurisdiction'").

Furthermore, assuming a tortious interference claim can even apply to a Congressman's "expectat[ion]" in his "employment" as a Congressman and position as chairman of a congressional committee, Compl. ¶ 91, Plaintiff has not alleged a "breach or termination" of any "contractual relationship or business expectancy," as required to state a claim for tortious interference. *See Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 616 (E.D. Va. 2009) (stating that the plaintiff must establish: "1) the existence of a valid contractual relationship or business expectancy; 2) knowledge of the relationship or expectancy on the part of the interferor;

---

[9] To the extent that Plaintiff claims that the Court has diversity jurisdiction over these claims, that claim fails. The Complaint does not plead complete diversity because it does not allege the citizenship of any of the parties. Compl. ¶¶ 5, 7, 8. *See Contreras v. Thor Norfolk Hotel, L.L.C.*, 292 F. Supp. 2d 794, 797 (E.D. Va. 2003) (holding that allegation of diversity is insufficient where it "fails to negate the possibility that diversity does not exist") (quoting in parenthetical *Chemical Leaman Tank Lines Inc. v. Aetna Cas. & Ins. Co.,* 177 F.3d 210, 222 n.13 (3d Cir. 1999) for the principle that "[i]n a diversity action, the plaintiff must state all parties' citizenship such that the existence of complete diversity can be confirmed"). Furthermore, the Complaint's conclusory allegations about damages are not sufficient to allege an amount in controversy of more than $75,000. *See Wood v. Maguire Auto., LLC*, 508 F. App'x 65 (2d Cir. 2013) (affirming dismissal of complaint for lack of subject matter jurisdiction because plaintiff's "allegation in her complaint of $75,000 in controversy is conclusory and not entitled to a presumption of truth").

3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and 4) resultant damage to the party whose relationship or expectancy has been disrupted.") (quoting *Duggin v. Adams,* 234 Va. 221, 360 S.E.2d 832, 835 (1987)). He merely alleges that Defendants "inten[ded] to cause Plaintiff's termination as Chairman of the Committee and removal from Congress." Compl. ¶ 92.

## IV.     THE COMMON LAW CONSPIRACY CLAIM SHOULD BE DISMISSED

Plaintiff also fails to state a plausible claim for common law conspiracy. He has not alleged facts supporting the elements for such a claim – *i.e.*, "1) an agreement between two or more persons; 2) to participate in an unlawful act, or a lawful act in an unlawful manner; 3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; and 4) that the overt act was done pursuant to and in furtherance of the common scheme." *Skillstorm, Inc.*, 666 F. Supp. 2d at 618. *See* Sec. Am. Compl. ¶ 87 (alleging only that "[t]he Defendants' actions, detailed above, constitute a conspiracy at common law to tortiously interfere with Plaintiff's business as a United States Congressman and, in particular, his position as Chairman of the House Intelligence Committee").

He has not plausibly alleged that Defendants entered into an agreement with each other or a third party of any kind, much less an agreement to accomplish an unlawful purpose or a lawful purpose by unlawful means. Defendant Fusion GPS's alleged involvement in the research of an ethics complaint, submitted to OCE, is a lawful act pursued in a lawful manner. Researching Plaintiff's investments is also lawful. Lastly, Plaintiff has not alleged any damage from the alleged conspiracy.

## CONCLUSION

For all of the foregoing reasons, the Complaint should be dismissed with prejudice, and the Court should impose sanctions against Plaintiff and his counsel for violating Rule 11.

Dated:  April 27, 2020

By: */s/* Kerry Brainard Verdi
Kerry Brainard Verdi
**Verdi & Ogletree PLLC**
1325 G St NW, Suite 500
Washington, DC 20005
Tel: (202) 449-7703
Fax: (202) 449-7701
kverdi@verdiogletree.com


Joshua A. Levy (*admitted pro hac vice*)
Rachel Clattenburg (*admitted pro hac vice*)
**Levy Firestone Muse LLP**
1401 K. St. NW, Ste. 600
Washington, D.C. 20005
jal@levyfirestone.com
Tel: 202-845-3215
Fax: 202-595-8253

*Counsel for Defendants*
*Fusion GPS and Glenn Simpson*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served through the Court's electronic filing system on April 27, 2020 to counsel of record.


/s/ Kerry Brainard Verdi_____
Kerry Brainard Verdi