IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| DEVIN G. NUNES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case 1:19-cv-1148-LO-TCB |
| | ) | |
| | ) | |
| FUSION GPS a/k/a BEAN, LLC | ) | |
| et al | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Devin G. Nunes ("Nunes"), by counsel, respectfully submits this Memorandum in Opposition to the motion to dismiss [*ECF No. 36*] filed by defendants, Fusion GPS a/k/a Bean, LLC ("Fusion") and Glenn Simpson ("Simpson").

## I. INTRODUCTION

Fusion GPS represents a serious threat to national security and democracy in America. It is the embodiment of corruption. For over a decade, Fusion has undertaken multiple operations against multiple targets, employing a common scheme or artifice, each operation designed to obstruct justice, interfere with and destroy the reputation and livelihood of the target. Fusion's clients include dark money, corrupt dictatorships and their cronies, corporations, powerful politicians, and the Democratic National Committee. Fusion's targets include human rights activists, lawyers, even a President. Plaintiff is the latest victim of Fusion's corrupt business practices.

Plaintiff commenced this action in September 2019 to address Fusion's joint and systematic efforts to intimidate, harass, threaten, influence, interfere with, impede, and ultimately to derail Plaintiff's Congressional investigation into Russian intermeddling in the 2016 U.S. Presidential Election. On April 6, 2020, Plaintiff filed a second amended complaint. Plaintiff asserts five (5) claims. In Count I, Plaintiff asserts a claim under Title 18 U.S.C. § 1964 (RICO) for Defendants' violation of Title 18 U.S.C. § 1962(c). [*ECF No. 35 ("Second Amended Complaint" or "SAC"), ¶¶ 72-79*]. In Count II, Plaintiff alleges that Defendants conspired with certain third parties to injure Plaintiff through a pattern of racketeering activity in violation of Title 18 U.S.C. § 1962(d). [*Id., ¶¶ 80-84*]. Count III requests declaratory and injunctive relief against Fusion and Simpson pursuant to Title 18 U.S.C. § 1964(a). [*Id., ¶¶ 85-89*]. In Count IV, Plaintiff alleges a claim of tortious interference with contract under § 766A of the Restatement (Second) of Torts. [*Id., ¶¶ 90-93*]. Count V states a claim of common law conspiracy to tortiously interfere with Plaintiff's business as a United States Congressman and, in particular, his position as Chairman of the House Permanent Select Committee on Intelligence. [*Id., ¶¶ 94-96*]. Fusion and Simpson responded to the second amended complaint by filing a motion to dismiss. Defendants argue that they are not subject to personal jurisdiction in Virginia and that Plaintiff has failed to state a plausible claim upon which relief can be granted. [*ECF No. 36*].

The matter is before the Court on Defendants' motion to dismiss. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and § 1332 (diversity). For the reasons stated below, the Defendants' motion should be denied.

## II. **DISCUSSION**

The Defendants move to dismiss Plaintiff's second amended complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] Each motion will be considered separately.

A. ***Fusion and Simpson Are Subject To Personal Jurisdiction in Virginia***

When, as here, "the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016); *id. Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009) (citation omitted). In reviewing the matter, the Court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction. *Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018); *New Wellington Fin. Corp. v. Flagship Resort Dev. Co.*, 416 F.3d 290, 294 (4th Cir. 2005) (citations and quotations omitted). "If a plaintiff makes the requisite showing, the defendant then bears the burden of presenting a 'compelling case,' that, for other reasons, the exercise of jurisdiction would be so unfair as to violate due process." *Reynolds Foil, Inc. v. Pai*, 2010 WL 1225620 at * 1 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-478 (1985)).

---

[1]      Fusion and Simpson moved to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(1) for lack of RICO standing. [*See ECF No. 25*]. They effectively acknowledge that Plaintiff's second amended complaint adequately alleges a RICO injury and, thus, standing. Accordingly, Fusion and Simpson limit their motion to Rules 12(b)(2) and 12(b)(6).

In order for a Court to exercise personal jurisdiction over a defendant, the exercise of that jurisdiction must both be authorized by state law and comport with the Due Process Clause of the Fourteenth Amendment. The exercise of jurisdiction in Virginia is governed by the Commonwealth's long-arm statute (Va. Code § 8.01-328.1), which has been held to extend personal jurisdiction to the full extent permitted by Due Process. *ePlus Technology, Inc. v. Aboud*, 313 F.3d 166 (4th Cir. 2002). Since Virginia's long-arm statute is co-extensive with the strictures of Due Process, Courts collapse the two-part analysis into one inquiry. *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) ("Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'") (quoting *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996)).

The federal constitutional predicate for the exercise of personal jurisdiction is the familiar requirement that "a defendant must have sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Eng'rs Corp.*, 561 F.3d at 277 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The requirements of the Due Process clause can be met through establishing either specific or general jurisdiction. Specific jurisdiction exists where the controversy at issue arises out of sufficient contacts with the state to make the exercise of jurisdiction reasonable. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-415 (1984). Alternatively, general jurisdiction can exist, even where a claim does not arise from a defendant's interactions

with the state, where the defendant has sufficient continuous and systematic contacts with the state to satisfy Due Process. *Id.*

