IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| DEVIN G. NUNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-1148 (RDA/TCB) |
| | ) | |
| FUSION GPS A/K/A BEAN LLC and | ) | |
| GLENN SIMPSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Fusion GPS's and Defendant Glenn Simpson's (collectively, "Defendants") Motion to Dismiss the Second Amended Complaint ("Motion"). Dkt. 36. The Court dispenses with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). The Motion to Dismiss is now fully briefed and ripe for disposition. Considering the Second Amended Complaint, Dkt. 35, the Motion and Defendant Simpson's Declaration, Dkt. 36, Defendants' Memorandum in Support, Dkt. 37, Plaintiff Devin G. Nunes's ("Plaintiff") Opposition to the Motion, Dkt. 40, and Defendants' Reply, Dkt. 41, it is hereby ORDERED that the Motion is GRANTED for the reasons that follow.

### I. BACKGROUND

Plaintiff is a Member of the United States House of Representatives and formerly served as Chairman of the House Permanent Select Committee on Intelligence ("House Intelligence Committee" or "the Committee."). Dkt. 35 ¶ 2. Defendant Fusion GPS, also known as Bean LLC, is a Delaware corporation headquartered in Washington, D.C. *Id.* ¶ 7. Defendant Glenn Smith manages Fusion GPS as one of its principals and is domiciled in Washington, D.C. *Id.* ¶ 8; Dkt. 37-1. As it must at the motion to dismiss stage, the Court accepts all facts alleged within the

Second Amended Complaint as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

This lawsuit responds to the events surrounding very serious ethics complaints filed against Plaintiff in 2018 as well as media coverage of those ethics complaints.  On January 25, 2018, the Office of Congressional Ethics received a complaint from Campaign for Accountability, Inc. against Plaintiff.  Dkt. 35 ¶ 54.  Plaintiff alleges that Campaign for Accountability, Inc. was "acting in concert with Fusion GPS" in filing the complaint. [1]  *Id.*  According to Plaintiff, the ethics complaint was filed to threaten and intimidate him, and, among other aims, interfere with the congressional investigation into Fusion GPS and the so-called "Steele Dossier" Defendants produced during the 2016 election cycle.  *Id.* ¶¶ 1, 55.  This dossier was a "compendium of fake 'intelligence' reports" containing false, defamatory statements and was provided to the Federal Bureau of Investigation and the Department of Justice.  *Id.* ¶ 8.

The relevant congressional investigation began on March 1, 2017 when the House Intelligence Committee began investigating claims of attempted Russian influence in the 2016 United States Presidential Election.  *Id.* ¶ 6.  According to Plaintiff's Second Amended Complaint that was filed in this Court, Defendant Simpson testified "behind closed doors before the House Intelligence Committee" on November 24, 2017.  *Id.* ¶ 47.  Two months later, the Committee released a transcript of his testimony, which Plaintiff claims made it "immediately obvious" that Defendant Simpson had "lied in his testimony."  *Id.* ¶¶ 48-49.  Fearing criminal prosecution, the Complaint sets forth that Defendants Simpson and Fusion GPS "retaliated against Plaintiff" by engaging in a campaign to "smear the opposition."  *Id.* ¶ 52.

---

[1] Although the group was once named in this action, Campaign for Accountability, Inc. is not named as a Defendant in the Second Amended Complaint.  *See* Dkt. 35.

On March 1, 2018, Campaign for Accountability filed a second ethics complaint against Plaintiff with the Office of Congressional Ethics.  *Id.* ¶ 57.  The group then filed a third complaint against Plaintiff on July 11, 2018.  *Id.* ¶ 64.  Although the Complaint does not allege Defendants worked "in concert" with Campaign for Accountability to file either of these ethics complaints, the third ethics complaint was allegedly the product of a "joint effort" between multiple groups that waged a smear campaign against Plaintiff—including Defendant Fusion GPS.  *Id.* ¶ 65.

The Second Amended Complaint also describes a May 23, 2018 news article published by the news company McClatchy in the *Fresno Bee*.  *Id.* ¶ 61.  After a winery in which Plaintiff was a minor shareowner was sued by an employee, Defendants allegedly "collaborated with McClatchy to publish a scandalous Fusion GPS 'dossier'" as a news article that "made it appear as if Plaintiff was involved with cocaine and underage prostitutes."  *Id.* ¶ 60.  The article—entitled "A yacht, cocaine, prostitutes: Winery partly owned by Nunes sued after fundraiser event"—was published in print, online, and on social media.  *Id.* ¶¶ 60-61.

Plaintiff filed this lawsuit on September 4, 2019 against Fusion GPS, Glenn Simpson, and Campaign for Accountability, Inc.  Dkt. 1.  On November 22, 2019, Defendants moved to dismiss the case, but Plaintiff then filed an Amended Complaint on December 13, 2019.  Dkt. 12.  After Defendants moved to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(2) and (6), on February 21, 2020 the Court ordered that the case would be dismissed without prejudice.[2]  Although the Court noted Defendants had raised "significant questions" and presented "meritorious arguments" as to the Court's jurisdiction and the sufficiency of the factual pleadings in the Amended Complaint, the Court ultimately determined that Plaintiff's pleadings contained

---

[2] Judge Liam O'Grady issued the February 21, 2020 Order dismissing the Amended Complaint.  Dkt. 34.  After the parties submitted their briefs on the Motion to Dismiss the Second Amended Complaint, this action was reassigned to the undersigned Judge.

3

so "many rote statements of law and conclusory allegations" that it was "insufficient to support a substantive ruling" on the issues Defendants raised in their motion.  Dkt. 34.  Consequently, the Court granted Plaintiff an opportunity to file another amended complaint "if he [could] do so pursuant to Rule 11."  *Id.*

In response to the Court's Order, Plaintiff then filed a Second Amended Complaint on April 6, 2020.  Dkt. 35.  On April 27, 2020, Defendants filed a Motion to Dismiss for lack of jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and (6).  Plaintiff filed his Opposition on May 11, 2020, Dkt. 40, to which Defendants replied on May 18, 2020.  Dkt 41.