Created in 1977, the House Permanent Select Committee on Intelligence (the "House Intelligence Committee") oversees the nation's intelligence agencies, including components of the Departments of Defense, Homeland Security, Justice, State, Treasury and Energy. Consistent with its mission and jurisdiction, the House Intelligence Committee has the authority and power, *inter alia*, to conduct investigations, issue subpoenas for the production of memoranda, documents and records or other material, to compel testimony from witnesses, and to make criminals referrals to the DOJ. [https://republicans-intelligence.house.gov/uploadedfiles/hpsci_rules_of_procedure_-_115th_congress.pdf; https://www.govinfo.gov/content/pkg/HMAN-115/pdf/HMAN-115.pdf]. Plaintiff serves as Ranking Member of the House Intelligence Committee. He served as Committee Chairman in 2018. As a member of the House Intelligence Committee, Plaintiff participates in oversight of the U.S. national security apparatus, including the intelligence-related activities of seventeen agencies, departments, and other elements of the United States Government, most of which are located in Virginia within the Alexandria Division. On March 1, 2017, the House Intelligence Committee approved a bipartisan "Scope of Investigation" to guide the Committee in its investigation into the Russian active measures campaign that targeted the 2016 U.S. Presidential Election. Plaintiff confirmed that the "Intelligence Committee has been investigating Russia for years and warning about the Putin regime's hostile international actions, its aggression in cyber space, and its influential international propaganda campaigns. The committee is determined to continue and expand its inquiries into these areas, including Russian

activities related to the 2016 U.S. elections. On a bipartisan basis, we will fully investigate all the evidence we collect and follow that evidence wherever it leads." [*SAC, ¶¶ 5, 6*].

Plaintiff alleges that Fusion and Simpson operate a for-profit political war room that specializes in obstruction of justice and dirty tricks.[2] The second amended complaint asserts that Fusion has multiple agents and transacts its affairs in Virginia; that many of Fusion's clients and donors are located in Virginia; and that, as part of its regular way of doing business, Fusion uses "cut-outs", media sympathizers and co-conspirators in Virginia to spread false narratives in furtherance of the Defendants' obstruction schemes. Plaintiff alleges that in 2018 Fusion participated in an elaborate scheme, involving at least one Virginia political operative, Liz Mair, to obstruct Plaintiff in the performance of his duties as Chairman of the House Intelligence Committee. Plaintiff also identifies numerous key witnesses to the Defendants' corrupt business practices – including former FBI director, James Comey ("Comey"), Andrew McCabe ("McCabe"), Bruce Ohr, Fusion GPS contractor, Nellie Ohr, and Liz Mair – who reside in Virginia or did so at the time of the acts or occurrences at issue in this action. [*SAC, ¶¶ 7, 14, 15, 67*].

At this stage, Plaintiff only needs to make a prima facie showing of personal jurisdiction. When the complaint is viewed in the light most favorable to Plaintiff, with

---

[2]     In 1996, Simpson and University of Virginia political scientist, Larry Sabato, published a book, entitled "***Dirty Little Secrets: The Persistence of Corruption in American Politics***". Railing against "sleaze" in campaigns, political consultancies, and Washington journalism, Simpson and Sabato deplored "opposition research" as a "gateway to acts that are not just offensive but duplicitous and sometimes illegal." The proliferation of mud-slinging, Simpson wrote, had turned campaigns once fought over real issues into a "debate over irrelevancies" – and led to blackmail and other crimes. In the decade after publication of ***Dirty Little Secrets***, Simpson learned that "dirty tricks" was a lucrative business. He left journalism, founded Fusion, and became the most notorious collector and peddler of the type of sleaze he once decried.

all inferences drawn in favor of the existence of jurisdiction, it is clear that Plaintiff has made a prima facie showing of personal jurisdiction. The Defendants' motion under Rule 12(b)(2) should be denied for two (2) reasons.

1. ***Personal Jurisdiction Under RICO***

Title 18 U.S.C. § 1965(a) provides that "any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." The statute also authorizes service of process in any judicial district in which the defendant resides, is found, has an agent, or transacts his affairs. Federal Rule of Civil Procedure 4(k)(1)(C) provides that "[w]here a defendant has been validly served pursuant to a federal statute's nationwide service of process provision, a district court has personal jurisdiction over the defendant so long as jurisdiction comports with the Fifth Amendment." *Navient Solutions, LLC v. Law Offices of Jeffrey Lohman*, 2020 WL 1867939, at * 3 (E.D. Va. 2020) (quoting *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 443-444 (4th Cir. 2015)). "To make out a Fifth Amendment challenge to personal jurisdiction," a defendant must show "that the district court's assertion of personal jurisdiction over them would result in such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy evidenced by a nationwide service of process provision." *Id.* "Normally, when a defendant is a United States resident, it is highly unusual ... that inconvenience will rise to the level of a constitutional concern." *Id.*; *Solomon v. American Web Loan*, 2019 WL 1320790, at * 18 (E.D. Va. 2019) (Defendants, who were alleged to have engaged in and conspired to engage in a RICO conspiracy that reached into Virginia and involved a

Virginia resident, did not show that litigation in Virginia was so gravely difficult and inconvenient as to put defendants unfairly at a severe disadvantage in comparison to their opponent); *Hengle v. Curry*, 2018 WL 3016289, at * 9 (E.D. Va. 2018) ("there is no evidence that any defendant would suffer extreme inconvenience or unfairness from litigating in the Newport News Division. Defendants have conducted their business in connection with the underlying dispute in states like Oklahoma, Delaware, and New York. Even if there would be some inconvenience in having to defend the action in Virginia instead of one of those states, 'it is not so extreme as to defeat the exercise of personal jurisdiction pursuant to valid service of process, although it may certainly factor into a transfer decision'"); *D'Addario v. Geller*, 264 F.Supp.2d 367, 387 (E.D. Va. 2003) ("As there is no evidence in the record suggesting extreme inconvenience or unfairness in litigating in this forum, *in personam* jurisdiction comports with due process in this case.").

Here, Plaintiff clearly alleges that Fusion and Simpson are United States residents and that they have agents in Virginia and transact affairs in Virginia. Defendants agree that they were validly served pursuant to RICO's nationwide service of process provision. With regard to inconvenience or unfairness, Defendants fail to demonstrate that this is one of the highly unusual cases in which inconvenience rises to a level of constitutional concern. Indeed, Simpson's declaration [*ECF No. 37-1*] does not mention ***any*** inconvenience or unfairness that would result from litigation in the Alexandria Division of the Eastern District of Virginia, which is only a few miles from Fusion's

office.[3]  Defendants' argument that they lack sufficient minimum contacts with Virginia to be subject to personal jurisdiction is meritless; "[t]hat standard … is not relevant when the basis for jurisdiction is found in a federal statute containing a nationwide service of process provision." *Navient Solutions*, 2020 WL 1867939 at * 3 (quoting *Trustees of the Plumbers & Pipefitters*, 791 F.3d at 443-444)).