## II. STANDARD OF REVIEW

### A.  Rule 12(b)(2) Standard

Federal Rule of Civil Procedure 12(b)(2) provides that a court may dismiss a case for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  When resolving a Rule 12(b)(2) motion, the Court undertakes a two-step analysis.  First, it looks to whether personal jurisdiction is authorized by state law.  *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004).  Second, the court must find that the exercise of personal jurisdiction comports with the constitutional requirements of due process.  *Id.*  Virginia's long-arm statute extends personal jurisdiction to the constitutionally permissible limits of the Due Process Clause of the Fifth Amendment.  *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002).  Accordingly, "[b]ecause Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry."  *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

4

Ordinarily, a plaintiff bears the burden of proving that personal jurisdiction exists by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). But when federal law recognizes personal jurisdiction by authorizing nationwide service of process, the burden is on the defendant to show that the "substantial weight" afforded to a Congressional policy choice should be set aside. *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 627 (4th Cir. 1997) (citations omitted). When a court rules on personal jurisdiction without an evidentiary hearing, the plaintiff must make a *prima facie* showing of a sufficient jurisdictional basis to survive the challenge. *Id.* In reviewing a motion to dismiss under Rule 12(b)(2), a court views all relevant allegations in the light most favorable to the plaintiff and draws all reasonable inferences in favor of jurisdiction. *Combs*, 886 F.2d at 676; *see also Mylan Labs. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993).

### B. Rule 12(b)(6) Standard

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal is appropriate only if the well-pleaded facts in the complaint fail to "state a claim that is plausible on its face.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Twombly*, 550 U.S at 555, 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Yet, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light

most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.").  And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508)).

## III. ANALYSIS

Defendants argue dismissal is warranted both on jurisdictional grounds and on the merits. First, they contend the Court lacks personal jurisdiction over Defendants Fusion GPS and Glenn Simpson and urge dismissal under Rule 12(b)(2).  *See* Dkt. Nos. 37; 41.  Second, they assert Defendants' claims under the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act and his state-law counts do not state a claim upon which relief may be granted and must be dismissed under Rule 12(b)(6).  *Id.*  The Court addresses each argument in turn.

### A. Personal Jurisdiction

Traditionally, federal courts establish personal jurisdiction over defendants based on their "minimum contacts" with the forum state.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Federal Rule of Civil Procedure 4(k)(1) recognizes, though, that exceptions to this rule exist— including when a case is brought under a federal statute with a nationwide-service-of-process provision.  Fed. R. Civ. P. 4(k)(1)(c).  In this case, Defendants maintain that a federal statute does not authorize this Court to exercise personal jurisdiction over them.  *See* Dkt. 37 (quoting Fed. R. Civ. P. 4(k)(1)(c)).  Because Plaintiff has brought a claim under the federal RICO statute, he relies on a provision of that law permitting nationwide service of process.  Dkt. 40, 7-9.  Under RICO, the normal federal rules for serving a defendant with process are relaxed: The statute provides that process "may be served on any person in any judicial district in which such person resides, is

found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(d). This broad grant of authority is not without its limits, however. Some claims may be so "implausible, insubstantial, or frivolous" that they fail to state a "colorable" RICO claim. *D'Addario v. Geller*, 264 F. Supp. 2d 367, 388 (E.D. Va. 2003). A plaintiff bringing such an action cannot rely on RICO's nationwide-service-of-process provision. *Id.*

According to Defendants, Plaintiff's action is one of these implausible RICO claims that cannot make use of the law's nationwide-service-of-process provision and must be dismissed for lack of personal jurisdiction. Dkt. 37, 8-10. Defendants also contend the Court lacks specific and general jurisdiction over them. *Id.* at 10-12. For his part, Plaintiff argues the Court may exercise personal jurisdiction over Defendants under RICO's nationwide-service-of-process provision because they have been validly served and jurisdiction comports with the Fifth Amendment's due process requirements. Dkt. 40, 7-9. Although he appears to concede any argument as to general personal jurisdiction, Plaintiff maintains the Court may exercise specific personal jurisdiction over Defendants. *Id.* at 9-14.

Personal jurisdiction over Plaintiff's RICO claim is proper under 18 U.S.C. § 1965(d). When a plaintiff relies on the section of the RICO statute authorizing nationwide service of process, defendants must satisfy a "high burden" to defeat its use. *D'Addario*, 264 F. Supp. 2d at 388. This demanding standard provides that a federal court may exercise personal jurisdiction over defendants named in a RICO claim "so long as jurisdiction comports with the Fifth Amendment." *Navient Sols., LLC v. L. Offs. of Jeffrey Lohman*, No. 1:19-cv-461, 2020 WL 1867939, at * 3 (E.D. Va. 2020) (quoting *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 443-44 (4th Cir. 2015)). Where defendants "have been validly served pursuant to RICO's nationwide service provision, 18 U.S.C. § 1965(d), *in*

*personam* jurisdiction over them is established," provided there are no constitutional concerns with the exercise of such jurisdiction. *Centricut*, 126 F.3d at 627; *cf. ESPOT, Inc. v. MyVue Media, LLC*, --- F. Supp. 3d ---, 2020 WL 5877839, at *5 (E.D. Tex. Oct. 2, 2020) (citing the decisions of some circuits that locate the nationwide service provision in § 1965(b) of the RICO statute rather than § 1965(d)). For two reasons, exercising personal jurisdiction is appropriate in this case.

First, subjecting Defendants to the Court's personal jurisdiction is not so "inconvenient" or unfair that it creates a constitutional concern. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 483 (1985). Personal jurisdiction is ordinarily determined by reference to the familiar "minimum contacts" test. *See id.* at 472-73 (quoting *Int'l Shoe*, 326 U.S. at 316). But Congress crafted a statute that authorizes nationwide service of process when it enacted the RICO statute. When a federal statute sanctions this departure from the usual standard, "a 'national contacts' standard applies." *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 177 (D. Md. 2019) (quoting *Autoscribe Corp. v. Goldman & Steinberg*, 47 F.3d 1164, 1164 (4th Cir. 1995)). This more forgiving standard only bars the exercise of personal jurisdiction in those rare cases resulting in "such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy" reflected in a nationwide-service-of-process provision. *Plumbing Servs., Inc.*, 791 F.3d at 444.