## 2.    *The Defendants Are Subject to Specific Jurisdiction*

In order for the Court to exercise specific jurisdiction, "the suit" must "aris[e] out of or relat[e] to[4] the defendant's contacts with the forum". *Hall*, 466 U.S. at 414 fn. 8); *Burger King*, 471 U.S. at 472-473.  In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).   In assessing specific jurisdiction, Courts employ a three-part test to determine whether the exercise of specific jurisdiction over a nonresident defendant comports with the requirements of due process.  Courts evaluate: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012).  With respect to the first factor, "no clear formula [exists] for determining what constitutes 'purposeful availment.'" *Reynolds Foil, Inc.*, 2010 WL 1225620 at *2.  The Court, however, may

---

[3]    Defendants agree that the Eastern District of Virginia is a proper venue and that it is convenient to the parties and witnesses.

[4]    A claim "relates to" a defendant's forum conduct if it has a "connect[ion] with" that conduct. *International Shoe,* 326 U.S. at 319.

consider whether the defendant maintains offices or agents in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the defendant made in-person contact with a resident of the forum in the forum state regarding the business relationship; the nature, quality, and extent of the parties' communications about the relevant transactions. *See Consulting Eng'rs Corp.*, 561 F.3d at 278 (internal citations omitted). The second prong of the test for specific jurisdiction requires that the defendant's contacts with the forum state form the basis of the suit. *Burger King*, 471 U.S. at 472; *Hall*, 466 U.S. at 414. The third prong of the specific jurisdiction test permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there. Specifically, the court may consider: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and, (5) the interests of the states in furthering substantive social policies. *Burger King*, 471 U.S. at 477. In determining whether specific jurisdiction is present, the "primary concern" is "the burden on the defendant." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

"There is no question that physical presence is not necessarily required to satisfy the constitutionally mandated requirement of minimum contacts." *Burger King*, 471 U.S. at 476. In this regard, Virginia recognizes that the in-state acts of a co-conspirator – in this case, Liz Mair – are sufficient to confer personal jurisdiction over an out-of-state

confederate. *See, e.g., St. Paul Fire and Marine Ins. Co. v. Hoskins*, 2011 WL 1897683, at * 3 (W.D. Va. 2011) ("Under a conspiracy theory of personal jurisdiction, a conspirator not present in the forum state will, nevertheless, be adjudged to have had a personal presence in the forum State by means of adequate minimum contacts of the other conspirators") (quotation and citation omitted); *Verizon Online Services, Inc. v. Ralsky*, 203 F.Supp.2d 601, 622 (E.D. Va. 2002) (citing *Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & Brecher*, 635 F. Supp. 15, 18 (E.D. Pa. 1995) ("When co-conspirators have sufficient contacts with the forum, so that due process would not be violated, it is imputed against the 'foreign' co-conspirators who allege there is [sic] not sufficient contacts; co-conspirators are agents for each other.")); *Krantz v. Air Line Pilots*, 245 Va. 202, 427 S.E.2d 326 (1993) (entry of message on computer in New York with the knowledge that persons in Virginia would transmit negative comments about the plaintiff and thereby interfere with plaintiff's prospective employment, subject New York resident to personal jurisdiction in Virginia); *Nathan v. Takeda Pharmaceuticals America, Inc.*, 2011 WL 8947650, at * 13 (Fairfax Cir. 2011) ("In the instant case, Plaintiff has alleged a conspiracy between Flood, Smith, Venanzi, Savant, and Fouchie. Accordingly, under the conspiracy theory of jurisdiction, Flood and Smith could be subject to jurisdiction based on the acts of Venanzi, Savant or Fouchie that occurred in Virginia in furtherance of the conspiracy."); *Massey Energy Co. v. UMW*, 2005 WL 3476771 at * 4-5 (Fairfax Cir. 2005) ("At this stage, plaintiff need not prove the entire case but only make a 'prima facie' showing of the conspiracy. Once this prima facie showing of conspiracy is adequately alleged, and where co-conspirators have sufficient contacts with the forum, so that due process would not be violated, these contacts are

imputed against the foreign co-conspirator.") (quotations and citations omitted); *North Fork Shenandoah, Inc. v. Bunning*, 7 Va. Cir. 327 (1986) (Warren Cir. 1986) (Whiting, J.) (non-resident, who had never set foot in state, was subject to personal jurisdiction because he "has acted in Virginia through [his] agent … a co-conspirator.").

Construing Plaintiff's allegations in the light most favorable to him, there is no question that Plaintiff has made a prima facie showing that the Defendants are subject to specific personal jurisdiction.

a. ***Purposeful Availment***

First, the allegations in the second amended complaint demonstrate that the Defendants purposefully availed themselves of the privilege of conducting activities in Virginia. Fusion and Simpson have agents, employees and, upon information and belief, many clients and donors in Virginia.[5] Fusion and Simpson reached into Virginia to solicit, initiate and conduct the business of the enterprise. Plaintiff alleges a conspiracy between the Defendants and a prominent Virginia political operative, and that that operative (Mair), acting in concert with Fusion and Simpson, committed acts in furtherance of the conspiracy in Virginia. [*SAC, ¶¶ 7, 9, 67, 69, 74*]. Importantly, Simpson in his declaration does not dispute Plaintiff's allegations of collusion between Fusion/Simpson and Mair. Based on the totality of their known contacts with Virginia, it

---

[5]     In his declaration [*ECF No. 37-1, ¶ 8*], Simpson represents that "[m]ost, if not all, of … Fusion GPS' clients, agents, and donors are located outside of Virginia." The necessary evidence of the identity of Defendant's Virginia clients and donors is exclusively controlled by the Defendants. Therefore, Plaintiff is permitted to plead facts based on information and belief. *Navient Solutions*, 2020 WL 1867939 at * 6. Simpson's equivocal declaration speaks volumes. At this stage, the Court must accept Plaintiff's allegations as true and resolve this dispute in favor of Plaintiff. In the alternative, the Court should treat Defendants' motion as one for summary judgment, deny the motion and give Plaintiff an opportunity to present all the material that is pertinent to Fusion's contacts with Virginia.

cannot be said that the Defendants are being "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts … or the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475. The allegations in the second amended complaint satisfy the relevant factors, and show purposeful availment.