By exercising personal jurisdiction over Plaintiff's RICO claim, this Court gives effect to Congress's unmistakable preference for jurisdiction to lie over such actions except in "highly unusual" circumstances. *L-3 Servs., Inc. v. Szekely*, No. 2:10-cv-350, 2010 WL 11579457, at *10 (E.D. Va. Sept. 24, 2010) (quoting *Republic of Panama v. BCCI Holdings*, 119 F.3d 935, 947 (11th Cir. 1997)). In this action, Defendants are located in the United States, making the exercise of personal jurisdiction appropriate "[a]s there is no evidence in the record suggesting extreme

8

inconvenience or unfairness in litigating in this forum." *D'Addario*, 264 F. Supp. 2d at 387.  In his sworn declaration, in fact, Defendant Simpson does not assert that he or Defendant Fusion GPS would suffer inconvenience or unfairness by litigating in the Alexandria Division of the Eastern District of Virginia, an adjacent suburb to Defendants' domiciles in Washington, D.C.  *See* Dkt. 37-1.  Defendants have not "show[n] that the burden of distant litigation is so great as to put [them] at a 'severe disadvantage[.]" *Centricut*, 126 at 627 (quoting *Republic of Panama*, 119 F.3d at 948). Here, the Court discerns no Fifth Amendment concern.  The RICO statute's nationwide-service-of-process provision applies as it does in the normal course.

Second, Plaintiff's claims are "colorable" and are not "wholly immaterial or insubstantial" so as to deprive Plaintiff of his right to rely on RICO's nationwide-service-of-process provision. In reaching this conclusion, the Court looks to the flexible personal jurisdiction standard applied under 18 U.S.C. § 1965(d) and case law from the RICO context.  Direct precedent and persuasive authority alike make plain that whether a RICO claim is colorable enough for a court to exercise personal jurisdiction and whether that same RICO claim is sufficient to state a claim under Rule 12(b)(6) are different questions.  *See, e.g.*, *Combs*, 886 F.2d at 674 (reversing district court judgment that "intermixed these two bases of challenge"); *D'Addario*, 264 F. Supp. 2d at 388-89 (RICO claim was "*at least* arguable and nonfrivolous, even if plaintiff ultimately may not prevail on the merits"); *L. Offs. of Jeffrey Lohman*, 2020 WL 1867939, at *3 (separating the two inquiries); *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1144 (S.D. Fla. 2019) ("determining whether the [] RICO claims are "colorable"—or "not wholly immaterial or insubstantial"—is a separate and distinct question from whether the RICO claims are plausibly alleged"); *see also Davis v. Featherstone*, 97 F.3d 734, 737–38 (4th Cir.1996) (holding, for purposes of personal

jurisdiction, that ERISA claim "is colorable if it is arguable and nonfrivolous, whether or not it would succeed on the merits").

These authorities leave little doubt that a court's judgment on a RICO personal jurisdiction inquiry does not necessarily foreshadow its conclusion on the merits of such a claim.  Although Defendants suggest that one dictates the result of the other, Dkt. 37, 9, the Court takes care not to collapse these inquiries.  *See Combs*, 886 F.2d at 674.  The questions are not an interlocking pair and accordingly should not be conflated.  Plaintiff has made a *prima facie* showing that the Court may exercise personal jurisdiction over Defendants, which is all he must do at this stage of the litigation.  *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) ("[A] plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge.").  As the Court finds personal jurisdiction is proper per 18 U.S.C. § 1965(d), the Court declines to address whether it may, in the alternative, exercise personal jurisdiction over Defendants under Virginia's long-arm statute.[3]

### B. RICO (Count I)

In Count I, Plaintiff alleges Defendants committed various violations of the federal RICO statute, 18 U.S.C. § 1962(c).  Dkt. 35 ¶¶ 72-79.  RICO imposes civil liability on "any person" "employed by or associated with such an enterprise" who "conducts or participates in the conduct of its affairs 'through a pattern of racketeering activity.'"  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S.

---

[3] The Court's exercise of personal jurisdiction pursuant to the federal RICO statute also confers pendent personal jurisdiction over Plaintiff's state-law claims—provided the Court also has subject matter jurisdiction over each of those claims.  *Centricut*, 126 F.3d at 628 ("When a federal statute authorizes a federal district court to exercise personal jurisdiction over a defendant beyond the borders of the district and the defendant is effectively brought before the court, we can find little reason not to authorize the court to adjudicate a state claim properly within the court's subject matter jurisdiction so long as the facts of the federal and state claims arise from a common nucleus of operative fact.").

229, 232-33 (1989).  A few points on the background of RICO aid understanding of the allegations Plaintiff levels against Defendants.  Congress enacted the Organized Crime Control Act of 1970 to "seek eradication of organized crime in the United States."  Pub. L. No. 91-452, § 1.  To define this purpose, Congress prohibited a number of acts known as "racketeering activities," 18 U.S.C. § 1961.  But "[r]ather than develop a new category of prohibited acts, RICO borrowed other provisions of federal criminal law to define 'racketeering activities.'" 18 U.S.C. § 1961(1).  *Day v. Johns Hopkins Health Sys. Corp.*, 907 F.3d 766, 776 (4th Cir. 2018).

One significant feature of RICO is that the law authorizes both civil and criminal enforcement of alleged violations.  18 U.S.C. §§ 1963, 1964.  Violators face the prospect of paying treble damages.  *Id.* § 1964(c).  RICO liability, particularly through civil RICO actions, has expanded since Congress enacted the statute.  Generally, federal courts "read the terms of the statute 'liberally' in order to 'effectuate its remedial purposes.'"  *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Boyle v. United States*, 556 U.S. 938, 944 (2009)).  The Court, however, "must also exercise caution to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions" and to prevent "treble damage suits [from being] brought against isolated offenders for their harassment and settlement value[.]"  *Id*. (internal quotation marks and citations omitted); *see also One World, LLC v. Onoufriadis*, No. 20 CIV. 5802 (CM), 2021 WL 184400, at *7 (S.D.N.Y. Jan. 19, 2021) ("Courts generally approach RICO claims with caution, understanding that Congress's goal in enacting the RICO statute was to prevent legitimate businesses from becoming infiltrated by organized crime, although the statute's reach is not limited to mobsters.").

To plausibly allege a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must plead conduct of an enterprise through a pattern of predicate acts constituting racketeering activity that

caused injury to plaintiff's business or property.  *See Sedima, S.R.P.L v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  The Court examines the allegations contained within the Second Amended Complaint to determine whether Plaintiff has adequately pleaded facts to state a claim in support of a civil RICO violation.

### 1. Association-in-Fact Enterprise

As previously noted, to state a civil RICO claim a plaintiff must plausibly allege an "enterprise" responsible for committing racketeering activity.  18 U.S.C. § 1962(c).  A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  The enterprise is an "entity separate and apart from the pattern of activity in which it engages."  *Boyle*, 556 U.S. at 943-44.  An "enterprise" is also distinct from a "person" under the RICO statute.  *Palmetto State Med. Ctr. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997).  An association-in-fact enterprise exists if there is "evidence of an ongoing organization, formal, or informal" and "evidence that the various associates function as a unit."  *Id.*  The enterprise must contain, at a minimum, three structural components: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *United States v. Pinson*, 860 F.3d 152, 161 (4th Cir. 2017) (quoting *Boyle*, 556 U.S. at 946).