        **b.**    <u>***Relationship***</u>

Defendants' contacts with Virginia that are outlined above are almost all related to Plaintiff's claims, and to the conduct that Plaintiff alleges to be actionable. In essence, Plaintiff is alleging that, even when the Defendants were not present in Virginia, they reached into Virginia to instigate and conspire with a Virginia operative to further the goal of the enterprise – obstruction of justice. Either through communications with Mair in Virginia or while the Defendants were collaborating with Mair in Virginia, Plaintiff alleges that the Defendants committed acts of racketeering alleged in the second amended complaint. *See Gratz v. Gratz*, 2019 WL 1646541, at * 4 (E.D. Va. 2019).

        **c.**    <u>***Personal Jurisdiction Is Constitutionally Reasonable***</u>

Lastly, the exercise of specific personal jurisdiction is constitutionally reasonable. Several factors inform the analysis of this jurisdictional component: (1) the burden that litigating in the forum state places on the Defendants; (2) the interests of the forum state in adjudicating the dispute; (3) Plaintiff's interest in efficient resolution of the dispute; and (4) the shared interest of the states in efficient dispute resolution and furthering substantive social policies. *Gratz*, 2019 WL 1646541, at * 4 (citing *Consulting Eng'rs Corp.*, 561 F.3d at 279)).

Litigating this dispute in Virginia imposes no burden whatsoever on Defendants. They do not identify a single witness who will not appear for trial in Virginia or whose

appearance cannot be compelled or whose deposition cannot be taken for use at trial. They do not identify any problem marshalling documentary evidence. This case involves Defendants' conspiracy with a Virginia resident to obstruct justice and to further the interests of an enterprise that operated, in part, in Virginia. It is beyond dispute that the Commonwealth of Virginia has a significant interest in exercising jurisdiction over those who commit torts (tortious interference and conspiracy) within its territory. *See, e.g., Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 776 (1984) ("it is beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State."). Lastly, litigating the case in Virginia will help prevent delay for Plaintiff and ensure that the corruption at the heart of this case and Fusion's operations is resolved in a more efficient way. *Gratz*, 2019 WL 1646541, at * 5. Under the circumstances, the exercise of specific personal jurisdiction over the Defendants is constitutionally reasonable.

**B.**      ***Plaintiff Plausibly States Claims Upon Which Relief Can Be Granted***

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F,2d 8943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a plaintiff's complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007). To this end, a complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Coleman v. Md. Ct. of Apps.*, 626 F.3d 187, 190 (4th Cir. 2010)

(internal quotation marks omitted). A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In ruling on a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff, with all reasonable inferences being drawn in plaintiff's favor. *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, (4th Cir. 2011). A 12(b)(6) motion should only be granted if, "after accepting all well-pleaded allegations ... as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

1. ### *COUNT I – Violation of 18 U.S.C. § 1962(c)*

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1969, imposes criminal and civil liability upon those who engage in certain "prohibited activities." "RICO liability is reserved" for "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989)).

Plaintiff's second amended complaint states a claim under RICO § 1962(c) – conduct or participation in the conduct of the affairs of an enterprise through a pattern of racketeering activity. A civil RICO claim under 18 U.S.C. § 1962(c) has five essential elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering

activity; that (5) caused injury to plaintiff's business or property. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  Plaintiff sufficiently addresses each of the elements of a RICO claim under § 1962(c).

      **a.**     <u>***Conduct***</u>

In *Reves v. Ernst & Young*, the United States Supreme Court adopted the "operation or management" test to determine whether someone has conducted the affairs of an enterprise. 507 U.S. 170, 179 (1993).  To be sure, "[a]n enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management," as well as third parties who are somehow "associated with" the enterprise and exert control over it. *Id.*, at 184.  However, to be liable under § 1962(c), an individual must be a "direct participant" in the affairs of the enterprise and not merely "acting in an advisory professional capacity (even if in a knowingly fraudulent way)." *Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*, 633 F.Supp.2d 214, 230 (E.D. Va. 2008).

In his second amended complaint, Plaintiff alleges that the Defendants actively conducted the affairs of the RICO enterprise through a pattern of racketeering activity. The facts alleged support the plausible inference that Fusion and Simpson did not merely participate in the alleged enterprise through their ordinary business activity, but that they helped to devise and structure an associated group of individuals and businesses whose purpose it was to obstruct justice, including Plaintiff's congressional investigations, and that they directed and controlled all aspects of the obstruction scheme. [*SAC, ¶¶ 7, 8, 9, 54, 55, 58, 59, 60, 67, 68, 74, 75, 81*].

**b.** *__The Associated-in-Fact Enterprise__*

Section 1961(4) broadly defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *18 U.S.C. § 1961(4)*. One type of enterprise under RICO is an association-in-fact enterprise, which is defined as having "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). The existence of an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit" with a common purpose. *United Sates v. Turkette*, 452 U.S. 576, 583 (1981); *see id. Boyle*, 556 U.S. at 948 (an association-in-fact enterprise "is simply a continuing unit that functions with a common purpose.").