The enterprise Plaintiff alleges includes Defendants as well as several other actors: Campaign for Accountability, Inc.; Virginia political operative Liz Mair ("Mair"); McClatchy; and other unidentified clients, officers, executives, and employees of these persons and entities.  *See* Dkt. 35 ¶ 74.  According to the Second Amended Complaint, "[t]he persons involved in the enterprise associated for the common purpose of obstructing justice."  *Id.*  According to Plaintiff,

each person involved in the enterprise played a different role and had different responsibilities, with "astroturfer" Defendants allegedly creating the "'dossier' to be used to facilitate the obstruction scheme." Dkt. 35 ¶ 74.[4]  Mair and McClatchy were "fronts or 'cut-outs'" and were tasked with "undertak[ing] the obstruction scheme." *Id.*  With Defendants operating the enterprise and controlling its specific means and methods, the enterprise "pursued a common goal of intimidation and harassment." *Id.*

These allegations alone do not necessarily create an inference that an association-in-fact enterprise existed.  There are certain, particular allegations that a RICO plaintiff must plead.  Here, Plaintiff fails to plausibly plead an association-in-fact enterprise because the Second Amended Complaint does not sufficiently allege the three structural features critical to support a RICO enterprise allegation.  Both the Second Amended Complaint and Plaintiff's Opposition merely recite the elements of an association-in-fact enterprise and allege only conclusory facts.  *See* Dkt Nos. 35; 40.

Critically, no reading of the facts alleged in Plaintiff's Second Amended complaint can support a finding that an enterprise operated with the purpose or relationships the law requires. *See* Dkt Nos. 37 ¶¶ 72-76; 40, 17-18.   Instead, the Second Amended Complaint is best read to allege that Defendants and the three other individuals and entities named in that document engaged in independent, parallel conduct directed at Plaintiff Nunes.  By Plaintiff's own telling, the entities and persons involved had different memberships and methods—even assuming they all shared the same generalized "motive" to harm Plaintiff's political career.  On its face, this is insufficient evidence of an association-in-fact enterprise with a shared purpose.  *See Pinson*, 860 F.3d at 162.

---

[4] The operative complaint defines this term: "Astroturfing is the attempt to create an impression of widespread grassroots support for a position, where no such support actually exists." Dkt. 35 ¶ 7.

The only connection Plaintiff alleges between Defendants and Campaign for Accountability, McClatchy, and Mair is that Defendants "chose CfA, Mair and McClatchy" as "fronts or 'cut-outs' to carry out the obstruction scheme." *Id.* ¶ 74. These rote allegations that Defendants "operated" and "conducted the business of the enterprise" are unsupported by any specific facts. At best, Plaintiff alleges "consciously parallel conduct, which is not sufficient to satisfy *Twombly*'s pleading standard[.]" *Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524, 539 (D. Md. 2019) (citations omitted).

Neither does the approximately six-month period outlined in the Second Amended Complaint sufficiently support longevity—a RICO requirement that "demands proof that the enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs[.]" *Boyle*, 556 U.S. at 946. *Cf. Navient Sols., LLC v. Krohn & Moss, Ltd.*, No. 1:17-cv-1178, 2018 WL 6790654, at *6 (E.D. Va. July 26, 2018) (finding, in 2018, sufficient longevity of enterprise that had operated "since 2014"). Even assuming this roughly six-month period *could* be of a sufficient duration for participants in the alleged enterprise to conduct their affairs, Plaintiff's allegations are insufficient because the Court is left to guess when, exactly, the enterprise took shape. *Iqbal*, 556 U.S. 662 at 679 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)).

Plaintiff's pleadings of an association-in-fact enterprise are fatally flawed for another reason: Plaintiff does not adequately plead that Defendants conducted the enterprise's affairs rather than their own affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (RICO "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise*'s affairs,' not just their *own* affairs.") (quoting 18 U.S.C. 1962(c)). Of the six predicate acts alleged

14

in the Second Amended Complaint, none involved individuals and entities that Plaintiff alleges formed the supposed association-in-fact enterprise. *See* Dkt. 35 ¶¶ 54, 57, 59-61, 63, 64, 67. Instead, the allegations in the Second Amended Complaint indicate that the purported participants in the enterprise pursued their own affairs. *See id.* ¶¶ 54-71. But when a complaint "alleges only that the RICO persons joined together for the purposes of conducting their own affairs[,]" it does not sufficiently allege a RICO enterprise distinct from Defendants. *See Myers v. Lee*, No. 1:10-cv-131, 2010 WL 3745632, at *5 (E.D. Va. Sept. 21, 2010) (citing *Reves*, 507 U.S. at 185).

Even if Plaintiff had shown that Defendants and other purported enterprise participants each engaged in fraudulent conduct, he still does not plausibly allege that Defendants' actions were coordinated conduct performed on behalf of a distinct enterprise. Plaintiff's generalized allegation that enterprise participants "combined, associated and agreed with Fusion GPS and Simpson to weaponize the media and ethics process against Plaintiff in order to injure Plaintiff in his business as a United States Congressman," is simply insufficient. *Id.* at ¶ 69. This is so because "[m]ere conclusory language that Defendants" and supposed enterprise participants "operated as a RICO enterprise fails to satisfy the requirements of Rule 12(b)(6)." *Goodrow v. Friedman & MacFadyen, P.A.*, No. 3:11-cv-20, 2012 WL 6725617, at *11 (E.D. Va. Dec. 27, 2012); *see also Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 473 (D. Md. 2012) (observing that naked assertions devoid of further factual enhancement need not be credited when evaluating the sufficiency of enterprise allegations on a motion to dismiss) (quotation marks and citations omitted).

In sum, the allegations in the Second Amended Complaint, even when viewed in the light most favorable to Plaintiff, do not plausibly set forth facts sufficient to find a RICO enterprise.