Here, Plaintiff plausibly alleges the existence of an associated-in-fact enterprise. The enterprise – consisting of Fusion, Simpson, Campaign for Accountability ("CfA"), Mair, McClatchy and other unnamed clients, officers, executives, and employees of Fusion, CfA, Mair and McClatchy associated in fact – is an "enterprise" as that term is defined in 18 U.S.C. § 1961(4). The persons involved in the enterprise associated for a common purpose: to intimidate, harass, threaten, influence, interfere with, impede, and ultimately to derail Plaintiff in the performance of his official duties and business as Chairman of the Committee and as a United States Congressman, and to prevent Plaintiff from making criminal referrals to DOJ. The enterprise in this case has an ongoing organization with an ascertainable structure, and it functions as a continuing unit with

separate roles and responsibilities. Fusion and Simpson created the "dossier" to be used to facilitate the obstruction scheme. As an "astroturfer", Fusion and Simpson chose CfA, Mair and McClatchy as "cut-outs" or fronts to undertake the obstruction scheme. In furtherance of the obstruction scheme, CfA, Mair and McClatchy played their parts, instigating fraudulent ethics complaints and acting as a conduit to propagate falsehoods and obstruct Plaintiff in the performance of his duties as Chairman of the Committee. Fusion and Simpson operated the enterprise and controlled the specific means and methods employed by the enterprise, the nature and timing of the obstruction launched in January 2018, and they pursued a common goal of intimidation and harassment. [*SAC, ¶ 2, 7, 74*]; *compare Navient Solutions*, 2020 WL 1867939 at * 8 ("The Complaint has plainly alleged the existence of an association-in-fact enterprise of which defendants were a part by describing that the purpose of the scheme was to defraud plaintiff through manufactured TCPA litigation and arbitration claims, that defendants were part of the marketing arm of the scheme, as opposed to the legal arm, and that the scheme has been ongoing since at least 2015.").

      c.      *__Defendants' Acts of Racketeering Activity__*

"Racketeering activity" means and includes, *inter alia*, wire fraud in violation of Title 18 U.S.C. § 1343 and acts which are indictable under Title 18 U.S.C. §§ 1503, 1512 and 1513. *18 U.S.C. § 1961(1)(B)*.

To plead wire fraud, a plaintiff must show: (1) a scheme disclosing intent to defraud; and (2) the use, respectively, of the interstate wires in furtherance of the scheme. *Chisholm v. TranSouth Fin. Corp.*, 95 F.3d 331, 336 (4th Cir. 1996). The Federal Rules of Civil Procedure further require that fraud be pled with particularity as to the time,

place and contents of the false representations, as well as the identity of the person making those representations and the object sought by the fraud. *Fed.R.Civ.P. 9(b)*; *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Title 18 U.S.C. § 1503(a) provides that any person who "corruptly … or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice"[6] is guilty of the crime of obstruction. Title 18 U.S.C. § 1512(b)(3)[7] provides that whoever "knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to … hinder, delay, or

---

[6]     To establish obstruction of justice under § 1503(a), the government must prove: (1) the existence of a "pending judicial proceeding"; (2) that the defendant had knowledge of the pending proceeding; and (3) that the defendant acted "with the intent to influence, obstruct, or impede that proceeding in its due administration of justice." *United States v. Grubb*, 11 F.3d 426, 437 (4th Cir. 1993). "Judicial proceeding" is not defined in Title 18 U.S.C. § 1503. However, the term is broad enough to encompass quasi-judicial federal proceedings, such as those before the House Intelligence Committee, where "elements associated with due process" are present. *See Doe v. Roe*, 295 F.Supp.3d 664, 674, (E.D. Va. 2018) (citing *Butz v. Economou*, 438 U.S. 478, 513 (1973) (determining that participants in administrative agency adjudications are entitled to absolute immunity because "agency adjudication contain[s] many of the same safeguards as are available in the judicial process").

[7]     Jurisdiction for a federal prosecution under § 1512(b)(3) "is based on the federal interest of protecting the integrity of potential federal investigations by ensuring that transfers of information to federal law enforcement ... relating to the possible commission of federal offenses be truthful and unimpeded." *United States v. Perry*, 335 F.3d 316, 321 (4th Cir. 2003). The statute requires only "that the government establish that the defendants had the intent to influence an investigation that happened to be federal." *Id.* (quoting *United States v. Applewhaite*, 195 F.3d 679, 687 (3rd Cir. 1999)). In this case, Plaintiff alleges that Fusion and Simpson knew that there was a substantial likelihood that Simpson could be indicted for making false statements to the FBI and DOJ, lying to Congress and the Senate, and for obstructing justice. Plaintiff contends that the purpose of Defendants' actions was to threaten and intimidate Plaintiff, interfere with his Congressional investigation into Fusion and the "Steele Dossier", and dissuade Plaintiff from making criminal referrals to the law enforcement officers at DOJ. [*SAC, ¶¶ 51, 55, 75(b)*].

prevent the communication to a law enforcement officer … of the United States of information relating to the commission or possible commission of a Federal offense" is guilty of the crime of obstruction. *Compare Couch v. Wan*, 2010 WL 3582519, at * 18 (E.D. Ca. 2010) (defendants' conduct suggested "intimidation" used to "hinder, delay, or prevent the communication to a law enforcement officer ... of information relating to the commission or possible commission of a Federal offense."). Title 18 U.S.C. § 1512(c) provides that whoever "corruptly"[8] "obstructs, influences, or impedes any official proceeding,[9] or attempts to do so" is guilty of obstruction.[10] *Compare Markey v. A.M.E. Services, Inc.*, 2013 WL 1182991, at * 3 (E.D. La. 2013) ("Plaintiff has alleged that Defendants engaged in a number of related predicate criminal acts which in turn pose a threat of continued criminal activity. Plaintiff alleges that Defendants intentionally failed to provide Plaintiff and others with tax forms and other employment-related documents, and filed false statements under oath with courts and administrative agencies. If true, these allegations would likely implicate the predicate criminal acts of (1) obstruction of justice in violation of 18 U.S.C. § 1503; (2) corruption in violation of 18 U.S.C. § 1512(c); and (3) wire and/or mail fraud"). Title 18 U.S.C. § 1512(d) provides that whoever "intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from … [(a)] reporting to a law enforcement officer … the

---

[8]    As used in Title 18 U.S.C. § 1505, the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information. *18 U.S.C. § 1515(b)*.