2. Predicate Acts Constituting Racketeering Activity

*a. Predicate Acts*

Because the RICO statute relies on specific "predicate acts" to support liability for racketeering activity, a plaintiff bringing a civil RICO action must identify at least two predicate acts to state a claim for relief. *See Walters v. McMahen*, 684 F.3d 435, 437 (4th Cir. 2012). Plaintiff identifies six allegedly wrongful acts in the Second Amended Complaint, which form the factual basis for Plaintiff's RICO claim against Defendants. *See* Dkt. 35 ¶¶ 54, 57, 59-61, 63, 64, 67. In short, Plaintiff alleges that Defendants committed the following predicate acts: (1) filing the January 25, 2018 ethics complaint against Plaintiff; (2) filing the March 1, 2018 ethics complaint—also against Plaintiff; (3) creating the dossier and publishing the May 23, 2018 McClatchy article; (4) filing the June 7, 2018 ethics complaint against Plaintiff, which the American Democracy Legal Fund authored; (5) filing the July 11, 2018 ethics complaint against Plaintiff; and (6) filing an ethics complaint written by the Swamp Accountability Project, also on July 11, 2018. *Id.*[5]

Before analyzing the specific predicate acts, the Court acknowledges that Plaintiff's case rests on importing a wholly novel set of facts—ethics complaints submitted against a sitting congressperson and providing research on that lawmaker to a news outlet for publication—into the civil RICO context. Although Plaintiff has not identified and the Court is not aware of any comparable case holding that such acts are tantamount to criminal conduct, because of the unique nature and seriousness of the allegations, the Court examines the merits of Plaintiff's claims with the understanding that "civil RICO is a square peg, and squeeze it as we may, it will never

---

[5] Additional allegations include excerpts from a book Defendant Simpson co-authored and the findings of an Inspector General Report. *See* Dkt. 35 ¶¶ 1, 9-12, 46, 52. Plaintiff does not allege any predicate acts based on these allegations.

comfortably fit in the round holes of the remedy/penalty dichotomy." *Faircloth v. Finesod*, 938 F.2d 513, 518 (4th Cir. 1991).

### i. Predicate Acts Committed by Defendant Fusion GPS

In the Second Amended Complaint, Plaintiff alleges Defendant Fusion GPS committed two predicate acts: filing the January 25, 2018 ethics complaint against Plaintiff and creating the dossier that was ultimately used to publish the McClatchy article. *Id.* ¶¶ 54, 59-61.  Specifically, Plaintiff sets forth that "CfA, acting in concert with Fusion GPS, faxed an 'ethics' complaint against Plaintiff to the Office of Congressional Ethics[.]" *Id.* 54.  Plaintiff further claims that Defendant Fusion GPS "collaborated with McClatchy to publish a scandalous Fusion GPS 'dossier' about" him. *Id.* ¶ 60.  According to the Second Amended Complaint, the other four predicate acts did not involve Fusion GPS. *Id.* ¶¶ 57, 63, 64, 67.

### ii. Predicate Act Committed By Defendant Simpson

Significantly, the Plaintiff alleges Defendant Simpson participated in only one predicate act: "Fusion GPS and Simpson created a 'dossier' on Plaintiff, parts of which they used to create scandal and improperly interfere with and obstruct Plaintiff's investigation of Fusion GPS and Simpson." *Id.* ¶ 59.  Plaintiff does not allege that Defendant Simpson committed any of the five remaining predicate acts. *Id.* ¶¶ 54, 57, 63, 64, 67.

### b. Predicate Acts as Potential Racketeering Activity

Having traced these purported predicate acts involving Defendants, the Court must determine which, if any, prohibited acts of "racketeering activity" identified by Plaintiff and outlined in 18 U.S.C. § 1961(1) apply to the facts alleged.

i. 18 U.S.C. § 1503(a)

First, Plaintiff alleges Defendants violated 18 U.S.C. § 1503(a) by obstructing justice.  Dkt. 35 ¶¶ 3, 75.  In the Second Amended Complaint, Plaintiff sets forth that "Defendants engaged in . . . acts of obstruction of justice in violation of Title 18 U.S.C. §§ 1503(a)," *id.* ¶ 3, and Defendants' concerted action intended "to harass, intimidate, influence, obstruct and impede Plaintiff's investigation, to dissuade Plaintiff from making a criminal referral, and to undermine Plaintiff's ability to do his job as Chairman of the Committee." *Id.* ¶ 75.  Notably, section 1503(a) is titled "Influencing or injuring officer or juror generally" and applies to obstruction of "judicial proceedings," not congressional investigations.  *United States v. Aguilar*, 515 U.S. 593, 599 (1995).  But there are no allegations that Defendants attempted to obstruct a judicial proceeding— only that they sought to interfere with a congressional investigation.  *See generally* Dkt. 35. Relying on the facts alleged in the Second Amended Complaint, Plaintiff does not adequately allege a violation of section 1503(a).

Although another statute, 18 U.S.C. § 1505, does concern interference with congressional proceedings, Plaintiff appears to have disclaimed that he intended to allege Defendants violated this statute instead.  *See* Dkt. 40.  Defendants have now alerted Plaintiff to this potential mistake at least five times in briefs filed in response to three different complaints.  *See* Dkt. 37 (raising issue and citing three prior efforts of Defendants to do the same); *see also* Dkt. 41 (noting that Plaintiff declined to clarify any potential error in his Opposition).  The Court reads this silence to indicate Plaintiff did, indeed, intend to plead the obstruction-of-justice claim under 18 U.S.C. § 1503(a).

### ii. 18 U.S.C. § 1512(b)(1), (b)(2)

Second, Plaintiff alleges Defendants committed the predicate act of tampering with a witness in violation of 18 U.S.C. § 1512(b)(1) and (b)(2).  Dkt. 35 ¶¶ 3, 75.  A violation of 18 U.S.C. § 1512(b)(1) may be found if a person "(1) knowingly (2) use[s] intimidation, threats, or corrupt persuasion or engage in misleading conduct toward another (3) with the intent to influence, delay, or prevent the (4) testimony of that person in an official proceeding."  *United States v. Edlind*, 887 F.3d 166, 172–73 (4th Cir. 2018).  Lacking from the Second Amended Complaint are any facts that might permit a reasonable belief that Defendants had the requisite intent to "influence, delay or prevent the testimony of any person in an official proceeding."  18 U.S.C. § 1512(b)(1).  Plaintiff's pleadings that Defendant Fusion GPS lawfully submitted an ethics complaint to the Office of Congressional Ethics, and that both Defendants conducted research on a member of Congress and provided their findings to McClatchy, simply do not form the basis for a finding of intent under § 1512.  And as for the counterpart statute, Plaintiff recites the elements of 18 U.S.C. § 1512(b)(2) but offers no facts in support of the allegation.  Dkt. 35 ¶ 75(b).  This "formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Consequently, Plaintiff does not allege a violation of 18 U.S.C. § 1512(b)(1) or (b)(2).