[9]    As used in §§ 1512 and 1513, the term "official proceeding" includes a proceeding before Congress. *18 U.S.C. § 1515(A)(1)(B)*.

[10]    Section 1512(c)(2) requires proof that a particular official proceeding is "reasonably foreseeable" to the defendant charged with obstructing that proceeding. *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019).

commission or possible commission of a Federal offense [or (b)] … causing a criminal prosecution … to be sought or instituted, or assisting in such prosecution or proceeding" is guilty of obstruction.  Title 18 U.S.C. § 1513(e) provides that whoever "knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense" is guilty of obstruction. *Compare DeGuelle v. Camilli*, 664 F.3d 192, 202 (7th Cir. 2011) ("DeGuelle alleges that Camilli, Kosterman, and Eckhardt engaged in retaliatory acts against him in violation of 18 U.S.C. § 1513(e)-(f) by terminating his employment, filing a lawsuit against him, and disseminating defamatory statements to the press.").

Here, Plaintiff alleges that the Defendants engaged in multiple acts of wire fraud, including false statements faxed to the Office of Congressional Ethics, and obstruction of justice in violation of Title 18 U.S.C. §§ 1503(a), 1512(b), 1512(c), 1512(d) and 1513(e). The complaint details what the Defendants did, when they did it, their intent, object and purpose, and how they violated each statute.  Plaintiff has sufficiently alleged multiple predicate acts of wire fraud and obstruction of justice. [*SAC, ¶¶ 2, 9, 51, 52, 54, 55, 56, 57, 58, 59, 60, 63, 64, 65, 67, 68, 69, 75*]; *compare D'Addario*, 264 F.Supp.2d at 389 ("Plaintiff further explains that the alleged obstruction of justice was very harmful to RMST because the misrepresentation to the court thwarted the court's administration of salvor rights and its ability to act as guardian to ensure the artifacts would be properly handled"); *Norris v. Norris*, 1990 WL 130470, at * 2 (4th Cir. 1990) ("Plaintiffs have alleged non-fraudulent predicate acts including attempted murder, criminal threats of

violence, narcotics trafficking, obstruction of justice, and obstruction of a criminal investigation … some of which may involve a threat of continuing activity.  If plaintiffs are able to prove the claimed acts, there may be a 'pattern of racketeering activity.' Accordingly, plaintiffs' complaint is sufficient to survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6).") (citations omitted).

### d. *Pattern*

In order "[t]o prove a pattern of racketeering activity, the evidence must show that the racketeering predicates are related, and that they amount to or pose a threat of continued [racketeering] activity." *United States v. Pinson*, 860 F.3d 152, 161 (4th Cir. 2017).  "Racketeering acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.*  "To constitute or threaten continued [racketeering] activity, racketeering acts may either be close-ended, *i.e.*, a closed period of repeated conduct, or open-ended, *i.e.*, naturally projecting into the future with a threat of repetition." *Id.*  Although time periods of less than two (2) years generally fail to provide the requisite period of time for "closed-ended continuity", *Menasco*, 886 F.2d at 684, a plaintiff may properly allege "similar schemes" against other victims to establish a pattern of racketeering activity. *GE Inv.*, 247 F.3d at 550.  Significantly, "open-ended" continuity may be established by showing that the predicate acts "are part of an ongoing entity's regular way of doing business." *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989).

Viewing the facts at issue in the light most favorable to the Plaintiff, as the Court must at this stage, there is little question but that the second amended complaint states a

plausible case of both relatedness and continuity. The predicate acts alleged by Plaintiff meet the RICO "pattern of activity" relatedness test because they had a similar purpose – obstructing justice in violation of Federal law – and employed similar means and methods. *Smithfield Foods*, 633 F.Supp.2d at 226 ("Smithfield has sufficiently alleged that the predicate acts of extortion committed by the Defendants were related. The alleged predicate acts had the same or similar purpose. The acts were participated in generally by the same people. The alleged victim was the same. The alleged method of commission was the same or similar. The acts, as alleged, were not isolated events. The allegations of the Complaint, if proved, meet the requirement for relatedness specified in *H.J., Inc.*").[11] Plaintiff satisfies the continuity requirement by alleging that the predicate acts of obstruction of justice are part of Fusion and Simpson's regular way of doing business. Here, Plaintiff points to multiple sets of victims, including Halvorssen, Boyd, Browder, Trump and Plaintiff, and a multi-year, ongoing time frame. Here, there are multiple perpetrators, assuming multiple roles on behalf of Fusion and Simpson, the astroturfers. Defendants' conduct evinces a "scope and persistence" that poses a special threat to Plaintiff and to the social well-being of the United States. *Menasco*, 886 F.2d at 684 (a "pattern" is demonstrated by "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being."). The facts demonstrate both that Defendants' obstruction of justice will occur indefinitely into the future (as in the "hoodlum" example given by the *H.J., Inc.* Court) and that the obstruction is Fusion and Simpson's regular way of doing business. Given that Fusion and Simpson have

---

[11] *H.J., Inc.*, 492 U.S. at 240 (the relationship criterion may be satisfied by showing that the criminal acts "have the same or similar purposes, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events.").