### iii. 18 U.S.C. § 1512(d)(2)-(4)

Third, Plaintiff alleges Defendants violated 18 U.S.C. § 1512(d)(2)-(4), a witness-tampering provision aimed to prevent intentional harassment.  *See* Dkt. 35 ¶ 75(c).  The Second Amended Complaint sets forth that "Fusion GPS and Simpson intentionally harassed Plaintiff and thereby hindered, delayed, prevented or dissuaded Plaintiff and other members of the House Intelligence Committee, or attempted to do so[.]"  *Id.*  The first defect of this purported violation is that Plaintiff never alleges he did not take any action that he might have otherwise taken as a

result of the ethics complaints or the McClatchy news article.  Neither does the Plaintiff put forward any facts that might establish that Defendants "intentionally harassed" Plaintiff. Furthermore, Plaintiff fails to allege a violation of § 1512(d) because he does not suggest Defendants had the necessary intent to harass.  Although Plaintiff was surely dismayed by the barrage of ethics complaints and unfavorable news coverage, that is not the sort of evil Congress meant to address in § 1512(d) when it proscribed "thinly-veiled threats that create justifiable apprehension" in a witness to an official proceeding.  *United States v. Wilson*, 796 F.2d 55, 57 (4th Cir. 1986) (addressing provision, which was first codified at § 1512(b)).

### iv. 18 U.S.C. § 1513(e)

Next, Plaintiff alleges that when Defendants submitted an ethics complaint against him and provided research for the McClatchy news article, they violated 18 U.S.C. § 1513(e).  *See* Dkt. 75(d).  That statute, captioned "Retaliating against a witness, victim, or an informant," outlaws the act of "knowingly, with the intent to retaliate, tak[ing] any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense."  18 U.S.C. § 1513(e).  This subsection, and its addition to the catalogue of RICO predicate acts, was enacted as part of the Sarbanes–Oxley Act's protection for whistleblowers who bring to light evidence of government misconduct.  *See DeGuelle v. Camilli*, 664 F.3d 192, 200 (7th Cir. 2011).

The Court assumes, without deciding, that Plaintiff may qualify as a "witness" or "informant" within the meaning of 18 U.S.C. § 1513(e) in his capacity as a congressman and committee chairman with investigatory authority.  Even if the conduct alleged may be shoehorned into this provision, however, Plaintiff's allegation fails because he does not plausibly allege that

he provided truthful information about a crime to law enforcement.  *See generally* Dkt. 35.  Neither does Plaintiff maintain Defendants had knowledge that Plaintiff provided such information, nor does he claim Defendants retaliated against him for providing truthful information about a crime to law enforcement.  *See id.*  Defendants' allegedly harmful acts cannot be viewed as sanctionable retaliatory acts against Plaintiff.  *United States v. Stoker*, 706 F.3d 643, 646 (5th Cir. 2013) (addressing applicability of § 1513(e)).

v. 18 U.S.C. § 1343

Lastly, the Court addresses whether Plaintiff sufficiently alleges a predicate act of wire fraud.  18 U.S.C. § 1343.  Plaintiff falls short of plausibly pleading such a claim because his Second Amended Complaint merely cites the wire fraud statute without adding factual material elaborating on the allegation.  *See* Dkt. 35 ¶ 75(e).  Plaintiff's Opposition to Defendants' Motion does little more, alleging only that Defendants engaged in multiple acts of wire fraud and reciting the fraud pleading standard applicable to those claims.  *See* Dkt. 40, 1-21.  Viewing the allegations in the light most favorable to Plaintiff, the Court cannot discern facts alleging "(1) the existence of a scheme to defraud and (2) the fact that the defendant used or caused the use of wire communications in furtherance of that scheme," *United States v. Taylor*, 942 F.3d 205, 213 (4th Cir. 2019), elements that are necessary to allege a wire fraud violation.  As a result, Plaintiff fails to plead a violation of 18 U.S.C. § 1343.

All told, Plaintiff has failed to establish that the facts set forth in his Second Amended Complaint add up to form a single RICO predicate act.  The Court reaches this conclusion having considered, as it must when deciding a motion to dismiss, the facts alleged in the light most favorable to Plaintiff.  *E. Shore Mkts*, 213 F.3d at 180.

### 3. Pattern of Racketeering Activity

In addition to alleging predicate acts, to state a valid RICO claim a plaintiff must plead allegations tending to show a "pattern of racketeering activity." *H.J. Inc.*, 492 U.S. at 239; 18 U.S.C. § 1962(a)-(c).  This "[r]acketeering activity' is defined as any of a number of predicate acts," *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000), and includes mail fraud, wire fraud, and obstruction of justice.  To establish a pattern, plaintiffs must identify "a minimum of two predicate acts"—but "two acts alone do not necessarily establish a pattern." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (citing *Sedima*, 473 U.S. at 496 n.14); 18 U.S.C. § 1961(5) (requiring the last predicate to have been committed within ten years of the previous predicate act).

As an initial matter, Plaintiff does not plead at least two predicate acts by Defendant Simpson.  *See* Dkt. 35.  This failure alone bars any relief under RICO against Defendant Simpson because Plaintiff does not plead that Defendant Simpson engaged in a "*pattern* of racketeering activity," 18 U.S.C. § 1962 (emphasis added).  Consequently, Plaintiff is unable to show a necessary element of a RICO violation as to Defendant Simpson.  Count I therefore fails to state a claim against Defendant Simpson, even if his role in creating the dossier could be viewed as a predicate act.

Plaintiff, however, alleges that Defendant Fusion GPS committed two predicate acts. Notwithstanding its conclusion that the predicate acts set forth in the Second Amended Complaint do not state a claim for relief under RICO, the Court next examines the pattern of racketeering activity allegedly perpetrated by this sole remaining defendant.  To show such a pattern, a plaintiff must demonstrate that the racketeering activity was related and continuous.  *Awappa*, 615 F.3d at 318 (quoting *H.J. Inc.*, 492 U.S. at 239).