perpetrated their obstruction scheme on multiple victims for almost a decade, there is a distinct threat of long-term racketeering activity inherent in the predicate acts. [*SAC, ¶¶ 12, 78*]. Plaintiff has established open-ended continuity under RICO. *Compare CVLR Performance Horses, Inc. v. Wynne*, 2013 WL 2322180, at * 4 (4th Cir. 2013) ("at the time the Appellees' acts occurred, the conduct 'project[ed] into the future with a threat of repetition,' and there was no other indication that Wynne's conduct was to be limited to only the identified victims. Thus, the victims' discovery of the Appellees' misconduct does not prevent CVLR from establishing open-ended continuity"); *Navient Solutions, LLC v. Krohn & Moss, Ltd.*, 2018 WL 6790654, at * 7 (E.D. Va. 2018) ("Racketeering activities amount to or pose a threat of continued activity when a plaintiff shows 'continuity of racketeering activity, or its threat.' Plaintiff has established each requirement to show that Mr. Johnson has engaged in a pattern of racketeering activity in furtherance of the enterprise."); *Choimbol v. Fairfield Resorts, Inc.*, 428 F.Supp.2d 437, 447 (E.D. Va. 2006) ("In this case, Plaintiffs allege continuity by pleading that the predicate acts are Fairfield's regular way of conducting their ongoing legitimate business. Unlike the plaintiffs in *Menasco,* Plaintiffs have alleged that Defendants' fraudulent scheme involved over 40 individuals, included at least 5 active perpetrators, and thousands of payroll checks over a 3 year period.").

### e. *Causation*

Finally, Plaintiff alleges that he suffered concrete injury as a direct and proximate result of Fusion and Simpson's efforts to interfere with, impede and obstruct Plaintiff in the performance of his official duties as Chairman of the House Intelligence Committee. [*SAC, ¶¶ 70, 77*]. *Potomac Elec. Power Co. v. Electric Motor and Supply, Inc.*, 262 F.3d

260, 265 (4th Cir. 2001) ("The best reading of § 1964(c)'s injury to business or property requirement is that it refers to the fact of injury and not the amount"); *Noble Sec., Inc. v. MIZ Engineering, Ltd.*, 611 F.Supp.2d 513, 552 (E.D. Va. 2009) ("plaintiff alleged that it was injured in its business by stating that: 'due to the purposefully injurious conduct ... [Noble] [has] been intentionally and irreparably harmed.' That alleged injury was attributed to the RICO violation because Noble alleged that: 'Third Party Defendants have successfully conducted a business enterprise to injure [Noble's] business through a pattern of racketeering activity.' Therefore, Noble has sufficiently alleged subject matter jurisdiction").

This Court recently reaffirmed that under federal law, "the general proposition [is] that proximate cause is an issue of fact often suited for trial." *Navient Solutions*, 2020 WL 1867939 at * 4 (citing and quoting *Nat'l Org. for Marriage, Inc. v. United States*, 24 F.Supp.3d 518, 531 (E.D. Va. 2014); *see also Sec. Pac. Equip. Leasing, Inc. v. Earthworm Tractor Co.*, 1990 WL 96757, at * 4 (S.D.N.Y. 1990) (explaining, in the context of a RICO claim, that "[t]he question of proximate cause is a question of fact to be decided by a jury")). Similarly, under Virginia law, "[i]ssues of ... proximate causation ordinarily are questions of fact for the jury's determination," and "[a] court decides [such] issues only when reasonable persons could not differ." *Id.* (citing and quoting *Dorman v. State Industries, Inc.*, 292 Va. 111, 122, 787 S.E.2d 132 (2016).

 **2.** _**COUNT II – Plaintiff States A Plausible Claim Under § 1962(d)**_

Section 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

"A conspiracy may exist even if a coconspirator does not agree to commit or facilitate each and every part of the substantive offense." *United States v. Salinas*, 522 U.S. 52, 63 (1997).  A plaintiff need not allege that each defendant committed or agreed to commit predicate acts, but must allege that each defendant agreed to facilitate the unlawful activity.  "A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Id.* at 65.  A defendant may be a conspirator by the mere agreement to facilitate only some of the acts leading to the substantive offense. *Id.*

Plaintiff alleges ample facts in support of his claim that Defendants combined and agreed with others to violate § 1962(c).  Plaintiff alleges multiple business arrangements between and among the Defendants and other individuals and entities in the alleged enterprise, including shared involvement and shared responsibility for dissemination of the fraudulent "ethics" charges and media and social media smear campaign, coordinated by the Defendants. [*SAC, ¶¶ 3, 67, 68, 69, 81*].  Ultimately, these facts support the inference that the Defendants "objectively manifested an agreement to participate directly or indirectly in the affairs of the enterprise" through a pattern of racketeering activity and "had knowledge of the essential nature of the plan" of the conspiracy. *Tillett v. United States*, 763 F.2d 628, 632 (4th Cir. 1985); *compare Treads USA, LLC v. Boyd LP I*, 2010 WL 2711266, at * 6 (W.D. Va. 2010) ("the plaintiffs allege that CMFL, and other named defendants 'controlled VFI and Treads and engaged in racketeering activities for the purpose of defrauding the [p]laintiffs.'  The use of the word 'controlled' indicates that the plaintiffs contend that CMFL and the others conducted and participated in the direction

of the enterprises' affairs.  Thus, on its face, it appears that the plaintiffs have alleged enough to assert a plausible RICO Act conspiracy claim").

> **3.**     ***COUNT III – Injunctive Relief Under § 1964(a)***

Section 1964(a) provides a broad grant of authority to District Court to award injunctive relief in RICO actions.  The statute reads as follows:

> "district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons."

Section 1964(a) does not limit the scope of injunctive relief that the Court can provide and does not prescribe *who* is entitled to apply for such relief.  Neither the United States Supreme Court nor the Fourth Circuit has decided whether injunctive relief is available to private plaintiffs under RICO.  Other Circuits have held that RICO private plaintiffs are entitled to injunctive relief. *See, e.g., Chevron Corp. v. Donziger*, 833 F.3d 74, 137 (2nd Cir. 2016).

The Court should follow the Second Circuit decision in *Chevron* because it is consistent with the purpose of the statute, the broad language of the statute, and the spirit of RICO which is to eliminate the threat of long-term, continuing acts of racketeering, like those perpetrated by Fusion and Simpson.

> **4.**     ***COUNT IV – Tortious Interference***

Virginia has adopted the causes of action for tortious interference defined in the Restatement (Second) of Torts §§ 766 md 766A.