*a. Relatedness*

First, the Court turns to the relatedness element.  "Racketeering acts are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'"  *Pinson*, 860 F.3d at 161.  Here, Plaintiff identifies two acts, neither of which appear to have been conducted on behalf of an enterprise.  Plaintiff claims that the Campaign for Accountability—no longer a party to this case—submitted the first ethics complaint against Plaintiff "in concert with" Fusion GPS but without the involvement of any of the other alleged participants in the supposed enterprise.  *Id.* ¶ 54.  Next, Plaintiff maintains Defendant Fusion GPS "collaborated" with McClatchy to publish the May 23, 2018 news article, but Fusion GPS also committed this act without the aid of other associates who allegedly formed the enterprise. *See id.* ¶ 60.  Plaintiff's Brief in Opposition does nothing to rehabilitate these pleading deficiencies, intoning that these predicate acts are sufficiently related under RICO "because they had a similar purpose – obstructing justice in violation of Federal law – and employed similar means and methods."  Dkt. 40, 23.  This claim is too generalized to support a claim for RICO.

*b. Continuity*

The allegations in the Second Amended Complaint fare no better with respect to continuity. Plaintiff references Defendants' "multiple schemes" and "criminal enterprises" that they have committed "[o]ver the past decade[.]"   Dkt. 35 ¶¶ 16, 54.  Yet, Plaintiff sets forth that the first predicate act did not occur until January 25, 2018, when Campaign for Accountability filed a complaint against him with the Office of Congressional Ethics.  *Id.*  At the same time, Plaintiff alleges Defendant Fusion GPS "approached" McClatchy "in or before May 2018." *Id.* ¶ 60.  What is more, Plaintiff fails to identify when, exactly, Defendant Fusion GPS "recruited" Mair, who

submitted an independent ethics complaint against Plaintiff on July 11, 2018.  *Id.* ¶ 67.  These allegations are insufficient to support a finding of closed continuity.  *See Lyon v. Campbell*, 28 F.3d 1210 (4th Cir. 1994) (holding there was no pattern of racketeering activity where "the majority of the predicate acts identified in the complaint took place in [a] seven-month period").

Plaintiff also fails to demonstrate open continuity.  Although Plaintiff alleges that "Defendants continue to engage in related racketeering activity," Dkt. 35 ¶ 78, Plaintiff identifies no predicate act occurring after July 11, 2018.  As this is Plaintiff's third complaint, these omissions cannot be interpreted as mere pleading oversights.  Absent some promise of threatened future criminal action, alleged wrongdoing spanning a six-month period does not a RICO pattern make.  *See Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (holding that such "'distinct' threats" of future wrongdoing must be supported with "specificity") (citation omitted). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."  *GE Inv. Priv. Parker*, 247 F.3d at 549.  The Court finds the facts set forth in the Second Amended Complaint do not satisfy the law's continuity requirement, bearing in mind that "RICO serve[s] as a weapon against ongoing unlawful activities whose scope and persistence pose a special threat to social well-being."  *Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 155 (4th Cir. 1987).

Plaintiff fails to show the predicate acts he alleges are sufficiently related or continuous, and his RICO claim must also be dismissed for this independent reason.

### 4. Injury and Causation

A RICO plaintiff must allege he was "injured in his business or property by reason of a violation" of the statute.  *Zepkin*, 812 F.2d at 151 (quoting 18 U.S.C. § 1964(c)).  Applying this statutory requirement to Plaintiff's Second Amended Complaint, the Court asks whether Plaintiff

has sufficiently alleged an injury within the meaning of the statute and whether any injury was proximately caused by Defendants' alleged RICO violations.

*a. Injury*

In his Second Amended Complaint, Plaintiff identifies two forms of injury he suffered. First, he alleges that "[i]n addition to concrete out-of-pocket losses, Defendants' actions injured Plaintiff's standing among colleagues and constituents, as reflected in the results of the 2018 congressional election." Dkt. 35 ¶ 77. Second, Plaintiff alleges he has "suffered injury in fact to his business as a United States Congressman." Those injures include pecuniary losses he has incurred: "legal fees and administrative expenses, including costs to research, travel, consult, and publicly address the obstruction scheme and smear campaign promoted by the Defendants and their confederates." *Id.* ¶ 70.

The Court interprets the first sort of injury as a claimed reputational harm that amounts to personal injury. As for the second form of injury, Plaintiff's out-of-pocket losses appear to be a result of those personal harms. In this circuit, neither are considered RICO injuries. "[A]llegation[s] of personal injury and pecuniary losses occurring therefrom are not sufficient to meet the statutory requirement of injury to 'business or property.'" *Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995). Accordingly, this Court cannot find that Plaintiff has alleged a cognizable RICO injury "in his business or property" as those terms are understood under 18 U.S.C. § 1964(c).

*b. Causation*

A RICO complaint must plead sufficient facts showing that the plaintiff is able to demonstrate a "'direct causal connection' between the predicate offense and the alleged harm." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10-12 (2010). And although certain cases may

25

contain multiple links in the causal chain, "RICO causation requires a proximity of statutory violation and injury such that the injury is sequentially the direct result—generally at 'the first step' in the chain of causation." *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 494 (4th Cir. 2018). Plaintiff does not explain how proximate cause may be found in two critical respects. First, he does not allege how he was directly injured by Defendant Fusion GPS "acting in concert with" the Campaign for Accountability when the January 25, 2018 ethics complaint was faxed to the Office for Congressional Ethics. Dkt. 35 ¶ 54. Second, he fails to show that Defendants' creation of a "dossier" about him, and McClatchy's subsequent publication of an article based on the report, directly harmed Plaintiff in "his business as a United States Congressman." *Id.* ¶¶ 59-60, 70. Although Plaintiff asserts the proximate cause question is one ultimately left to the jury, *see* Dkt. 40, 25, this response ignores Supreme Court precedent and the law of this circuit, both of which clearly indicate that facts plausibly alleging proximate cause in a RICO action must be specifically pleaded to survive a Rule 12(b)(6) motion. *See, e.g.*, *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006) (reviewing allegations in support of proximate cause at motion to dismiss stage in RICO case); *Slay's Restoration*, 884 F.3d at 494 (assessing proximate cause on review of motion to dismiss RICO action).

Plaintiff has not pleaded facts sufficient to show he was injured in his business or property and that his injury was proximately caused by a RICO violation. In addition to the grounds described above, dismissal of his RICO claim is proper for this reason.