In this case, Plaintiff relies of § 766A of the Restatement.  Section 766A provides that:

> "One who intentionally and improperly interferes with the performance of a contract … between another and a third person, by preventing *the other* [here Plaintiff] from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him."

(Emphasis added).  The distinction between a claim under § 766A of the Restatement and a claim under § 766 is explained in comment a to § 766A:

> "This Section [766A] is concerned only with the actor's intentional interference with the plaintiff's performance of his own contract, either by preventing that performance or making it more expensive or burdensome.  It is to be contrasted with § 766, which states the rule for the actor's intentional interference with a third person's performance of his existing contract with the plaintiff."

(cited and quoted in *Construction Engineering Consultants, Inc. v. Steel Solutions, Inc.*, 2009 WL 10733733, at * 13 (E.D. Va. 2009) ("In this case, it is Carpenter's interference with Plaintiff CEC's performance of its own contract, by making it more expensive or burdensome, that is the subject of this claim.  Therefore, § 766A of the Restatement is more applicable to this situation than is § 766, which was relied upon in *Chaves*") (citing *PJS Associates, L.P. v. Cosby*, 2000 WL 1618100, at * 5 (Richmond Cir. 2000)).[12]

Here, Plaintiff alleges that he had a valid contract and reasonable business expectancies in his employment and position as a United States Congressman, and that Fusion and Simpson were aware of Plaintiff's employment property rights through in-depth research and creation of a "dossier" on Plaintiff.  Plaintiff further claims that

---

[12]      In *Schaecher v. Bouffault*, the Virginia Supreme Court observed that § 766A of the Restatement is "more explicitly broad" than § 766 and "allows for more indirect interference on behalf of the defendant and allows for recovery of damages against a defendant who makes a contract more burdensome or expensive." 290 Va. 83, 107, 772 S.E.2d 589 (2015).

Fusion and Simpson intentionally interfered with Plaintiff's business expectations and property rights by, *inter alia*, creating and undertaking a scheme to obstruct justice and by publishing false and defamatory statements about Plaintiff with the clear intent to cause Plaintiff's termination as Chairman of the Committee and his removal from Congress. Finally, Plaintiff states that he suffered damage as a result of the disruption to the performance of his duties as a United States Congressman because of Defendants' intentional interference. *Compare Construction Engineering Consultants*, 2009 WL 10733733 at * 13 ("Carpenter's actions had the alleged effect of making CEC's performance of its contract with the owner more expensive or burdensome. For that reason, the Court finds that it is appropriate to apply the Restatement (Second) of Torts § 766A to this situation. Therefore, CEC is not required to allege that the contract was breached or terminated in order to proceed with its tortious interference claim.").

Viewed in the light most favorable to Plaintiff, the second amended complaint states a claim for tortious interference under § 766A of the Restatement.

### 5. _COUNT V – Common Law Conspiracy_

In Virginia, a common law conspiracy consists of an agreement between two or more persons to accomplish, by some concerted action, an unlawful purpose or a lawful purpose by unlawful means. *Harrell v. Colonial Holdings, Inc.*, 2013 WL 550424, at * 7 (E.D. Va. 2013) ("The 'unlawful act' element requires that at least one member of the conspiracy commit an 'underlying tort.' … This can include the inducement of a breach of contract or defamation, as alleged in this case.") (citations omitted); *Ransome v. O'Bier*, 2017 WL 1437100, at * 4 (E.D. Va. 2017) ("In addition to alleging facts supporting a claim for defamation, Ransome also alleges that O'Bier, Sterrett, and

Berman conspired to defame him, and that they used personal email accounts to coordinate and communicate their defamatory publications.").

Count V of Plaintiff's second amended complaint states all the requisite elements of a claim of common law conspiracy, including the identity of the participants, the object of the conspiracy (obstruction of justice, tortious interference with Plaintiff's employment and defamation), when the conspiracy was hatched, acts in furtherance of the joint scheme, and damages. [*Amended Complaint, ¶¶ 8, 14, 55, 62, 65, 77, 87*]; *Harrell*, 923 F.Supp.2d at 826 ("Even if the heightened standards of Rule 9(b) applied, the Court would find the allegations here to be sufficient. Construed in Defendants' favor, the Counterclaim alleges that Plaintiffs purchased the Strawberry Hill Races Mark on May 24, 2012, and within one week formed an agreement to tortiously injure Defendants"); *T.G. Slater & Son, Inc. v. Donald P. and Patricia A. Brennan, LLC*, 385 F.2d 836, 845-846 (4th Cir. 2004) (complaint alleged that defendants "combined to terminate and interfere with the contractual relationship", and alleged that the parties to the conspiracy acted "together to complete the sale of the farm without paying Slater & Son a commission for the work it performed" and that this conduct was "intentional, purposeful and without lawful justification" resulting in "substantial monetary damages").

Because Plaintiff plausibly alleges a claim of common law conspiracy, Defendants' motion to dismiss Count V should be denied.

## CONCLUSION

For the reasons stated above and at the hearing on June 19, 2020, Plaintiff respectfully requests the Court to deny Defendants' motion to dismiss and set this case for trial.


DATED:        January 28, 2020


DEVIN G. NUNES


By:   */s/ Steven S. Biss*
          Steven S. Biss (VSB # 32972)
          300 West Main Street, Suite 102
          Charlottesville, Virginia 22903
          Telephone:      (804) 501-8272
          Facsimile:      (202) 318-4098
          Email:          **stevenbiss@earthlink.net**

          *Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2020 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendant and all interested parties receiving notices via CM/ECF.

By: _/s/ Steven S. Biss_
      Steven S. Biss (VSB # 32972)
      300 West Main Street, Suite 102
      Charlottesville, Virginia 22903
      Telephone:    (804) 501-8272
      Facsimile:    (202) 318-4098
      Email:      **stevenbiss@earthlink.net**

      *Counsel for the Plaintiff*