## C. RICO Conspiracy (Count II)

Plaintiff also alleges Defendants engaged in a RICO conspiracy in violation of 18 U.S.C. § 1962(d). Dkt. 35 ¶¶ 80-84. Plaintiff's RICO conspiracy claim fails for two reasons. First, Plaintiff's RICO conspiracy claim is tethered to the substantive RICO violations he alleges under

1962(a)-(c).  Having found those alleged substantive violations meritless, the Court is constrained

to dismiss the RICO conspiracy claim as well.  *See Parker*, 247 F.3d 543, 551 n.2 (4th Cir. 2001).

Moreover, Plaintiff points to his allegations that he believes "support the inference" of an

agreement.  *See* Dkt. 40 (citing Dkt. 35 ¶¶ 3, 67, 68, 69, and 81).  This contention is thus qualified

and sidesteps the fact that Plaintiff has not, in fact, introduced any concrete facts showing a specific

agreement as required to support a RICO conspiracy.  But, to state a claim for RICO conspiracy,

Plaintiff would need to show "that the defendant[s] knew of and agreed to the overall objective of

the RICO offense" in addition to showing a substantive RICO violation.  *United States v. Abed*,

203 F.3d 822 (4th Cir. 2000) (Table).  This Court has concluded that "a RICO civil conspiracy

complaint, at the very least, must allege specifically [] an agreement" to commit a violation of

RICO predicate acts.  *Field v. GMAC LLC*, 660 F. Supp. 2d 679, 688 (E.D. Va. 2008) (dismissing

RICO conspiracy claim).  The Second Amended Complaint fails to clear this modest hurdle; as a

result, Plaintiff's RICO conspiracy claim also fails to state a valid claim for relief and must be

dismissed.

### D. Injunctive Relief under 18 U.S.C. § 1964(a) (Count III)

In his third count, Plaintiff seeks declaratory and injunctive relief to enforce his RICO

claims pursuant to 18 U.S.C. ¶¶ 1964(a).  Dkt. 35 ¶¶ 85-89.  First, it is far from clear that equitable

relief is available to a private RICO plaintiff.  *See Dan River, Inc. v. Icahn*, 701 F.2d 278, 290 (4th

Cir. 1983) (expressing "substantial doubt" over whether such relief exists under the terms of the

statute).  The Court disposes of Plaintiff's claim for equitable relief under RICO on narrower

grounds, however.  Because Plaintiff fails to state a RICO claim upon which relief may be granted,

Count III must also be  dismissed.

E. Tortious Interference with Contractual Relations (Count IV)

Plaintiff also brings a claim against Defendants for tortious interference with contractual relations.  Dkt. 35 ¶¶ 90-93.  On the merits, the Court doubts whether Virginia law affords relief on a tortious interference claim to the "expectat[ion]" a member of Congress has in his "employment" as a legislator and position as chairman of a congressional committee.  *See* Dkt. 35 ¶ 91; *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 616 (E.D. Va. 2009) (quoting *Duggin v. Adams*, 234 Va. 221, 226 (1987) (stating elements for tortious interference with contractual relations under Virginia law)).  The Court need not decide that question today, however, as district courts enjoy broad discretion to determine whether exercising supplemental jurisdiction over a particular set of state-law claims is appropriate.  *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).  The Court declines to extend supplemental jurisdiction over Plaintiff's pendent state-law claim for tortious interference because the Court has dismissed Plaintiff's RICO counts, the only claims arising under this Court's original jurisdiction.  28 U.S.C. § 1367(c)(3); *see also Shooting Point, L.L.C. v. Cumming*, 238 F. Supp. 2d 729, 740 (E.D. Va. 2002), *aff'd*, 368 F.3d 379 (4th Cir. 2004).  Accordingly, Count IV is dismissed.

F. Common Law Conspiracy (Count V)

Finally, Plaintiff's fifth claim alleges Defendants unlawfully conspired to tortiously interfere with Plaintiff's business as a United States Congressman in violation of Virginia common law. Dkt. 35, ¶¶ 94-96.  For the reasons provided in its discussion of Plaintiff's claim for tortious interference with contractual relations, the Court similarly declines to extend supplemental jurisdiction over Plaintiff's state-law claim of conspiracy.  Count V of the Complaint is dismissed.

### G. Rule 11 Sanctions

Defendants argue that Rule 11 sanctions are warranted because "[i]t is reasonable to conclude that Plaintiff and his counsel filed the Complaint and opposition brief to tarnish Defendants and drain their resources." Dkt. 41, 2. Defendants argue that sanctions are appropriate in light of Federal Rule of Civil Procedure 11(c)(3), which authorizes a court to impose sanctions on its own initiative, and because Plaintiff and his counsel "required Defendants to respond to a new complaint that fails to address the infirmities identified by the Court" in its prior Order. Dkt. 37, 1. That Order concluded that Plaintiff would be allowed to file another amended complaint "if he can do so pursuant to Rule 11." Dkt. 34. Citing a half-dozen unsuccessful cases Plaintiff has filed in various state and federal courts in recent years, Defendants assert Plaintiff has "needlessly increased the cost of litigation" and pursued an "improper purpose" by filing this pleading. Dkt. 37, 1 & n.1 (citing Fed. R. Civ. P. 11(b)(1)). Plaintiff does not respond to Plaintiff's arguments for sanctions. *See* Dkt. 40.

The Court declines to impose sanctions under Rule 11 at this time. The allegations made by Plaintiff are serious. They just cannot and do not confer authority to this Court to address the complaints Plaintiff has made. In this regard, Plaintiff's counsel is reminded that litigation "asserted in bad faith or for the purpose of harassment" may be met with sanctions. *Guidry v. Clare*, 442 F. Supp. 2d 282, 289 (E.D. Va. 2006). Here, Plaintiff's counsel has filed three complaints in this case since September of 2019. The Court has not issued a favorable ruling on any of the claims Plaintiff asserts. Accordingly, the Court's dismissal of Plaintiff's RICO claims is with prejudice and without leave to amend because in the Court's view, amendment would be futile. Fed. R. Civ. P. 15(a)(2). "At some point, litigation must end." *Matter of Vulcan Constr. Materials, LLC*, 433 F. Supp. 3d 816, 825 (E.D. Va. 2019).

IV. CONCLUSION

For these reasons, Plaintiff has failed to state a claim upon which relief may be granted.

Accordingly, Defendants' Motion to Dismiss, Dkt. 36, is GRANTED, and the Second Amended

Complaint is hereby DISMISSED WITH PREJUDICE.

The Clerk is directed to enter judgment in Defendants' favor and close this civil action.

It is SO ORDERED.

Alexandria, Virginia
March 31, 2021

_____ /s/

Rossie D. Alston, Jr.
United States District Judge